IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*\*\*\*

20-03083
SECT.MMAG.2

CARLOS A. RODRIGUEZ, Petitioner

vs.

JERRY GOODWIN, Warden/Custodian, Respondent

---

### MEMORANDUN IN SUPPORT OF HABEAS CORPUS PETITION

### UNDER 28 U.S.C. § 2254

---

**COMES NOW: CARLOS A. RODRIGUEZ(#127087)**, Petitioner pro se, who in support of his Petitioner for Habeas Corpus represents the following claims for this Honorable Court's consideration:

### CLAIM ONE

**THE TIME FOR THE PROSECUTION OF THE CASE EXPIRED BEFORE THE TRIAL STARTED IN VIOLATION OF THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

### ARGUMENT

The record in the case against Petitioner will reflect that from the time Petitioner was arrested until the time in which the trial started, a period of seven (7) years elapsed. In accordance with La. C.Cr.P. Art. 578, the state had three (3) years to institute the prosecution for First Degree Murder.

-1-

TENDERED FOR FILING

NOV 12 2020

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

The State has a heavy burden to justify an apparent untimely commencement of trial on grounds that the time limits in Art. 578 were either interrupted or suspended. Therefore, it is up to the State to bring Petitioner to trial on a timely manner, or dispose of the case. Nowhere in the record can the State justify the delay on the commencement of Petitioner's trial.

On May 16, 2016, Petitioner's trial started, more than seven (7) years after Indictment against Petitioner for First Degree Murder was filed (April 22, 2009). The three (3) years statute of limitations expired on April 22, 2012. For the Prosecution of this case to have remained on time beyond that date, interruption or suspension of prescription would have had to occur prior to that date.

Petitioner was appointed Counsel William R. Alford, Jr., to represent him; on May 12, 2009, Counsel entered a plea of not guilty. On Motion of the Assistant District Attorney, the Court ordered the matter assigned for Felony Jury Trial on September 8, 2009. On August 4, 2009, the Court ordered rulings on motions continued until December 11, 2009 and continued the jury trial until December 11, 2009. On December 11, 2009, the Court continued the trial again. On May 4, 2010, a different counsel (Kevin McNary) was in court with Petitioner and the case was continued again. On August 12, Counsel Kevin McNary was in Court with Petitioner and the case was continued to September 28, 2010 by the Court. Petitioner was not present on August 12, or September 28, 2010. The Court continued the case to November 5, 2010.

Without Petitioner being present in Court and represented by Kevin McNary, on NOvember 5, 2010, the Court continued the case to January 12, 2011; on January 12, 2011, the Court continued the case to September 16, 2011; on September 16, 2011, the Court continued the case to February 1, 2012.

Once again, without the presence of Petitioner, as he was represented by Kevin McNary, the Court continued ruling on the Motion until July 13, 2012, and the trial was reset to September 17, 2012. On July 13, 2012, Petitioner not present in Court and without Counsel representing him, when Public Defender John Linder informed the Court that his office was seeking to appoint a new counsel; the Court continued the case until August 20, 2012.

On August 20, 2012, without the presence of Petitioner, Bruce Unangst, David Price and Bruce Dodd enrolled as counsels for Petitioner; but because the Court was tied with a trial from Washington Parish, it continued the case until August 30, 2012.

It is respectfully noted that on August 20, 2012 when the above mentioned counsels were appointed, that the three (3) year prescription period had elapsed by three (3) months.

Nowhere in the record there is a copy of any Motion for Continuance being filed. The statute clearly requires written continuance motions to interrupt the prescription period.

Even assuming that the State will point to certain difficulty involving the proper appointment of Counsel to this case as the reason for delay to proceed with a trial.

Petitioner would like to direct this Court to the matter of <u>State of Louisiana v. Joseph</u> (Citation omitted), where the Louisiana Supreme Court clearly stated:

> "The State has a heavy burden of justifying an apparently untimely commencement of trial on grounds that the time limits in 578 were either, interrupted or suspended. Administrative problems within the court system generally do not constitute causes of interruption beyond control of the State because the Court system cannot excuse itself from affording an accused a trial within the delays required by law...
>
> As between the defendant and the State, the ultimate burden rests with the State to bring defendant to trial..."

Once this Court reviews the record in this case, it should be obvious that the District Attorney is not at fault, that the defense is not al fault; it is the judicial system's fault. Therefore, the Judicial system has violated Petitioner's Constitutional Right to a speedy trial.

## CLAIM TWO

**THE PROSECUTOR IMPROPERLY VOUCHED FOR THE TRUTHFULNESS AND CREDIBILITY OF STATE WITNESS DURING CLOSING ARGUMENTS.**

### ARGUMENT

During closing arguments the Prosecution vouched for the truthfulness and credibility of a State witness.

Please refer to T.R. pg. 2021, where the Prosecutor discussed Gina Scramuzza's testimony as follows:

> "... that's true, she told the truth and we can prove it that she told the truth."

Pg. 2023:
> "... that corroborated that she told the truth. It's true she's telling the truth."

Louisiana's jurisprudence prohibits a prosecutor from vouching for the credibility of his/her witness.

"Criminal defendants who are convicted as a consequence of prosecutorial misconduct will be afforded post conviction relief where appropriate." Knapper v. Connick, 681 So.2d 944 (La. 1996). In instances of alleged prosecutorial misconduct, the touchstone of due process analysis is the fairness of the trial, not the culpability of the prosecutor. "The aim is not punishment of society for the misconduct of the prosecutor but the avoidance of an unfair trial." State v. Jones, 791 So.2d 622 (2001).

The standard is whether the prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643; 94 S.Ct. 1868; 40 L.Ed.2d 431 (1974).

-5-

In <u>Berger v. United States</u>, 295 U.S. 78 (1935), the United States Supreme Court asserted that the government interest in a criminal prosecution "is not that it shall winn a case, but that justice shall be done," and that it is therefore a prosecutor's duty "to refrain from improper methods calculated to produce a wrongful conviction even as it is to use every legitimate means to bring about a just one." This duty of the prosecutor's described in <u>Berger</u> furnishes the basis for the court's assert that when the government crosses the line between proper and improper methods, what has taken place is "prosecutorial misconduct." That label can be attached to a broad array of acts as the prosecutor has authority to perform because the mandate to ensure "justice" shadows every endeavor of the prosecutor.

It is clear in Petitioner's case that during closing arguments the State improperly and illegally sought to introduce highly prejudicial, inflammatory, and utterly untrustworthy evidence in an attempt to vouch for the truthfulness and credibility of a State witness. Consequently, the State secured a conviction by engaging in egregious misconduct such that the verdict cannot be attributable to other evidence.

Therefore, Petitioner's conviction and sentence should be vacated and Habeas Corpus Relief granted.

## CLAIM THREE

**PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

### ARGUMENT

A claim of ineffective assistance of counsel is assessed under the two-prong test enacted by the Louisiana Supreme Court in the matter of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The defendant must first show that counsel's performance was deficient. This requires a showing that counsel "made errors so serious that counsel was not functioning as the "counsel guaranteed the defendant by the Sixth Amendment of the U.S. Constitution." <u>Strickland</u>, supra. Second, the defendant must show that the deficient performance prejudiced his defense. This can be accomplished upon a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, Id.

The demands of <u>Strickland</u> are not insurmountable and trial counsel in the instant case fell well short of the minimum competency and effectiveness contemplated by the Sixth Amendment.

Ineffective assistance of counsel requires a cumulative analysis of the issues. It is not proper to merely divide up each issue and evaluate it in isolation; rather, the Court must review the totality of the circumstances and the cumulative effect of trial counsel's ineffective and deficient conduct. <u>Strickland</u>, 466 U.S. @ 690.

-7-

The following instances are presented to the Court in support of Petitioner's claim is his counsels being ineffective:

A): <u>Counsels failed to investigate and prepare a defense:</u>

Petitioner was represented by Court Appointed counsels. In the present case, Petitioner alleges that said counsels failed to investigate and prepare a defense in Petitioner's behalf. A fair review of the record will show that they failed to call witnesses, all they did was to cross-examine the State's witnesses, and when the State rested its case, the defense rested.

Had these counsels investigated Petitioner's case, they should have found, that at the time they were appointed, the time limitation to bring the case to trial had expired; therefore, a Motion to Quash should have been filed based on this Constitutional violation and asked the Court to dismiss the case.

From the time of the indictment until the start of trial, the case against Petitioner was on Court docket 37 times. Also, Petitioner inform the Court, that Counsel William R. Alford was another Counsel appointed to represent, with Bruce E. Unangst, David Price and Bruce Dodd. Their failure to investigate Petitioner's case, deprived Petitioner of his opportunity to file a Motion to Quash and have the case dismissed because of the constitutional violation of the time expiring for the case to go to trial.

Petitioner even provided his counsels with the name and address of his wife to be called as a witness, they flatly refused to contact her.

-8-

B): <u>Counsels failed to request funds from the Court to hire investigators and expert witnesses for the defense:</u>

Petitioner's case, because of counsels' ineffectiveness, was left at the hands of the prosecution. Failure to request funds from the Court to help and Petitioner's case, was proven to affect the defense of the case; names of witnesses were provided to the counsels, but because their lack of interest in defending Petitioner's case, they failed to request funds from the Court to hire investigators and track those witnesses.

C): <u>Counsels failed to object to the Prosecution's closing arguments:</u>

This issue was raised on Petitioner's Claim Two where the Prosecution vouched for a witness trutfulness and credibility, Gina Scramuzza (the victim's wife).

Counsels should have, immediately, objected to the Prosecution's statements related to this witness; instead, they allowed for the Prosecution to continue with closing arguments without any objection at all.

Petitioner relied on his Court Appointed Counsels to have a fair trial; instead, he was was victimized by their ineffectiveness by allowing the Prosecution to use any tactic in order to have a conviction, regardless of the Constitutional protections afforded and guaranteed to Petitioner by the U.S. Constitution.

Therefore, Petitioner prays this Court considers this claim, and that his conviction and sentence be vacated a new trial granted.

## CLAIM FOUR

**PETITIONER WAS DENIED HIS RIGHT TO TESTIFY IN HIS OWN BEHALF IN VIOLATION OF THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AS WELL AS THE FOURTEENTH AMENDMENT.**

### ARGUMENT

First, and with all due respect to this Court, Petitioner would like to inform the Court that in order to support this claim in the State's Court of Appeals, he presented the Court with a Supplemental Brief with attached exhibits. The Court <u>denied</u> Petitioner's Motion to Supplement Writ Application (No. 2019 KW 1619).

This Supplement contained an affidavit from the lead Detective and where the Court was informed of Petitioner's intention to testify in his own behalf during trial, but because one his Court Appointed Counsels, he was not allowed to testify in his defense.

Also, included is a copy of ATTORNEY SIGN IN VISIT LOG, where the name of Bruce Unangst visited Petitioner on 5/18/16, from 8:25 to 9:04, with the sole intention to try to convince Petitioner not to testify in his own behalf. This visit took place at the jail where Petitioner was housed during trial.

What is more troubling, is the fact that Mr. Unangst made the decision to convince Petitioner not to testify, <u>without</u> consulting with the other Counsels members of Petitioner's legal team.

As a matter of fact, the other Court Appointed Counsels were surprised to find out that Petitioner was not going to testify during his trial, where during pre-trial conversations, it was agreed that Petitioner was going to testify during his trial.

-10-

During the proceedings at the State's District Court, Petitioner had repeatedly expressed to his Court Appointed Counsels his desire to testify in his own behalf; to the point that Petitioner was told that the decision for him to testify in his own behalf, was going to be made by them; instead, in an act of unprofessionalism, Mr. Unangst, without consulting with the other Court Appointed Counsels, made the final decision for Petitioner not to testify at trial, the night before the trial was over.

The reasons for Petitioner to testify in his own, was his belief that if he presented his testimony to the jurors, a not guilty verdict was more than possible.

Following are the reasons Petitioner wanted to testify in his own behalf:

(a)

The statements made by the victim's wife, Gira Scramuzza, were a lie from the beginning. First she stated during interrogations that Petitioner had nothing to do with her husband's death. Once one of the the detectives told her that Petitioner was married, his wife expecting a child, she changed her story after becoming highly upset.

(b)

The plan to falsely accuse Petitioner was devised by Gina Scramuzza, Louis Rodriguez (not related to Petitioner), and Erlyn Montolla, as they were allowed to change their testimony more than once. Between Louis Rodriguez and Erlyn Montolla they were trying to put their "lies" together, until Louis Rodriguez realized that Erlyn Montolla was manipulating him. Louis Rodriguez even testified during trial, under oath, when asked if Carlos Rodriguez (Petitioner) killed Mario Scramuzza; Louis Rodriguez responded: "NO HE DID NOT."

(c)

Also, from the beginning of these proceedings, Petitioner had no idea who Erlyn Montolla was; Petitioner only knew him to be a friend of Louis Rodriguez, who introduced him to Gina Scramuzza. Montolla convinced Louis Rodriguez to fabricate the statements agains Petitioner; was allowed to enter a plea to a charge of Manslaughter and sentenced to 38 years, which also included a charge of Armed Robbery, with one of the conditions, that he could not get any other felony charges in St. Tammany Parish. He failed to comply with the conditions, committed not one, (2) aggravated crimes, Aggravated Assault and Aggravated Battery with a deadly weapon.

He lied, not just under oath, but also to the arresting officer by giving false names. He did what he was required to do by the Prosecutors, lie about Petitioner so they can have a conviction. As a matter of fact, the weapon used to commit this crime was found in possession of Erlyn Montolla and Louis Rodriguez.

Once Erlyn Montolla took the stand, he changed the story, this time he admitted to being the culprit of the victim's death, admitted that he was the aggressor, and that he forced Mr. Scramuzza to the floor. **(SEE TRIAL TRANSCRIPTS)**

(d)

Petitioner asked several times for security footage; this was denied by Counsel, when the detectives relied on the security footage for their investigation. Petitioner was asked to do a polygraph test, he agreed to it. When Petitioner received the Police Report there was no mentioning of the polygraph test. The detectives were asked for footage of the interrogation, they stated that it was a malfunction of the footage. Anytime Petitioner requested footage related to his case, there was always a excuse to deny the request; again, the Counsels just allowed this to continue without any effort to protect Petitioner. One of his counsels even stated to Petitioner, concerning the footage requested that: "At the end of the day what you say matters, but I make the final decision."

Had Petitioner being allowed to testify in his own behalf, there was a huge probability that the "lies" of the Prosecution's witnesses, could have been disregarded by the jury, and Petitioner could have been found not guilty, as the proper verdict for a crime Petitioner did not commit.

Once again, all the Court Appointed Counsels representing Petitioner were in agreement that Petitioner was going to testify in his own behalf. They were very disturbed when they found out that Mr. Unangst went against their will to convince Petitioner not to testify.

Petitioner even contacted Mr. Unangst about his decision for not allowing Petitioner to testify in his own behalf, and he did contacted Petitioner's fiance, and told her that he could write an affidavit, but if he write it, there is the possibility of being disbarred.

The presiding detective over Petitioner's case was contacted and she has provided the affidavit attached to the Supplement that was denied by the State's Court of Appeal; also, she has provided a copy of the visiting log page, with Mr. Unangst's name, date and time, when he visited Petitioner at the jail where he was housed, the day before the trial was over.

Because Mr. Unangst ineffectiveness in protecting Petitioner's Constitutional Rights, Petitioner was convicted for a crime he didn't commit nor had any part in it.

Therefore, considering the facts and information contained herein, Petitioner's conviction and sentence should be vacated and a new trial granted.

## CONCLUSION

PETITIONER PRAYS THIS HONORABLE COURT CONSIDERS ALL THE FACTS AND INFORMATION CONTAINED HEREIN, AND AFTER FURTHER REVIEW OF DOCUMENTS AND OTHER FILINGS IN FRONT OF THE COURT, THAT HIS HABEAS CORPUS PETITION BE GRANTED, HIS CONVICTION AND SENTENCE VACATED AND A NEW TRIAL GRANTED WITH ALL THE PROTECTIONS GUARANTEED BY THE UNITED CONSTITUTION.

HOMER, LOUISIA, THIS 6TH DAY OF November, 2020.

Respectfully Submitted,

CARLOS A. RODRIGUEZ, #127087
DAVID WADE CORRECTIONAL CENTER
670 BELL HILL RD. H5A
HOMER, LOUISIANA 71040-2150

Petitioner pro se

-14-