APPENDIX "A"

Adopted October 14, 1976
Effective January 1, 1977

UNIFORM APPLICATION FOR POST-CONVICTION RELIEF

Carlos A. Rodriguez          No. _____
NAME OF PETITIONER                (to be filled in by the clerk)

127087                       22nd JUDICIAL DISTRICT
PRISON NUMBER

La. State Prison             the PARISH OF St. Tammany
PLACE OF CONFINEMENT         STATE OF LOUISIANA

vs.

Darrell Vannoy
CUSTODIAN          (Warden,
Superintendent, Jailor, or authoriz-
ed person having custody of
petitioner)

Please Serve CUSTODIAN and Warren Montgomery
DISTRICT ATTORNEY, 22nd JUDICIAL DISTRICT, STATE OF
LOUISIANA.

INSTRUCTIONS — READ CAREFULLY

(1) This petition must be legibly written or typed, signed by the petitioner and
sworn to before a notary public or institutional officer authorized to ad-
minister an oath. Any false statement of a material fact may serve as the
basis for a criminal prosecution. All questions must be answered concise-
ly in the proper space on the form. Additional pages are not permitted
except with respect to the facts which you rely upon to support your claims
for relief. No citation of authorities or legal arguments are necessary.

(2) Only one judgment may be challenged in a single petition except that con-
victions on multiple counts of a single indictment or information may be
challenged in one petition.

(3) YOU MUST INCLUDE ALL CLAIMS FOR RELIEF AND ALL FACTS
SUPPORTING SUCH CLAIMS IN THE PETITION.

(4) When the petition is completed, the original must be mailed to the clerk
of the district court in the parish where you were convicted and sentenced.

(5) You must attach official documentation showing your sentence and the
crime for which you have been convicted. You may obtain that documen-
tation from the clerk of court of the district court of the parish where you
were sentenced or from the institution where you are confined. If that
documentation is not attached, you must allege that steps were taken to
obtain it.

(6) Petitions which do not conform to these instructions will be returned with
a notation as to the deficiency.

PETITION

1. Name and location of court which entered the judgment of conviction
challenged _____
   22nd J.D.C. St. Tammany Parish

2. Date of judgment of conviction _____

3. Length of sentence          Life

-1-

SCANNED
OCT 0 4 2018

EXHIBIT #1

POST CONVICTION RELIEF APPLIC

4. Nature of offense involved (all counts) _____
First Degree Murder

_____
_____
_____

5. What was your plea? (check one)

(a) Not guilty (X)

(b) Guilty   (  )

(c) Not guilty and not guilty by reason of insanity (  )

If you entered a guilty plea to one or more counts and not guilty to other counts, give details:

N/A

_____
_____
_____

(d) Name and address of the lawyer representing you at your plea (if you had no lawyer, please indicate) William Alford

(e) Was the lawyer appointed (X) or hired (  )? (check one)

6. Kind of trial: (check one)

(a) Jury (X )

(b) Judge only (  )

7. (a) Name and address of the lawyer representing you at your trial: _____
Bruce Unangst and Bruce Dodd, Public Defenders

(b) Was the lawyer appointed ( x ) or hired (  )? (check one)

8. Did you testify at the trial? Yes (  )   No (X)

9. (a) Give the name and address of the lawyer who represented you at sentencing for the conviction being attacked herein. _____
Same as above

(b) Was the attorney appointed (X) or hired (  )? (check one)

10. Did you appeal from the judgment of conviction? Yes (X) No (  )

11. If you did appeal, give the following information:

(a) Citation, docket number, and date of written opinion by the Supreme Court or Court of Appeal (if known) First Circuit
Court of Appeal No.2017-KA-0245

(b) Name and address of lawyer representing you on appeal:
Lieu T. Vo Clark, P.O. Box 485 Mandeville, La.

_____
_____

(c) Was the lawyer appointed (X) or hired (  )? (check one)

12. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any application for post-conviction relief with respect to this judgment in any state or federal court. Yes (  ) No (X)

13. If your answer to 12 is "yes", give the following information:

(a) (1) Name of court _____ N/A _____

(2) Nature of proceeding _____ N/A _____

_____

-2-

SCANNED
OCT 0 4 2018

(3) Claims raised _____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your application?

     Yes        ( )            No       ( )

(5) Was relief granted or denied? _____

(6) Date of disposition _____

(7) Citation of opinion (if known) _____

(8) Name and address of lawyer representing you (if none, so state):

_____

_____

(9) Was the lawyer appointed ( ) or hired ( )? (check one)

(b) Have you filed any other applications for post-conviction relief with respect to the challenged conviction?
    Yes ( ) No ( )
    If "yes", set forth the details (as above) on separate paper and attach.

(c) Did you appeal or seek writs of review from the denial of any post-conviction application?
    (1) First petition, etc. Yes ( ) No ( )
    (2) Second petition, etc. Yes ( ) No ( )

(d) If you did not appeal or seek writs from the denial of any post-conviction application, explain briefly why you did not: _____

_____

_____

(e) Name of the lawyer who represented you on appeal from the denial of any post-conviction application (if none, so state):

    (1) First petition _____

    (2) Second petition _____

SCANNED
OCT 0 4 2018

## CLAIMS FOR RELIEF

State concisely facts supporting your claim that you are being held unlawfully. If necessary, you may attach extra pages stating additional claims and supporting facts. Do not argue points of law.

The following is a list of those claims, and only those claims, that may provide you with grounds for relief:

(1) Your conviction was obtained in violation of the constitution of the United States or the State of Louisiana;

(2) The court exceeded its jurisdiction;

(3) Your conviction or sentence subjected you to double jeopardy;

(4) The limitations on prosecution had expired;

(5) The statute creating the offense for which you were convicted and sentenced is unconstitutional;

(6) The conviction or sentence constitute the ex post facto application of law in violation of the Constitution of the United States or the State of Louisiana.

A REMINDER: THE ABOVE LIST CONTAINS ONLY THOSE CLAIMS THAT YOU MAY RAISE FOR RELIEF. YOU MUST SET FORTH ALL OF YOUR COMPLAINTS ABOUT YOUR CONVICTION IN THIS APPLICATION. YOU MAY BE BARRED FROM PRESENTING ADDITIONAL CLAIMS AT A LATER DATE. Remember that you must state the FACTS upon which your complaints about your conviction are based. MERE CONCLUSORY ALLEGATIONS WILL NOT SUFFICE.

## REPETITIVE APPLICATIONS

The above claims may not provide grounds for relief if any of the following applies to you:

(1) Unless required in the interest of justice, any claim for relief which you fully litigated in an appeal shall not be considered.

(2) Any claim of which you had knowledge and inexcusably failed to raise in the proceeding leading to conviction may be denied by the court.

(3) Any claim which you raised in the trial court and inexcusably failed to pursue on appeal may be denied by the court.

(4) A successive application may be dismissed if it fails to raise a new or different claim.

(5) A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application.

This application will provide space for you to explain the reasons why you failed to raise your claims in the proceedings leading to conviction, or failed to urge the claim on appeal, or failed to include the claim in a prior application.

4

CLAIM(S)

YOU MAY ATTACH ADDITIONAL PAGES SETTING FORTH THE RE-
QUIRED INFORMATION (BELOW) IF ADDITIONAL CLAIMS ARE
ASSERTED.

Claim:   The time limitation for institution of
prosecution expired before the trial started

(a) Supporting FACTS (tell your story briefly without citing cases or law):

Please see attached memorandum of law

Claim- 2  Prosecutorial Misconduct

Claim- 3  Ineffective Assistance of trial Counsel

(b) List names and addresses of witnesses who could testify in support of your
claim. If you cannot do so, explain why: Summer Rodriguez, William Alford
David Lindsey

(c) If you failed to raise this ground in the trial court prior to conviction,
on appeal or in a prior application, explain why:

Ineffective Assistance of Counsel

A. Do you have in a state or federal court any petition or appeal now pending as to the judgment challenged? Yes ( ) No ($\times$) If "yes", name the court _____

B. Do you have any future sentence to serve after you complete the sentence imposed by the judgment challenged? Yes ( ) No ($\times$)

(1) If so, give name and location of court which imposed sentence to be served in the future: _____
_____N/A_____

(2) Give date and length of sentence to be served in the future:
_____N/A_____
_____
_____

(3) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future? Yes ( ) No ( )

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled.

_____
Signature of Petitioner

| 30 | 9 | 18 |
|----|---|----|
| Day/ | Month | /Year |

## APPLICATION FOR APPOINTMENT OF COUNSEL

I am unable to employ counsel to represent me in this matter because I have no assets or funds except:

_____
_____None_____
_____
_____
_____

(Write "None" above if you have nothing; otherwise, list your assets including funds in prison accounts.)

_____
Signature of Petitioner

-6-

AFFIDAVIT

STATE OF LOUISIANA
        West Feliciana
PARISH OF _____

Carlos A. Rodriguez _____, being first duly sworn says that
    (Name of Petitioner)

he has read the foregoing application for post-conviction relief and swears
or affirms that all of the information therein is true and correct. He further
swears or affirms that he is unable to employ counsel because he has no assets
or funds which could be used to hire an attorney except as listed above. (Delete
reference to appointment of counsel if inapplicable.)

                                    _____
                                    Signature of Petitioner

SWORN TO AND SUBSCRIBED before me this _____ day
of _____   _____.

                _____
                Notary Public or other person authoriz-
                ed to administer an oath.

-7-

TWENTY SECOND JUDICIAL DISTRICT COURT

PARISH OF ST, TAMMANY

CARLOS ALBERTO RODRIGUEZ                    CASE NO: 465867-I

VERSUS.                                     FILED:_____
                                                  COURT OF COURT
DARRELL VANNOY,, WARDEN
LOUISIANA STATE PENITENTIARY
ANGOLA,, LA

" MEMORANDUM BRIEF SUPPORTING POST
       CONVICTION RELIEF"

    NOW INTO COURT, comes Petitioner hereinafter referred to as
petitioner respectfully submitting this memorandum brief in sup-
port of post conviction relief.

                  STATEMENT OF THE CASE

    Petitioner was charged by grand jury indictment with first de-
gree murder, a violation of LSA-R.S. 14:30 and pled not guilty.
After trial by jury, he was found guilty as charged. The trial
Court denied petitioner's motion for postverdict judgment of ac-
quittal. Petitioner was sentenced to serve life imprisonment with-
out benefit of parole, probation or suspension of sentence. Peti-
tioner appealed his conviction into the First Circuit Court of
Appeal. On September 15, 2017 bearing docket number 2017-KA-0245
that court affirmed the conviction and sentence.

    Petitioner now submits this memorandum brief in support of the
claims raised on post conviction relief. Petitioner did not take
writs into the Louisiana Supreme Court, thus his two year post
conviction relief time started to run 14 days after the Court of
Appeal affirmed his conviction.

    This petition is timely.

                          1.

## TIMELINESS AND JURISDICTION

The Louisiana Code of Criminal Procedure provides that "no ap-
plication for post conviction relief shall be considered if it is
filed more than two years after the judgment of conviction. La. C.Cr.
P. art. 930.8(A). A judgment of conviction becomes final upon rend-
ition of judgment by the Louisiana Supreme Court, affirming the con-
viction; denial of an application for writs of review, or a defen-
dant's failure to seek su ch review. In the instant case, the First
Circuit Court of Appeal affirmed Petitioner's conviction September
15, 2017. Petitioner did not take writs into the Louisiana Supreme
Court, Petitioner's conviction therefore became final 14 days after
the Court of Appeals judgment for state post conviction pu rposes
at that time. See generally, La. C.Cr.P. art. 922; State ex rel
Favorite v. State, 948 So.2d 186, 187 (La. 2007). Petitioner has
through Oct. 1, 2019 to seek post conviction relief. Petitioner's
present application is therefore timely filed within two (2) years
of his conviction becoming final.

## BURDEN OF PROOF

The burden of establishing a cause for relief on post convict-
ion review remains with the petitioner . "The petitioner in an appli-
cation for post conviction relief shall have the burden of proving
that relief should be granted." La. C.Cr.P. art. 930.2. Where a peti-
tioner establishes grounds which, if established at an evidentiary
hearing, would entitle the petitioner to the relief sought, the bur-
den shifts to the State to proffer procedural objections barring such
relief or to respond with substantive rebuttals of t he petitioner's
claims. Article 927 of the Louisiana Code of Criminal Procedure state

> If an application alleges a claim which if
> established, would entitle the petitioner to
> relief, the court shall order the custodian,
> through the district attorney in the parish in
> which the defendant was convicted, to file any
> procedural objections he may have, or an answer
> on the merits if there are no procedural object-
> jections, within a specified period not in ex-
> cess of thirty days.

2

## STATEMENT OF THE FACTS

Mario Scramuzza, Jr. was found deceased in his home by his wife. Mr. Scramuzza died as a result of strangulation. (R.P. 1485). During the investigation into Mr. Scramuzza's death, Gina Scramuzza, The victim's wife, confessed to orchestrating the murder of her husband. (R.P. 1396). Mrs Scramuzza was arrested and charged with first degree murder along with Carlos Rodriguez, Luis Rodriguez-Hernandez and Erly Montoya. (R.P. 76).

On direct appeal Petitioner raised two claims: The trial court erred denying the motion for post-verdict judgment of acquittal, and The evidence is insufficient to support the conviction.

### CLAIM ONE

The time limitation for prosecution in this case expired before the trial started. See La. C.Cr.P. Art. 578.

The record in the present case will reflect that from the time Petitioner was arrested until the time in which the trial started a period of seven (7) years elapsed. Pursuant to La. C.Cr.P. art. 578, the state had three years to institute prosecution for First Degree Murder.

The state has a heavy burden of justifying an apparently untimely commencement of trial on grounds that the time limits in 578 were either interrupted or suspended. Administrative problems within the Court system generally do not constitute causes of interruption beyond control of the State because the Court system cannot excuse itself from affording an accused a trial within the delays required by law, simply by relying upon internal operating procedures which in non-compliance with the statutory mandates.

As between the defendant and the State, the ultimate burden rests with the State to bring the defendant to trial, otherwise dispose of the case. Here the State failed to meet that burden within the delay allowed under the clear provisions of the Code of Criminal Procedure.

3

The time limitation prescribed prior to the start of this trial
on May 16, 2016. Article 578 indicates that in a capital case
no trial shall commence after three years from the date of insti-
tution of prosecution, the institution of prosecution in this
case is the date of indictment. Petitioner's indictment was fil-
ed on April 22, 2009, it was a capital offense, for first defree
murder, so the three year limitation would have expired on April
22, 2012. For the prosecution of this case to have remained tim-
ly beyond that date, interruption or suspension of prescription
would have had to occur prior to that date.

Petitioner was appointed counsel William R. Alford, Jr  to repre
sent him on May 12, 2009 counsel entered a plea of not guilty. On
motion of the Assistant District Attorney, Court ordered the mat-
ter assigned for Felony Jury Trial on September 8 , 2009. On Aug-
ust 4, 2009 the court ordered rulings on motions continued until
December 11, 2009 and continued the jury trial until December 11,
2009. On December 11, 2009, the court continued the trial again.
On May 4, 2010 a different counsel (Kevin McNary) was in court
with petitioner and the case was continued again. On Au gust 12,
counsel Kevin McNary was in court with petitioner and the case
was continued to September 28, 2010 by the court. Note petitioner
was not present on August 12, or September 28, 2010, the court
continued the case to Vovember 5, 2010.

On November 5, 2010 petitioner was not present cou nsel Kevin
McNary was present on his behalf, and the court again continued
the case to January 12, 2011. On January 12, 2011 petitioner
was not present; counsel Kevin McNary was and the court again
continued to September 16, 2011.

September 16, 2011 petitioner was not present, Kevin McNary
and William Alford was and the court again continued the matter
to February 1, 2012.

4

message court

On February 1, 2012 petitioner was not present, defense counsel Kevin McNary was and waived his presence, the court continued rulings on motions to July 13, 2012 and reset the trial date for September 17, 2012.

On July 13, 2012, petitioner was not present in court and had no attorney representing him. Public Defender John Lindner inform the court that his office was seeking to appoint new counsel and the Court continued the case until Au gust 20, 2012.

On August 20, 2012, petitioner was not present in court, Br uce Unangst, David Price, and Bruce Dodd enrolled as counsel for petitioner, because the court was tied up in a jury trial in Washington Parish it continued the case until August 30, 2012.

It is respectfully noted that on August 20, 2012 when the above attorney's were appointed the three (3) year prescription period had elapsed by three months.

Nowhere in the record up to this time is there a written Motion for Continuance filed. Let the record show that the statute requires written, continuance motions, to interrupt prescription.

Even assuming that the state will point to certain difficul t ies involving the proper appointment of counsel to this case as the cause for delay. In response petitioner directs this Court to State v. Joseph where the Louisiana Supreme Court said:

> The State has a heavy burden of justifying an apparently untimely commencement of trial on grounds that the time limits in 578 were either interrupted or suspended. Administrative problems within the court system generally do not constitute causes of interruption beyond control of the State because the Court system cannot excuse itself from affording an accused a trial within the delays required by law, simply by relying upon internal operating procedures which result in noncompliance with the statutory mandates.

> As between the defendant and the State, the ultimate burden rests with the State to bring the

defendant to trial; otherwise dispose of the
case. Here the State failed to meet that burden
within the delay allowed under the clear pro-
vision of the Code of Criminal Procedure. In the
event the State argues Van Dyke cannot show
specific prejudice caused by the delay, it
should show that no--it should be noted t hat
no such showing is required. State v. Joseph,
The Louisiana Supreme Court said recently we
have never required a showing of specific pre ju-
dice once the defendant has demonstrated that
the prosecution has exceeded the limits imposed
by 578, and the State has failed to carry its
burden of justifying the delay.

Once this Hon. Court reviews the record in this case it should

be obvious that the District Attorney is not at fault, that the de-

fense is not at fault; that the system is at fault. The system has

violated Petitioner's right to counsel under Article 6 of the United

States Constitution and under right to counsel under the Louisiana

Constitution and the right to a speedy trial under 578 of the Loui-

siana Code of Criminal Procedure and the Louisiana Constitution.

See 856 So.2d 187, 2003-437 La. App. 3 Cir. 10/1/3, State v. Van Dyke

(La. App. 3 Cir. 2003).

6

<u>Claim Two</u>
<u>Prosecutorial Misconduct</u>

"Criminal defendant's who are convicted as a consequence of
prosecutorial misconduct will be afforded post conviction relief
where appropriate." <u>Knapper v. Connick</u>, 681 So.2d 944 (La. 1996 ).
In instances of alleged prosecutorial misconduct, the touchstone
of due process analysis is the fairness of the trial, not the cul-
pability of the prosecutor. " The aim is not punishment of society
for the misdeeds of the prosecutor but avoidance of an unfair trial
to the accused." <u>State v. Jones</u>, 791 So.2d 622 (2001). The stand-
ard is whether the prosecutorial misconduct "so infected the trial
with unfairness as to make the resulting conviction a denial of due
process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643; 94 S.Ct.
1868; 40 L.Ed. 2d 431 (1974).

   a) During closing argument the prosecution vouched for the
       truthfulness and credibility of state witnesses;

Please refer to pg 2021 where the prosecutor discussing Gina Scr-
amuzza's testimony as follows.:

            ... that's true, she told the truth and we can
            prove it that she told the truth.

      <u>Pg. 2023;</u>

            ...that corroborated that she told the truth.

            It's t rue she's telling the truth.

Louisiana's jurisprudence prohibits a prosecutor from vouching for
the credibility of its witnesses.

7

In Berger v. United States, 295 U.S. 78 (1935), the United States Supreme Court asserted that the governments interest in a criminal prosecution "is not that it shall win a case, but that justice shall be done," and that it is therefore a prosecutor's duty " to refrain from improper methods calculated to produce a wrongful conviction even as it is to use every legitimate means to bring about a just one." This duty of prosecutor's described in Berger furnishes the basis for court's to assert that when the government crosses the line between proper and improper methods, what has taken place is "prosecutorial misconduct." That label can be attached to a broad array of acts as the prosecutor has authority to perform because the mandate to ensure "justice" shadows every endeavor of the prosecutor.

The standard is whether the prosecutorial misconduct " so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643; 94 S. Ct. 1868; 40 L.Ed. 2d 431 '(1974).

During closing argument s the State improperly and illegally, sought to introduce highly prejudicial, inflammatory, and utterly untrustworthy evidence in an attempt to vouch for the truthfulness and credibility of state witnesses. Consequently, the State secured this conviction by engaging in egregious misconduct such that the verdict cannot certainly be attributable to other evidence

For these reasons this conviction should be reversed and post conviction relief be granted.

8

Claim Three:

Ineffective Assistance of Trial Counsel

A claim of ineffectiveness of counsel is assessed by the two-
part "Strickland test" familiar to this Court and espoused by the
U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 104
S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must first show
that counsel's performance was deficient. This requires a showing
that counsel " made errors so serious that counsel was not fu nct -
ioning as the 'counsel' guaranteed the defendant by t he Sixth
Amendment of the U.S. Constitution." Strickland, 466 U.S. at 686 .
Next, the defendant must show that the deficient performance pre-
judiced his defense. This can be accomplished upon a "showing that
counsel's errors were so serious as to deprive the defendant of a
fair trial, a trial whose result is reliable." Ibid.
Where an alleged error is within the " ambit of trial strategy"
it cannot be relied upon to establish ineffectiveness of counsel.
State v. Gales, 622 So.2d 808, 822 (La. App. 4 Cir. 1993). More-
over, because of the inherent difficulties in assessing trial coun-
sel's conduct retroactively, a reviewing court " must indulge a
strong presumption that counsel's conduct falls wit hin the wide
range of reasonable professional assistance." Strickland, 466
U.S. at 689. Accordingly, to carry his burden, a defendant mu st
establish " that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would
have been different." Ibid.

The demands of Strickland are not insurmountable and trial coun-
sel in the instant case fell well short of the minimums of compe-
tency and effectiveness contemplated by the Sixth Amendment. Inef-
fective assistance of counsel requires a cumulative analysis.

9

It is not proper to merely divide up each issue and evaluate it in isolation; rather the court must review the totality of the circumstances and the cumulative effect of trial counsel's ineffective and deficient conduct. Strickland, 466 U.S. at 690.

In the instant case, counsel's errors were severe and pervasive and robbed Petitioner of the constitutionally effective defense of which the U.S. and Louisiana Constitutions guarantee him and there is a reasonable probability that but for counsel's errors, the result of the proceedings would have been different.

a) failure to investigate and prepare a defense

A lawyer must engage in a reasonable amount of pretrial investigation. " Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary." Bryant v. Scott, 28 F.3d 1411, 1417 (5th Cir. 1994). A trial counsel's truncated pre-trial investigation is reasonable for constitutional analysis only to the degree that his or her decision to forego a more thorough investigation is reasonable. Strickland, 466 U.S. at 690-91 ("Strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.") This Court must indulge a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance (State v. Stallworth, 11 So. 3d 541 (La. App. 4th 2009). Petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Ibid. However, Strickland's measure of deference "must not be watered down into a disguised form of acquiescence." Profit v. Waldron, 831 F. 2d 1245, 1248 -

1249 (5th Cir.1987) (refusing to indulge presumption of reason-
ableness as to "tactical" decisions that afforded no advantage to
the defense).

In the present case it is specifically alleged that trial coun-
sel's Bruce E. Unangst, David Price and Bruce Dodd appointed to
this case sometime after July 2012 failed to investigate and fail-
ed to prepare a defense. A review of the trial record will reflect
that they called no witnesses to testify on petitioner's behalf,
all they did was cross-examine the state's witnesses and when the
state rested, the defense rested. It is argued that adequate in-
vestigation would have revealed that at the time these attorney's
were appointed the three year time limitation period for bring the
case to trial had elapsed. Competent counsel would have filed a
Motion to Quash the indictment based upon this violation and the
case would have been dismissed.

A review of the record will reflect that Petitioner's case was
on the court docket 37 times from the date of indictment on April
22, 2009 until the trial started on May 16, 2016. On May 12, 2009
appointed counsel William R. Alford entered a plea of not guilty.
On August 4, 2009 counsel Alford filed Motions (pre-trial). On Sept.
8, 2009, with counsel Alford present the court continued the case.
On Dec. 11, 2009 with counsel Alford present the court set the mat-
ter for a Status hearing and continued the matter until 8 /12/2010.
On Sept. 28, 2010 the court continued the case. Petitioner's case
was on the docket for Sept. 28, 2010, he was not present. The case
was on the docket for Nov. 5, 2010 counsel Alford was present and
waived petitioner's presence. On Jan. 12, 2011 petitioner's pre-
sence was waived and the court continued the case. On Sept. 16, 20-
11, petitioner's presence was waived and the court continued the
case. On Feb. 1, 2012, counsel waived petitioner's presence and the
Court ordered hearings on Motions.

11.

Petitioner's case was on the docket for July 13, 2012, his presence was waived, that day Public Defender John Linder told the Court his office was seeking to appoint new counsel for petitioner and the Court continued the case. The record will reflect that sometime between July, 13, 2012 and the next docket date of October 19, 2012, counsel's Unangst, Price and Dodd were appointed to petitioner's case and a trial date was set for 9/13/13.

The record reflects that from the time of indictment and appointment of the new attorney's over three years had elapsed. Adequate investigation by these new attorney's would have required them to file a Motion to quash the indictment and dismiss the case against petitioner. See La. C.Cr.P. art. 535(A):

> A motion to quash may be filed of right at any
> time before commencement of the trial when based
> on the ground that:
>
> (4) - The time limitation for the institution of pro-
> secution has expired.

See Louisiana Code of Criminal Procedure art. 578 which states:

> "Except as otherwise provided in this chapter, no trial
> shall be commenced:
>
> (1) In capital cases after three years from the date
> of institution of the prosecution.

The United States Supreme Court in U.S. v. Hansel, 70 F. 3d 6 (CA 2, 1995) said:

> "Hansel's counsel's failure to object to the time
> barred counts is unaccountable in the circumstances
> and cannot "be considered sound" trial strategy."
> Strickland, 104 S.Ct. 2064.

Adequate investigation would have revealed to his new attorney's that the three year time limitation had expired. Their failure to discover this violation resulted in their failure to file a Motion to quash and as the court said in Hansel, supra this failure is unaccountable.

12.

b) Counsel failed to request funds from the Court to
hire investigators and expert witnesses for the de-
fense.

See <u>United States v. Gray</u>, 878 F.2d 702 (C A 1989)   where the
Court said:

> Ineffectiveness is generally clear in the context
> of complete failure to investigate becau se coun-
> sel can hardly be said to have made a strategic
> choice against pursuing a certain line of investi-
> gation when she/he has not yet obtained the facts
> on which such a decision could be made. See Strick-
> land, 466 U.S. at 690.
>    Such is the situation presented in this case.
> Counsel offered no strategic justification for his
> failure to make any effort to investigate the case,
> and indeed he could have offered no such rationale.
> As he admitted he did not go to the scene of the in-
> cident to interview potential witnesses. Grays coun-
> sel had the names of at least four witnesses.  Nor
> did counsel hire an investigator to track down these
> or other potential witnesses, despite his awareness
> that he could have petitioned the court for funds
> for this purpose.

In petitioner' case he provided counsel with names of witnesses
he wanted counsel to interview, and told him his wife's name and
address. Counsel took no action on petitioner's request. Counsel
did inexplicably fail to interview and call at trial a number of
fact witnesses petitioner told him would provide testimony helpful to his defense and he likewise failed to seek out expert wit-
nesses requested by petitioner. Counsel's failure to investigate
interview  and call witnesses and to seek funds from the court
to hire an investigator was ineffective assistance.

(c) Counsel failed to object to the prosecutor's closing.
arguments.

The record reflects on page 2021 (Closing Arguments by the Pro-
secutor) where the prosecutor is discussing Gina Scr amuzza's
testimony as follows:

> ...that's true, she told the truth and we
> can prove it, that she told the truth.

See page 2023:

> ...that corroborated that she told the truth.
> Its true she's telling the truth

13.

See Dubria v. Smith, 197 F.3d 390 (C A 9, 1999), the defendant argued that trial counsel was ineffective for failing to object to statements made by the prosecutor in closing arguments.

The Court has previously held that "as a general rule a prosecutor may not express his opinion of the defendant's guilt or his belief in the credibility of government witnesses. United States v. Molina, 934 F.2d 1440, 1444 (9th Cir. 1991), The court held that counsel should have objected to such misconduct and that the failure to object was ineffective assistance of counsel. See United States v. Delgado, 631 F. 3d 685 (C A 5, 2011) where the prosecutor in closing argument used his personal opinion and an implication of outside knowledge to improperly attack Delgado's credibility claiming that she had in fact lied to the investigating agents. The court said, this misconduct inflicted upon a non-testifying defendant whose credibility was not at issue,  involved a central element of the offense against Delgado. By effectively calling Delgado a liar and declaring that she had lied to investigating government agents the prosecutor threw the weigh of his own credibility as a representative of the United States behind his personal opinion giving his personal opinions "much weight" ...when they should properly carry none." See Berger, 295 U.S. at 88, 55 S.Ct. 629.

See Hodge vu Hurley, 426 F. 3d 368 (6th 2005) "We conclude that trial counsel's failure to object to any aspect of the prosecutor's egregiously improper closing argument was objectively unreasonable. Strickland and, 466 U.S. at 687-88. "A failure to object to comments on witness credibility or derogatory statements by the prosecutor is much less susceptible to the argument that it should be considered reasonable trial strategy. Here to review, the prosecutor accused Hodge of "lying" stated that the

14.

complaining witness was "absolutely believable" accused Dr.
Steiner of testifying " wrongfully" and "unethically" and tell-
ing " a lie", stated that defense counsel was telling "a lie",
severely misrepresented the testimony of Dr..Omley, the exam-
ing physician. We conclude the court said, 'that <u>Hodge</u> was pre-
judiced by his counsel's myriad failures to object to the pro-
secutor's misconduct.

    In <u>United States v. Bass</u>, 712 F. Supp. 2d 931 (D. Neb 2010)
the Court said:

> In this case counsel for the government
> put her credibility at issue by vou ching for
> the witnesses. She first stated that the wit-
> nesses "testified before this trial...and they
> know what the truth is and they understand its
> important and they came before you and told you
> the truth about Jerome Sass." Each of the wit-
> nesses in this case had something substantial
> to gain.(downward departure).
>     This behavior on the part of the prosecutor
> particularly in the context of such weak witne-
> sses, is improper vouching and there is  no
> reason counsel should have failed to object to
> such tactics...The prosecutor wrongfully put
> her "personal reputation behind the testimony of
> its witnesses." <u>Littrell</u>, 439 F. 3d at 882.
> (Motions for a new trial granted). See also
> <u>United States v. Eley</u>, 723 F.2d 1522, 15 26)
> 1619.

Defense counsel failed to seek funds from the Court to hire an
investigator. Counsel failed to file a Motion to Qu ash the in-
dictment on prescription.grounds, counsel failed to investigate
and prepare a .defense; counsel failed to object to the prosecutor'
improper closing.arguments; counsel failed to interview the wit-
nesses that Petitioner told him could support his case and coun-
sel failed to call these witnesses to the.stand, not even peti-
tioner's wife. The record will reflect that all counsel did was
cross examine the state's witnesses, when the state rested coun-
sel said the defense rest.

Petitioner relied to his detriment on the effectiveness of his trial attorney's and the fairness of the State's prosecution. He was misled. It is respectfully argued that after this Hon. Court conducts a cumulative analysis and reviews the totality of the circumstances and the cumulative effect of the Attorney's ineffective and deficient conduct the court will find that counsel's errors undermined confidence in the outcome of the proceedings. Counsel's errors were severe and pervasive and robbed Petitioner of the constitutionally effective defense of which the U.S. and Louisiana Constitutions guarantee him and there is a reasonable probability that but for counsel's errors, the result of the proceedings would have been different.

<u>Claim Four</u>

Defense Counsel Bruce Unangst denied Petitioner his Constitutional Right to testify in his own defense

Petitioner had made it known to his attorney's for over three years that he wanted to testify and tell the jury his story. Petitioner was being framed for a crime he had nothing to do with and the players involved went to great lenghts to implicate and set him up for this murder. Petitioner knew he was the only one that could tell and convince the jury he was innocent. All petitioner's attorney's were in agreement that he would testify. However, the night before he was to testify, attorney Bruce Unangst come to see petitioner and told him that he had changed his mind, that he had done enough, and that Petitioner would not testify. When the other attorney's found out the next day they disagreed, but counsel Unangst disagreed and said it was his decision. Petitioner was not allowed to testify.

16.

A claim of "ineffective assistance of counsel" is the proper framework to analyze a defendant's allegations that his attorney has violated his right to testify. See United States v. Teague, 953 F. 2d 1525,1534 (11th Cir. (en banc)...(1992) where the Court had this to say:

> A criminal defendant has a " fundamental right to testify in his or her own behalf at trial. This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel." (Ibid at 1532). Where counsel has refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant of his right to testify, and that the final decision belongs to the defendant alone, defense counsel has not acted within the r ange of competence demanded of attorney's in criminal cases, and the defendant clearly has not received reasonably effective assistance of counsel.

See Rock v. Arkansas,483 U.S. 52, 97 L.Ed.2d 37, 107 S.Ct. 2704 (1987) said:"The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that are essential to due process of law in a fair adversary process. Faretta v. California, 422 U.S. 806, 8 19 n. 15. The necessary ingredients of the 14th Amendment's guarantee that no one shall be deprived of liberty without due process of law to include a right to be heard and to offer testimony."

The right to testify is also found in the Compulsory Process Clause of the Sixth Ament, which grants a defendant the right to call witnesses in his favor, a r ight that is guaranteed in the criminal courts of the State's by the Fourteenth Amendment. Washington v. Texas, 388 U.S. 14, 17-19, 87 S.Ct. 1920, 1922 (1967) . Logically included in the accused's right to call witnesses whose testimony is material and favorable to his defense, is a right to testify himself, should he decide it is in his favor to do so.

There is no justification today for a rule that denies an accused the opportunity to offer his own testimony.

In State of Louisiana v. Joseph Hampton, 818 So.2d 720, 2000 0522 La. 3/22/02 (2002), the court grant Hampton's writ application to consider whether he voluntarily waived or suffered a deprivation of his right to testify in his own defense, and concluded "It is well settled that a criminal defendant has a constitutional right to testify on his own behalf, and that this right may be waived by the defendant himself. After considering the record, the court found Hampton did not waive his right to testify in his own defense, the court reversed the conviction.

In Petitioner's case, counsel had petitioner believe that the decision of whether petitioner could testify was counsel's, and counsel Bruce Unangst had made that decision. Had petitioner been told he could overrule counsel's decision because whether to testify or not was the defendant's decision alone, he would have testified. Counsel Bruce Unangst denied petitioner effective assistance of counsel and this conviction should be reversed.

### Conclusion.

For all the above and foregoing reasons this Hon. Court should reverse this conviction and order a new trial in accord with the dictates of due process. Alternatively, this Hon. Court should grant an Evidentiary Hearing, appoint petitioner counsel, provide funds for an investigator and allow petitioner to amend and supplement this post conviction relief application.

Respectfully submitted

Carlos A. Rodriguez
# 127087
Ash- 2
La. State Prison
Angola, La. 70712

18.

<u>Certificate of Service</u>

I hereby certify that I have served a true and correct copy
of the foregoing post conviction relief upon the Office of the Dist-
rict Attorney for the Parish of St. Tammany, by placing a copy of
the same in the U.S. Mail on this __30__ day of __9__ 2018.

Carlos Rodriguez

19.

CARLOS ALBERTO RODRIGUEZ          22nd JUDICIAL DISTRICT COURT
                                  ST. TAMMANY PARISH
VERSUS                            CASE NO: 465867-I

DARRELL VANNOY, WARDEN            FILED:
LOUISIANA STATE PENITENTIARY              CLERK OF COURT
ANGOLA, LA.

### MOTION AND ORDER TO COMPEL DISTRICT ATTORNEY TO RESPOND

COMES NOW, Petitioner, Carlos Alberto Rodriguez, acting pro se
for his Motion to compel District Attorney to Respond, respect-
fully requests an Order of this Court compelling the District At-
torney, Parish of St. Tammany, to file a Response to Petitioner's
Application for Post Conviction Relief in case number 465867-I in
accordance with La. C.Cr.P. art. 927, since the Application alleges
claims, which, if established, entitle Petitioner to relief.

   WHEREFORE, Petitioner prays that the above-requested relief
be granted.

                              Respectfully submitted,

                              Carlos Alberto Rodriguez

### CERTIFICATE OF SERVICE

   I HEREBY CERTIFY that I have served a true and correct copy of
the foregoing, upon the office of the district attorney innend for
the Parish of St. Tammany by placing a copy of the same in the U.S.
Mail on this 30 day of 9 , 2018.

                              Carlos Alberto Rodriguez

CARLOS ALBERTO RODRIGUEZ.

VERSUS:

DARRELL VANNOY, WARDEN
LOUISIANA STATE PENITENTIARY
ANGOLA, LA.

22nd JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH
CASE NO: 465867-I

FILED:_____
CLERK OF COURT

O R D E R

In consideration of the foregoing Motion, it is hereby:

ORDERED, DECREED and ADJUDGED that the Office of the District
Attorney of St. Tammany Parish file an Answer to the Application
for Post Conviction Relief in the foregoing matter in a specified
period not to exceed thirty (30) days from the date of this Order.

_____
Judge, 22nd Judicial Dist.

SO ORDERED this_____day of_____2018.

TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 465867-1                                          DIVISION "B"

STATE OF LOUISIANA

VERSUS

CARLOS RODRIGUEZ

FILED: _____

                                    _____
                                    DEPUTY CLERK

### STATE'S RESPONSE TO CARLOS RODRIGUEZ'S
### APPLICATION FOR POST-CONVICTION RELIEF

MAY IT PLEASE THE COURT:

This matter is before the Court pursuant to a *pro se* application for post-conviction relief

submitted to the Court) on September 30, 2018, and stamped as received by the clerk of court on

October 4, 2018. There is no next scheduled court date in this matter.

*Summary of the argument.*   The petitioner's claims—that the statute of limitations

passed before his trial, that the prosecutor engaged in misconduct during closing arguments, that

his trial counsel was ineffective, and that he was denied his right to testify in his own behalf—are

clearly without merit.

*Request for summary adjudication.*   The existing trial record is are sufficient to allow the

Court to determine the factual and legal issues summarily and "without further proceedings"

pursuant to Article 929(A) of the Code of Criminal Procedure. The State requests that this matter

be adjudicated summarily.

PERTINENT FACTS AND PROCEDURAL HISTORY

I.

FILED

AUG 01 2019

MELISSA R. HENRY - CLERK
Deputy_____

This is a first-degree murder case where there exists overwhelming evidence of guilt. The

petitioner's lover, Gina Scramuzza, testified to the plot she concocted with petitioner Rodriguez to

kill Mario Scramuzza at the Scramuzza residence and stage the scene to look like burglary. The

other persons involved in the plot—Erly Montoya and Luis Hernandez-Rodriguez—confirmed that

plot and their participation in it. The information provided by codefendants Scramuzza, Montoya,

and Hernandez-Rodriguez was supported by cell phone records and GPS records, which in turn

were corroborated by (a) license plate photos from the Causeway Bridge, (b) surveillance video

- 1 of 9 -

**EXHIBIT #2**

**STATE'S RESPONSE TO PCRA.**

from a Wal-Mart and a Discount Zone, (c) DNA from the crime scene, (d) the recovery of blue rubber surgical gloves underneath a bridge on I-55 South, and (e) the recovery of the victim's Rolex watch in the center console of the petitioner's truck.

## II.

The indictment against the petitioner was returned on April 22, 2009. The case was charged as a capital case. Trial did not commence until May 16, 2016. The delay, as will be discussed further below, was attributable to a steady stream of defense motions and defense continuances

## III.

The petitioner's trial was held from May 16-20 2016, and concluded with the jury's verdict of guilty as charged. His conviction and sentence was affirmed on appeal on September 15, 2017. State v. Rodriguez, 17-0245 (La. App. 1 Cir. 9/15/17), 2017 WL 4082426. Because the petitioner did not seek further review from the Louisiana Supreme Court, his conviction became final as a matter of state law on September 30, 2017. La. C.Cr. P. art. 922(B).[1]

The petitioner's application for post-conviction relief—dated by him as having been filed September 30, 2019—is timely.

## PETITIONER'S CLAIMS

The petitioner makes two claims in his application for post-conviction relief, as follows:

1.      the time limitation for the prosecution of the case expired before the trial started;

2.      the prosecutor improperly vouched for the truthfulness and credibility of a state witness during closing argument;

3.      ineffective assistance of counsel; and

4.      denial of the right to testify in his own defense.

---

1   Article 922 of the Code of Criminal Procedure provides that, if the petitioner does not timely apply for rehearing or a writ of review from the Louisiana Supreme Court, the conviction is final "when the delay for applying for a rehearing has expired and no application has been made." La. C.Cr. P. art. 922(B). The delay for applying for rehearing is fourteen days. La. C.Cr. P. art. 922(A). Fourteen days from the decision affirming the petitioner's conviction and sentence is September 29, 2019. However, because that date is a legal holiday (Sunday), the last day for applying for rehearing was "the next day which is not a legal holiday," La. C.Cr. P. art. 13, which was September 30, 2019.

## RESPONSE TO THE PETITIONER'S CLAIMS

I.     **The case was brought to trial within the period of limitations set by the Code of Criminal Procedure.**

    A.     Overview of the applicable law.

Under Louisiana's statutory scheme, the State has three years from the institution of prosecution to bring a case charged as a capital case to trial. C.Cr.P. 578(A)(1).

When the period of limitations of Article 578 has apparently accrued, the burden shifts to the state to show interruptions and/or suspensions of the prescriptive period which would make the prosecution statutorily timely. State v. Whalen, 470 So.2d 546, 548 (La. App. 1 Cir. 1985).

When a defendant files a "motion to quash or other preliminary plea," the running of the periods of limitation established by Article 578 are suspended until the ruling of the court thereon: "[t]he relevant period is simply not counted, and the running of the time limit resumes when the motions are ruled on." C.Cr.P. 580; State v. Rome, 93-1221 (La. 1/14/94), 630 So.2d 1284, 1287. Article 580 additionally provides that "in no case shall the state have less than one year after the ruling to commence the trial." Id.

Pleadings which qualify as "preliminary pleas" within the meaning of Article 580 include motions to suppress, applications for discovery and bills of particulars, motions to continuance, and joint motions to continue. State v. Brooks, 02-0792 (La. 2/14/03), 838 So.2d 778, 782 (collecting cases).

    B.     The case was brought to trial in a timely manner.

The indictment against the petitioner was returned on April 22, 2009.

Three years from the institution of prosecution would be April 22, 2012. However, beginning on April 30, 2009, the defendant filed five motions—including a motion to suppress statements—which qualify as preliminary pleas. RECORD ON APPEAL, pp. 78-105. Those motions were still pending when the defendant filed an additional twenty-seven motions on December 19, 2012. RECORD ON APPEAL, pp. 137-329. Those motions were heard in part on January 14, 2013 (RECORD ON APPEAL, pp. 16-20, 636-686), and in part on July 30, 2013 (RECORD ON APPEAL, pp. 25-26, 715-757), and some were not resolved until 16, 2016—the morning of trial (RECORD ON APPEAL, pp. 50-51, 915-920). Particularly, one such motion—the *Motion to Suppress Inculpatory*

*Statements*—was filed on April 30, 2009, and was not resolved until May 16, 2016. See RECORD

ON APPEAL, pp. 78, 916.

By operation of Article 580, the time that passed between the filing of these motions and

the rulings thereon are not counted against the statutory period of limitations. That is, the

limitations for bringing the defendant to trial was suspended on April 30, 2009 (eight days after the

return of the indictment) and remained suspended until May 16, 2016 (the morning of trial). As a

result, there is no merit to the defendant's argument that he was not prosecuted within the period of

limitations set by Articles 578-580 of the Code of Criminal Procedure.

      2.    There is no merit to the defendant's claim that the prosecutor improperly
            vouched for witness testimony.

The petitioner complains about the following comments, made during the prosecution's

rebuttal closing argument:

> I went through her statement and I put a little blue flag on every place
> where she said something that was factual that the police were able to
> corroborate from outside evidence. She said that she, for instance, had to
> go get on the Causeway, back to Mile 16, turn around and went back to her
> house to get rid of the suspicion of neighbors that something was array.
> And then, she went back to work. And sure enough, what do we get? We
> get photographs of her going through the toll plaza. We get her toll tag
> going off. That's true. She told the truth and we can prove it that she told
> the truth.
>
>                           * * *
>
> She said that she had to stop at a credit union to get $1,000 to pay the two
> subcontractors, Erly and Luis. They go to ASI Credit Union; withdrawal, $
> 1,000 that day, that time. Corroboration; that was true.
>
> She says that she had withdrawn money and given it to Carlos before, from
> Chase Bank, $1700, twice. That she paid, the first time she tried to get him
> to kill her husband, which she then told you from the stand, she figures now
> was probably just another child support payment she was making. They go
> to Chase Bank and get the records. It's true; she's telling the truth.

R. at 2021, lines 10-26; R. at 2023, lines 4-20.

These arguments were made after defense counsel, during closing arguments, urged to the

jury that Gina Scramuzza's testimony was "unworthy of belief." R. at 2008, lines 8-17.

The resolution of this claim is governed by the First Circuit Court of Appeal's decision in

State v. Palmer, 00-0216 (La. App. 1 Cir. 12/22/00), 775 So.2d 1231. In that case, the

prosecutor's rebuttal closing argument included statements by the prosecutor that were far more

problematic than the statements here—in Palmer, the prosecutor, referencing a witness named

Brunson, said "I truly believe he's telling the truth." Id. at 1236. The court of appeal reasoned as follows:

> While a prosecutor may not give his personal opinion regarding the veracity of a witness, it is permissible for a prosecutor to draw inferences about a witness's truthfulness from matters on the record. Taken in context, we find the alleged improper comments were confined to answering defense counsel's closing argument, during which defense counsel strenuously asserted that Brunson's testimony was fraught with inconsistencies and that Brunson was a criminal and a liar unworthy of belief. While the comments at issue were less than artfully phrased and ill-advised, we also find them to have been based on the evidence and not personal opinion based on anything outside the record. Thus, the prosecutor did not improperly vouch for the credibility of Brunson.

Palmer, 775 So.2d at 1236 (citations omitted).

In this case, as in Palmer, the prosecutor's allegedly improper comments were made during rebuttal closing argument, and made only after defense counsel urged to the jury that Gina Scramuzza's statement and testimony were unworthy of belief. And in this case, as in Palmer, the prosecutor's comments were "based on the evidence"—the prosecutor urged the jury to conclude that Gina Scramuzza's statement was worthy of belief because it was corroborated by other evidence.

The prosecutor in this case was simply "drawing inferences about a witness's truthfulness from matters on the record," and there is nothing improper about that.

This claim does not warrant the granting of post-conviction relief.

3.      There is no merit to the defendant's claims of ineffective assistance of counsel.

Ineffective assistance of counsel claims are governed by Strickland v. Washington, 466 U.S. 668 (1984). There, the Supreme Court held that a petitioner is not entitled to a new trial unless he shows "deficient performance" ("that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment") and "prejudice" ("that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable"). Strickland, 466 U.S. at 687.

A.      The claim that counsel should have moved to quash the indictment on statute-of-limitations grounds.

Trial counsel does not render ineffective assistance by declining to file motions which lack merit. For the reasons stated in § 1, above, there is no merit to the defendant's claim that the period of limitations had passed. The petitioner therefore fails to demonstrate deficient performance or prejudice.

B.   The claim that counsel should have requested funds from the Court to hire investigators and expert witnesses.

The petitioner argues:

> In petitioner' case he provided counsel with names of witnesses he wanted counsel to interview, and told him his wife's name and address. Counsel took no action on petitioner's request. Counsel did inexplicably fail to interview and call at trial a number of fact witnesses petitioner told him would provide testimony helpful to his defense and he likewise failed to seek out expert witnesses requested by petitioner. Counsel's failure to investigate interview  and call witnesses and to seek funds from the court to hire an investigator was ineffective assistance.

*Memorandum Brief Support Post Conviction Relief*, pg. 13.

To demonstrate ineffective assistance based upon trial counsel's failure to investigate, a petitioner "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted). Here, the petitioner does not identify what information would have been revealed by further investigation.

"[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citation omitted). Here, the petitioner fails to name the witnesses, or set out their proposed testimony, or to describe how their testimony would have been favorable to any particular defense he sought to raise.

By making only conclusory assertions, the petitioner fails to meet his burden of demonstrating deficient performance or prejudice.

C.   The claim that counsel failed to object to improper closing arguments.

Trial counsel does not perform deficiently by refusing to lodge meritless objections. For the reasons stated in § 2, above, there is no merit to the defendant's argument that the statutory period of limitations had passed. For that reason, the petitioner fails to demonstrate deficient performance or prejudice.

4.    There is no merit to the defendant's claim that defense counsel forbade the defendant from testifying.

The defendant claims that he intended to testify at trial, but his attorney Bruce Unangst told him that he "was not allowed to testify." *Memorandum Brief Support Post Conviction Relief*, pg. 16.

A.    Overview of the applicable law.

The jurisprudence governing this claim comes from State v. Hampton, 00-0522 (La. 3/22/02), 818 So.2d 720, and State v. James, 05-2512 (La. 9/26/06), 938 So.2d 691, and State v. C.L.J., 11-0972 (La. App. 1 Cir. 12/29/11), 2011 WL 69165293

In State v. Hampton, 00-0522 (La. 3/22/02), 818 So.2d 720, the Louisiana Supreme Court stated: "While we believe the Constitution and jurisprudence are well-settled in that a criminal defendant is guaranteed the right to testify in his own defense, we also believe a broad-based ruling has the potential of opening the flood gates for post-conviction relief petitions in virtually every case where the defendant did not testify. Our intention is to narrow the reach of the case sub judice and prevent frivolous claims." 818 So.2d at 727. In doing so, the Court adopted the approach taken by the United States District Court for the District of Puerto Rico:

In determining whether a defendant's right to testify was violated or waived by his silence during trial, we can look to Passos-Paternina v. United States, 12 F.Supp.2d 231 (D.P.R.1998), for guidance. As a guideline, the Passos-Paternina court held:

(1)    absent extraordinary circumstances that should alert the trial court to a conflict between attorney and client, the court should not inquire into a criminal defendant's right to testify. The court should assume, that a criminal defendant, by not 'attempting to take the stand,' has knowingly and voluntarily waived his right;

(2)    the court must consider whether the petitioner has waived his right to testify.... [The defendant can only] rebut that presumption ... by showing that his attorney caused him to forego his right to testify [(a) by alleging specific facts, including an affidavit by the defendant's trial counsel] from which the court could reasonably find that trial counsel 'told [the defendant] that he was legally forbidden to testify or in some similar way compelled him to remain silent ...' [(b) by demonstrating from the record] that those 'specific factual allegations would be credible ...'

Id. at 239-40 (citations omitted). We find this framework persuasive Hampton, 818 So.2d at 729-730.

The case of State v. James, 05-2512 (La. 9/26/06), 938 So.2d 691, involved an application for post-conviction relief in which the petitioner alleged "that (1) he and his attorneys had agreed well before trial that he would testify; (2) that counsel then 'unequivocally erred in usurping his decision-making power' by preventing him from taking the stand; and (3) that the trial court failed to conduct any inquiry as to whether he had been informed of his right to testify and whether he chose to testify or not." 938 So.2d at 692.

The district court denied relief summarily. The Court of Appeal reversed and remanded the matter for an evidentiary hearing. The Louisiana Supreme Court held that the district court was correct to deny relief, and the Court of Appeal erred by ordering an evidentiary hearing:

> The court of appeal's order for an evidentiary hearing on one of three claims asserted by respondent is vacated and the district court's judgment summarily dismissing respondent/petitioner's application for post-conviction relief of all claims asserted is reinstated.
>
> Though this Court recognizes that an attorney's interference with a defendant's desire to testify may violate the defendant's constitutional rights, *we also require that the claimant "allege specific facts, including an affidavit from counsel" and point to record evidence to support his claim.* State v. Hampton, 00-0522, p. 14-15 (La.3/22/02), 818 So.2d 720, 729-30. We derived these criteria from the decision in Passos-Paternina v. United States, 12 F.Supp.2d 231, 239 (D.P.R.1998), which emphasized that "mere conclusory allegations are insufficient" to rebut a presumption arising from a defendant's silence at trial that he waived his right to testify. *The petitioner must therefore "allege specific facts from which a court could reasonably find" that counsel either informed his client that he was legally forbidden to testify or in some way compelled him to remain silent, and he must also "demonstrate from the record that those specific factual allegations would be credible."* Passos-Paternina, 12 F.Supp.2d at 239 (internal quotation marks and citation omitted); see also Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir.1991) (allegation in petition that inmate told his attorney that he wished to testify and his attorney told him he could not testify insufficient to require a hearing on the claim: "Some greater particularity is necessary . . . [and] some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify . . . to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.")
>
> The criteria adopted in Hampton and derived from Passos-Paternina are therefore guidelines not only for prevailing on the merits of the claim but also for making the claim with sufficient particularity to withstand summary denial on the pleadings without further evidentiary proceedings.

Id. at 691 (emphasis supplied).

Thereafter, in State v. C.L.J., 11-0972 (La. App. 1 Cir. 12/29/11), 2011 WL 6916529, the First Circuit Court of Appeal considered a defendant's claim that he was denied the right to testify. The Court found that the claim was properly summarily dismissed because: "

Herein, there was no indication to the trial court that the defendant and his counsel were in conflict over this issue, nor has the defendant presented an affidavit by trial counsel to that effect. The defendant submitted only the proffered testimony of his brother and father, who claimed the defendant wanted to testify, and his own affidavit in which he claimed that he had notified his attorney that he wanted to testify and swore to facts that disputed the other crimes testimony of his niece. However, without the affidavit by counsel required by Hampton, these items are not sufficient to rebut the presumption that the defendant voluntarily waived his right to testify.

2011 WL 6916529, at *3.

> **B.**    **The petitioner is not entitled to relief because he has not supplied an affidavit from trial counsel or pointed to a basis in the existing record which shows the allegations to be credible.**

To be entitled to an evidentiary hearing on this claim, the petitioner would have to either supply an affidavit from trial counsel verifying the petitioner's allegations or point to a basis in the existing record lending to support his claim. State v. Hampton, *supra*, State v. James, *supra*.

The petitioner in this case has not supplied an affidavit from his trial counsel. He has not pointed to a basis in the existing record which shows the allegations to credible. His conclusory assertions therefore lack sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim. This claim, like the claim in State v. James, *supra*, should be denied summarily.

## CONCLUSION AND PRAYER

The petitioner has failed to demonstrate that he is entitled to the relief he seeks. The State respectfully prays that his application for post-conviction relief be DENIED.

Respectfully submitted,

_Matthew Caplan_
Matthew Caplan, LSBA #31650
Assistant District Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of August, 2019, I mailed a copy of this pleading to the petitioner by first-class mail, postage pre-paid, at the following address:

Carlos Rodriguez, DOC # 127087
David Wade Correctional Center
670 Bell Hill Road
Homer, LA 71040

_Matthew Caplan_
Matthew Caplan, LSBA #31650
Assistant District Attorney

CARLOS ALBERTO RODRIGUEZ

VERSUS

DARRYL VANNOY, WARDEN

FILED: Oct 9, 2019

NO. 465867-1 "B"

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

_____
DEPUTY CLERK

## JUDGMENT ON POST-CONVICTION
## WITH INCORPORATED REASONS

The petitioner, Carlos Alberto Rodriguez ("Rodriguez" or "petitioner") filed a timely pro se application for Post-Conviction Relief on October 4, 2018. The Court ordered the District Attorney's office to respond to the claims raised in the application. The District Attorney's office filed a response on August 1, 2019. No rebuttal has been received from the petitioner. After considering the application, the state's response and the applicable law, the Court finds the application may be summarily dismissed pursuant to La. C.Cr.P. art. 929.

The record shows Rodriguez was charged by grand jury indictment with the first degree murder of Mario Scramuzza, Jr., a violation of La. R.S. 14:30. Luis Starlyn Rodriguez-Hernandez (no relation to the petitioner), Erly Montoya and Gina Scramuzza were charged with first degree murder in the same indictment. The state severed the charges against the petitioner and tried him separately. Although the state initially gave notice of its intent to pursue capital punishment, the state later agreed to forego seeking the death penalty. Following a jury trial, the petitioner was found guilty as charged. He was sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence.

Rodriguez appealed, raising two arguments which were consolidated for review. First, Rodriguez argued that the trial court erred in denying his motion for post-verdict judgment of acquittal, based on insufficiency of the evidence. Second, Rodriguez argued the evidence was insufficient to support his conviction. After reviewing the evidence and testimony, particularly the testimonies of the three co-defendants who testified for the state, the appellate court concluded:

> While the defendant claims otherwise on appeal, Mrs. Scramuzza, Montoya, and Rodriguez-Hernandez provided detailed accounts of the robbery and murder of the victim herein [Mrs. Scramuzza's husband] that were consistent with the phone records, DNA evidence, surveillance footage, GPS coordinates, and the items recovered during the execution of search warrants for the vehicles and residences of the involved parties.

*State v. Rodriguez*, 2017-0245, p. 17 (La. App. 1 Cir. 9/15/17) (unpub'd). Rodriguez did not seek

1

**EXHIBIT #3**

DISTRICT COURT JUDGMENT ON PCRA

a writ of review with the state supreme court; thus, under operation of La. C.Cr.P. art. 922, his conviction became final fourteen days after rendition of the court of appeal's judgment, on September 29, 2017.

Rodriguez had two years thereafter to seek post-conviction relief. La. C.Cr.P. art. 930.8(A). His post-conviction application, filed on October 4, 2018, was filed timely. In his post-conviction application, Rodriguez raises four claims: (1) the time limitation for prosecution in this case expired before the trial started; (2) the state committed prosecutorial misconduct when the prosecutor vouched for the truthfulness and credibility of a state witness during closing argument; (3) trial counsel afforded constitutionally ineffective assistance of counsel by failing to investigate and prepare a defense; failing to file a motion to quash based on expiration of time limitations of La. C.Cr.P. art. 578; failing to request funds to hire investigators and expert witnesses; and failing to object to the prosecutor's closing argument; and (4) defense trial counsel denied Rodriguez his constitutional right to testify in his own defense. Each of these claims will be addressed individually, below.

*Time Limitations for Prosecution*

Rodriguez was charged by bill of indictment filed on April 22, 2009 with committing first degree murder. Vol. 1, p. 76.[1] The state filed notice of its intent to seek the death penalty in its prosecution of petitioner. Vol. 1, p. 106. Pursuant to La. C.Cr.P. art. 578(A)(1), the state had three years from the date of institution of prosecution to commence trial. The running of the period of limitation established in Article 578 is suspended, however, when a defendant files a motion to quash or other preliminary plea. The time period is suspended until the ruling of the court on the preliminary plea. *See* La. C.Cr.P. art. 580(A).

Rodriguez argues that no defense motion seeking continuance was filed before the statutory time limitation had already expired. The Court finds that the petitioner mistakenly believes that only a motion for continuance would suspend the running of the time limitation. The jurisprudence has held differently. For the purposes of art. 580, a preliminary plea is understood to be "any pleading or motion filed by the defense which has the effect of delaying trial." *State v. Brooks*, 2002-0792, p. 6 (La. 2/14/03); 838 So.2d 778, 782. "These pleadings include properly filed

---

[1] References are to the volume and page number of the appellate record in this matter.

2

motions to quash, motions to suppress, or motions for a continuance, as well as applications for discovery and bills of particulars." *Id.*

The state points out in its opposition that eight days after the indictment was filed, defense attorneys filed motions on behalf of the petitioner, including a motion to suppress statements. The record shows that on April 30, 2009, the defense filed several motions, including: Motion to Suppress Inculpatory Statements (Vol. 1, p. 78-79); Motion to Reveal Rap Sheets and NCIC Reports (Vol. 1, p. 80-81); Motion for Order Allowing Access To Physical Evidence (Vol. 1, p. 82-84); and Motion for Discovery (Vol. 1, p. 85-105). These motions qualify as "preliminary pleas" for the purpose of determining the suspension of the time limitation of Art. 578. The record shows these motions were filed on April 30, 2009, eight days after the petitioner was indicted, and were not finally resolved until May 16, 2016, the morning of trial. Vol. 1, p. 50; Vol. 4, p. 916. The Court noted that these were "outstanding motions;" and trial defense counsel stated: "I will note these were all filed by prior counsel very early on by appointment, not by me or our office." Vol. 4, p. 916-917.

The Court agrees with the state that, by operation of Article 580 and the record in this case, the time that passed between the filing of these motions and the rulings thereon are not counted against the statutory period of limitations. The time limitation for bringing the petitioner to trial was suspended on April 30, 2009, eight days after the indictment was handed down, and remained suspended until May 16, 2016, the morning of trial. The Court finds there is no merit to the petitioner's argument that he was not prosecuted within the period of limitations set by La. C.Cr.P. art. 578-580.

### *Prosecutorial Misconduct*

Rodriguez contends that the prosecutor, in rebuttal closing argument, improperly and illegally vouched for the truthfulness and credibility of a state witness. Rodriguez points to a portion of the state's rebuttal closing argument where the prosecutor was commenting on the testimony of co-defendant, Gina Scramuzza, as follows: "...that's true, she told the truth and we can prove it that she told the truth" and "...that corroborated that she told the truth there, too" and later "It's true; she's telling the truth." Vol. 9, p. 2021, 2023. The petitioner believes this prosecutorial misconduct resulted in a verdict that cannot be supported.

While a prosecutor may not give his personal opinion regarding the veracity of a witness,

3

it is permissible for a prosecutor to draw inferences about a witness's truthfulness from matters on the record. *See* La.C.Cr. P. art. 774; *State v. Williams*, 96–1023, p. 13 (La.1/21/98), 708 So.2d 703, 715, *cert. denied*, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998).

A review of the record shows that the prosecutor's statements were in direct response to defense counsel's closing argument about the statements of the co-defendants: "I believe they're unworthy of your belief." Vol. 9, p. 2011. In response, the prosecutor reviewed all of the evidence presented that supported the testimony of Gina Scramuzza. In context, the prosecutor did not vouch for the witness's testimony, *i.e.* "I believe the witness is telling the truth," but showed how the witness's testimony was supported by other evidence. The prosecutor then argued that this corroboration should result in the jury's believing the testimony to be true. The scope of counsel's argument must "be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." La. C.Cr.P. art. 774. Moreover, "[t]he state's rebuttal shall be confined to answering the argument of the defendant." *Id.* The Court finds that the prosecutor stayed within the scope of proper argument.

The Court holds that there is no merit to the petitioner's claim, as there was no prosecutorial misconduct in the closing argument.

### *Ineffective Assistance of Counsel*

Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a petitioner claiming ineffective assistance of counsel must show that (1) counsel's performance was deficient, falling below an "effective standard of reasonableness," and (2) the deficient performance prejudiced the petitioner. *Id.*, 466 U.S. at 687-688, 104 S.Ct. at 2065. In order to show prejudice, the petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*, 466 U.S. at 694, 104 S.Ct. at 2068. In order for a claim of ineffective assistance of counsel to be successful, both prongs of the analysis must be shown.

Rodriguez contends that defense trial counsel afforded him constitutionally ineffective assistance of counsel in several respects. Rodriguez argues that defense trial counsel was ineffective for failing to file a motion to quash based on the expiration of the time limitations for prosecution found in La. C.Cr.P. art. 578. Further, Rodrigues asserts that defense trial counsel was ineffective for failing to object to the prosecutor's rebuttal closing argument. This Court has

4

already found that petitioner's substantive claims as to these issues are without merit. The law holds that if the substantive issue an attorney failed to raise has no merit, then the claim the attorney was ineffective for failing to raise the issue also has no merit. *State ex rel. Roper v. Cain*, 1999-2173 (La. App. 1 Cir. 10/26/99), 763 So.2d 1, 5 (*per curiam*), *writ denied*, 2000-0975 (La. 11/17/00), 773 So.2d 733. Counsel is not ineffective for failing to take futile steps. *State v. Tillman,* 2015-0635, p. 1 (La. 9/25/15); 175 So.3d 950 (Mem). The Court holds that Rodriguez has failed to show deficient performance on the part of his defense trial counsel in these two respects.

Rodriguez also argues that trial counsel was ineffective by failing to investigate and prepare a defense and for failing to request funds to hire investigators and expert witnesses. A defendant who asserts a claim of ineffective counsel upon a failure to investigate must allege with specificity what the investigation would have revealed and how it would have altered the outcome of trial or sentencing. *Tillman,* 2015-0635, p. 6; 175 So.3d at 953. General statements and conclusory charges will not suffice. *State ex rel. Sterling v. State*, 2015-1895, p. 2 (La. 12/16/16); 207 So.3d 1048, 1052.

Other than his wife (whose name is not provided), Rodriguez does not specifically name who composed the "number of fact witnesses" Rodriguez allegedly told counsel would provide testimony helpful to his defense, nor does he indicate what their testimony might reveal and how such testimony would have altered the outcome of the trial. Similarly, Rodriguez does not identify what type of expert witnesses he feels were needed, nor what their investigation would reveal. Instead, the Court finds that Rodriguez presents merely general and conclusory statements which are not sufficient to prove deficient performance.

The Court holds that Rodriguez has failed to prove ineffective assistance of defense trial counsel.

<u>*Right to Testify*</u>

The petitioner claims his constitutional right to testify in his own defense was violated when defense counsel refused to allow him to take the stand. Rodriguez asserts he expressed his desire to testify to defense counsel for over three years. He claims that the night before he was to testify, the lead defense counsel, Bruce Unangst, visited him and indicated he did not think Rodriguez should testify. Rodriguez asserts that Unangst stated that it was his (Unangst's)

5

decision to make.

Although an attorney's interference with a defendant's desire to testify may violate the defendant's constitutional rights, the law requires "that the claimant 'allege specific facts, including an affidavit from counsel' and point to record evidence to support his claim." *State v. James*, 2005-2512, p. 1 (La. 9/29/06); 938 So.2d 691, *citing State v. Hampton*, 2000-0522, p. 14-15 (La. 3/22/02); 818 So.2d 720, 729-730. The law holds that mere conclusory allegations are insufficient to rebut a presumption arising from the defendant's silence at trial that he waived his right to testify. *Id.*

The record shows that while the jury was out of the courtroom, and the Court and counsel were engaged in their conference on jury instructions, the issue arose as to whether the defendant would testify. At that time, Mr. Unangst, lead defense trial counsel, stated: "I have advised Mr. Rodriguez to not testify." Vol. 9, p. 1984. A member of the prosecution team responded: "Judge, again, note for the record, the defendant is present in Court and he sits hearing what his attorney says and makes no comment, otherwise. So that's acceptance of the fact that he's choosing not to testify. The attorney's addressed the record to be clear." *Id.* The Court responded: "I will note that he is present in the courtroom. And beyond that, I'm not going to address to what Counsel and he have opined about his testimony or not. That's a strategical decision to be made by defense, the defendant and his Counsel." *Id.* The prosecution clarified that they were pointing out the "particular phrasing" of defense counsel's statement, "that he says I've advised him not to, but not what the decision is." Vol. 9, p. 1985. The Court reiterated: "...we'll make that decision at the point when you rest or otherwise." *Id.* Later, after the state rested, Mr. Unangst stated, "Your Honor, at this time, the defense rests." Vol. 9, p. 1990.

Rodriguez does not provide the Court with an affidavit from counsel, nor does he point to record evidence to support his claim. There was nothing in the statements of counsel on the record that would have alerted the Court that there was a conflict between Rodriguez and his counsel on this issue. In fact, Rodriguez was in the courtroom, listened to the statements of counsel made in open court, and failed to indicate that he disagreed with counsel and desired to testify on his own behalf. The Court finds the petitioner has failed to satisfy the guidelines for prevailing on the merits of the claim raised, and also for making the claim with sufficient particularity to withstand summary denial on the pleadings without further evidentiary proceedings.

6

None of the grounds raised by petitioner have merit.

Accordingly, the Court denies and dismisses petitioner Carlos Alberto Rodriguez's

Application for Post-Conviction Relief in its entirety.

Covington, Louisiana, this ___ day of ~~September~~ October, 2019.


Hon. August J. Hand, Judge
22nd Judicial District Court, Division B

7

IN THE

22nd   JUDICIAL DISTRICT COURT

PARISH OF   ST. TAMMANY

STATE OF LOUISIANA


DOCKET NUMBER:   465867-1_____     SECTION/DIVISION:   "B"_____


MOVANT:   CARLOS ALBERTO RODRIGUEZ_____

- VERSUS -

STATE OF LOUISIANA

FILED: ___OCT 25 2019_____     _Erik Barthels_____ CLERK

Erik Barthels, Deputy Clerk

### NOTICE OF INTENT TO SEEK WRIT

NOW INTO COURT COMES movant, CARLOS A. RODRIGUEZ_____, acting
pro se' and moves this Honorable Court for an Order granting
authorization to apply to the:_FIRST_____Circuit Court of Appeals;
from an order dated: _08 Oct./19_ denying: _POST CONVICTION RELIEF___
_APPLICATION_____

Respectfully Submitted,

Date: _22 October_,20_19_    s/ _Carlos A. Rodriguez #127087_
CARLOS ALBERTO RODRIGUEZ #127087
David Wade Correctional Center
670 Bell Hill Road -Unit: H2-B_
Homer, LA 71040-2150


### O R D E R

CONSIDERING THE ABOVE AND FOREGOING MOTION:

IT IS ORDERED THAT the movant be and he is hereby authorized
to take Supervisory Writ to the _1ns_ Circuit Court of Appeal;
for the State of Louisiana, returnable on or about the _____
day of _December_ 20_15_.

READ, RENDERED, AND SIGNED ON THIS _ DAY OF _Nov_,20_15_.

_____
DISTRICT COURT JUDGE

A TRUE COPY

**EXHIBIT #4**

**NOTICE OF INTENT TO SEEK WRIT**

IN THE

FIRST CIRCUIT COURT OF APPEAL

STATE OF LOUISIANA

**************

STATE OF LOUISIANA, Respondent

vs.

CARLOS A. RODRIGUEZ, Petitioner

_____

<u>APPLICATION FOR SUPERVISORY WRIT</u>

_____

FROM THE 22nd JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
DOCKET No. 465867-1  "B"
DENIAL OF POST CONVICTION RELIEF APPLICATION
HONORABLE AUGUST J. HAND, Presiding

_____

<u>PETITIONER'S ORIGINAL BRIEF</u>

Respectfully Submitted,

Carlos A. Rodriguez, DOC #127087
David Wade Correctional Center
670 Bell Hill Rd. H2B
Homer, LOUISIANA  71040-2150

Petitioner pro se



<u>EXHIBIT #5</u>

<u>PETITIONER'S WRIT TO 1ST CIR/APP</u>

INDEX

**Page**

STATEMENT OF JURISDICTION .......................... 1

STATEMENT OF THE CASE .............................. 1

ASSIGNMENT OF ERRORS .............................. 2

   ERROR No. 4 .......................... 3

CONCLUSION ........................................ 14

CERTIFICATE OF SERVICE ............................ 14

## EXHIBITS

<u>EXHIBIT #1</u> ... POST CONVICTION RELIEF APPLICATION

<u>EXHIBIT #2</u> ... STATE'S RESPONSE TO POST CONVICTION RELIEF APP.

<u>EXHIBIT #3</u> ... DISTRICT COURT DENIAL OF PCRA

<u>EXHIBIT #4</u> ... NOTICE OF INTENT TO SEEK WRIT W/RETURN DATE

IN THE
FIRST CIRCUIT COURT OF APPEAL
STATE OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*\*

STATE OF LOUISIANA
Respondent

vs.

CARLOS A. RODRIGUEZ
Petitioner

_____

APPLICATION FOR SUPERVISORY WRIT

_____

MAY IT PLEASE THE COURT:

Comes now: CARLOS A. RODRIGUEZ (DOC #127087), Petitioner pro
se, who is support of his Application for Supervisory Writ repre-
sents the following:

STATEMENT OF JURISDICTION

The Louisiana Court of Appeal for the First Circuit has
supervisory jurisdiction to hear Petitioner's Writ Application
pursuant to LSA-Constitution Art. 5 § 10(B); said jurisdiciton is
also conferred pursuant to La. C.Cr.P. Art. 930.6.

STATEMENT OF THE CASE

On or about April 22, 2009, Petitioner was indicted for the
charge of First Degree Murder. Trial commenced on May 16, 2016,
and Petitioner was convicted as charged in a jury trial and later
sentenced to life imprisonment at hard labor without the benefit
of probation, parole or suspension of sentence.

On or about September 30, 2018, Petitioner filed with the
District Court his Application for Post Conviction Relief. SEE
EXHIBIT #1

On August 1, 2019, the State filed its Response to Petitioner's
Post Conviction Relief Application. SEE EXHIBIT #2

-1-

On October 8, 2019, the District Court <u>denied</u> Petitioner's Application for Post Conviction Relief. <u>EXHIBIT #3</u>

On October 22, 2019, Petitioner filed with the District Court a NOTICE OF INTENT TO SEEK WRIT with this Honorable Court. The District Court granted until on or about December 4, 2019, for Petitioner to file Writs with the Court. <u>EXHIBIT #4</u>

<u>ASSIGNMENT OF ERRORS</u>

<u>ERROR No. 1</u>: THE DISTRICT COURT ERRED WHEN IT DENIED PETITIONER'S CLAIM THAT THE TIME LIMITATION FOR THE PROSECUTION OF THE CASE EXPIRED BEFORE THE TRIAL STARTED;

<u>ERROR No. 2</u>: THE DISTRICT COURT ERRED WHEN IT DENIED PETITIONER'S CLAIM THAT THE PROSECUTOR IMPROPERLY VOUCHED FOR THE TRUTHFULNESS AND CREDIBILITY OF A STATE WITNESS DURING CLOSING ARGUMENTS;

<u>ERROR No. 3</u>: THE DISTRICT COURT ERRED WHEN IT DENIED PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL; and

<u>ERROR No. 4</u>: THE DISTRICT COURT ERRED WHEN IT DENIED PETITIONER'S CLAIM THAT HE WAS DENIED HIS RIGHT TO TESTIFY IN HIS OWN DEFENSE A CLEAR CONSTITUTIONAL VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

<u>ARGUMENTS</u>

<u>ASSIGNMENT OF ERRORS Nos. 1, 2, 3</u>

With all due respect to the Court, Petitioner asks the Court to review Claims 1, 2 and 3 as they are explained in the Application for Post Conviction Relief attached hereto, as they constitute a violation of the 14th Amendment to the United States Constitution as well as a violation of the Sixth Amendment to the United States Constitution

Due to the serious Constitutional violation stated in Claim No. 4, as Petitioner was denied his right to testify in his own defense during trial, Petitioner will address such an issue in the following assignment of error. The Constitution is very well protective of a defendant's right to testify in his own defense.

-2-

ERROR No. 4

THE DISTRICT COURT ERRED WHEN IT DENIED PETITIONER'S
CLAIM THAT HE WAS DENIED HIS RIGHT TO TESTIFY IN HIS
OWN DEFENSE A CLEAR CONSTITUTIONAL VIOLATION OF THE
SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION.

ARGUMENT

Petitioner, during pretrial, on several occasions and during
his criminal trial in the presence of District Attorney and trial
court judge made reference to his absolute desire to testify in
his own behalf. Prior to trial and during criminal trial defense
counsel Unangst made it specifically clear he would not allow
Petitioner to testify. Unangst gave no justifiable reasons for a
sufficient basis for not allowing Petitioner to testify, nor did
Unangst apprise Petitioner that it was his constitutional right
to testify in his own behalf and his decision only and not Unangst.
(Counsel failure to advise/inform Petitioner of his right to testify
in capital murder trial penalty phase constituted ineffective assis-
tance of counsel. Cannon v. McBride, 395 F.3d 376, 386 (7Cir.2005).

Acting under the authority pursuant to LSA-C.Cr.P. Art. 16,
as of ministerial duty, the trial court judge took control when the
matter arose during the criminal trial, ordering the issue of
Petitioner's desire to testify be placed on hold until later pro-
ceeding of trial. No objections were made by any parties, State
or Defense. (When the matter arose before the District Attorney
and trial court judge about conflict of defense counsel and Peti-
tioner of his desire to testify; under A.B.A. Standards, as members
of Louisiana Bar, D.A., Judge, and Unangst had obligation of
ministerial duty ensuring justice prevail, not contrary blaming
layman Petitioner).

Trial commenced to its fullest without the matter as ordered
by the trial judge to take place concerning Petitioner's desire to
testify. As a result of Petitioner being denied of his federal
constitutional right to testify in his own defense, to tell his
story, the jury found him guilty as charged. U.S.C.A. 5th, 6th, 14th.

-3-

Petitioner contends because he was prevented from testifying at his criminal trial, after unequivocally expressed his desire to do so, he was denied a fundamental right and suffers detrimental prejudice, such as contrary to the guaranteed protection under Federal Constitution Amendments Fifth, Sixth and Fourteenth rights. Further, Petitioner avers as of result of violations of these Federal Constituion Rights his conviction and sentence is invalid and such unlawful conviction and sentence mandate reversal.

Petitioner argues that his attorney - Unangst, deprived him of his constitutional right to testify in his own behalf when counsel rested the defense case without calling him to the stand, despite his repeated indications that he wanted to testify. Petitioner avers although the State respond otherwise that he waived his right to testify either because he did not affirmatively assert that right during his trial or because he knew of his right to testify, yet his silence is an act of acquiesced in his attorney's decision not to call him as a witness, this is without merits. This is supported by the criminal trial records, when the matters came to the attention of the trial court that Petitioner desired to testify and his desire to testify were in conflict with attorney Unangst in which the judge ordered the matters holded until later trial proceedings to be continued. Those ordered criminal proceedings referred to Petitioner's desire to testify in his own defense never occurred, and without objection from defense counsel thereto. Petitioner was denied effective assistance of trial counsel and subject to prejudice since he was deprived to tell his side of the story contrary to those who testified against him, and as of further result found him guilty as charged based upon one sided theory of the crime that was deceived. In this respect, Petitioner argues he is entitled to an evidentiary hearing to develop the criminal record of his side of defense, with appointment of counsel, in order to consult with for professional advice in his rebuttal desired defense, as of right to counsel. Strickland v. Washington, supra.

-4-

Also, counsel is needed in assistance to obtain witnesses cocnerning attorney's Unangst ineffectiveness, Petitioner is in contact with, but as a layman has no idea of legal methods dealing with supporting witnesses. U.S.C.A. 6th and 14th Amendments Rights as guaranteed under Strickland vs. Washington's standard mandate adequate assistance of counsel, and Court's appointment of one when claim has highly potential to be non-frivolous as shown herein. Deprivation of the opportunity to testify is indeed a miscarriage of justice requiring the granting of a new trial. Wright v. Estelle, 572 F.2d 1071, 1074, at 1078 (5th.Cir.1978).

Petitioner cited as jurisprudence governing his claim on supporting merits that defense counsel forbade him from testifying as applicable, State v. Hampton, 818 So.2d 720 (La.2002). The State of Louisiana provided also, Hampton, supra and State v. C.L.J, 11-0972, 2011 WL69165293 (La.ApplCir.2011). In C.L.J's claim that he was denied the right to testify. The Court found that the claim was properly summarily dismissed because:

> "Herein there was no indication to the trial court that the defendant and his counsel were in conflict over this issue, nor has the defendant presented an affidavit by trial counsel to that effect. The defendant submitted only the proffered testimony of his brother and father who claimed that defendant wanted to testify, and his own affidavit in which he claimed that he had notified his attorney that he wanted to testify and swore to facts that disputed the other crimes testimony of his niece. However, without the affidavit by counsel required by Hampton, these items are not sufficient to rebut the presumption that the defendant voluntarily waived his right to testify." 2011-WL-6916529, at 3.

The State further argued that Petitioner is not entitled to relief because he has not supplied an affidavit from trial counsel or pointed to a basis in the existing record which shows the allegations to be credible; thus relying on State v. Hampton,supra, and State v. James, 938 So.2d 691 (La.2006). Among James's claim of counsel preventing him to testify, he also alleged that:

> "The trial court failed to conduct an inquiry as to whether he had been informed of his right to testify and whether he chose to testify or not. 938 So.2d @ 692."

Accordingly, based upon the rebuttal presumption pre-requisite principle criteria from the decision in Hampton, supra, as adopted by the standard set forth in Passos-Paternina v. United States,

12 F.Supp.2d 231 (D.P.R. 1998), the trial judge in the present case
of Carlos Rodriguez erroneously denied Post Conviction Relief Appli-
cation of non-frivolous constitutional violation, thus, of which were
not a mere conclusory allegation of trial counsel's preventing him
of testifying at this criminal trial. For instance, as a guideline
the Passos-Paternina court held:

> "(1)Absent extraordinary circumstances that should
> alert the trial court to a conflict between attorney
> and client, the court should not inquire into a
> criminal defendant's right to testify. The Court
> should assume, that a criminal defendant, by not
> attempting to take the stand, his knowingly and
> voluntarily waived his right;
>
> (2) The court must consider whether the Petitioner has
> waived his right to testify. The defendant can only
> rebutt that presumption by showing that his attorney
> caused him to forego his right to testify: (a) by
> alleging specific facts, including an affidavit by
> the defendant's trial counsel from which the could
> reasonably find that counsel told the defendant that
> he was legally forbidden to testify, or in some similar
> way compelled him to remain silent; (b) by demonstrating
> from the record that those specific factual allegation
> would be credible. Id, at 239-30."

Petitioner submit, that the State's prosecution, trial judge
knew that defense counsel and Petitioner were in conflict with his
desire to testify. Thus, such personal knowledge initiative trial
judge to order proceedings on the matter later during criminal trial.
However, those proceedings never occurred. In the post conviction
proceedings the State's prosecution used the applicable case law,
State v. Hampton, supra, seeking trial court denial on merit; in
which the trial judge did use Hampton to deny Petitioner's relief.
Petitioner points out although per Hampton is controlling case law
used by both State prosecution and trial judge, they failed to abide
by Hampton's standard: (a) Petitioner created extraordinary circums-
tances of such nature during criminal trial alerting State prose-
cution and trial judge that defense counsel and Petitioner were in
conflict with his desire to testify; (b) absent the issue to tes-
tify being taken up prior to trial ending and absent to trial counsel
objecting before rendered guilty verdict, or State's prosecution
objecting and the lack of ministerial duty owed of trial judge to
inquiry and make a ruling on matter as ordered, thus all inactions

-6-

caused Petitioner to forego his right to testify involuntarily.
These mishaps are sufficient enough to support rebuttal of any
presumption otherwise in error. When an attorney's interference
with a defendant's desire to testify may violate the defendant's
constitutional rights. State v. James, 938 So.2d 691 (La.2006).

It is clear that a criminal defendant has a constitutional
right to testify in his own behalf at this trial. State v. Hampton,
818 So.2d 720 (La.2002); U.S. v. Teague, 953 F.2d 1525 (1992 U.S.
App.LEXIS 13)(11th Cir. 1992). Although historically criminal defen-
dants were prohibited from testifying because of their interest in
the outcome of the trial, that view has since been abandoned. Teague,
supra. Indeed, the U.S. Supreme Court has recognized that there is
"no rational justification for prohibiting the sworn testimony of
the accused, who above all others may be in a position to meet the
prosecution's case. Ferguson v. Georgia, 365 U.S. 570, 582, 81 S.Ct.
756, 763, 5 L.Ed.2d 283 (1961), and that is now accepted that an
accused has a right to testify on his own behalf. Faretta v. Cali-
fornia, 422 U.S. 806, 819, 95 S.Ct. 2225, 2533, 45 L.Ed.2d (1975);
and Hampton, supra.

The Cosntitutional statute of this right was expressly recog-
nized by the Supreme Court in Rock v. Arkansas, 483 U.S. 44, 107
S.Ct. 2704, 97 L.Ed.2d 37 (1987). In Rock the Court considered
whether a criminal defendant's right to testify may be restricted
by a State rule that excludes her posthypnosis testimony. Id., at
53, 107 S.Ct. at 2709. As a preliminary matter, the Court discussed
the development of the right to testify. Although the right to
testify is not explicitly stated in the Constitution, the Supreme
Court noted that it has sources in several provisions of the Cons-
titution. Id., at 51, 107 S.Ct. at 2708. The Court first cited the
due process clause of the 14th Amendment, stating that the right
to be heard, which is so essential to due process in an adversary
system of adjudication, can be vindicated only by affording an
opportunity to testify before the fact finder. Id., at 51 n.8,
107 S.Ct. at 2709. The Court also cited to Justice Clark's concur-
rring opinion in Ferguson v. Georgia, for the proposition that the

-7-

14th Amendment secures the "right of a criminal defendant to choose between silence" and testifying in his own behalf. 369 U.S. at 602, 81 S.Ct. at 773 (Clark, J., concurring). Next, the Court found support in the compulsory process clause of the 6th Amendment, stating that logically included in the accused's right to call witnesses whose testimony is material and favorable to his defense, is a right to testify himself, should be decided it in his favor to do so. <u>Id</u>., 483 U.S. 52, 107 S.Ct. at 2709 (citation omitted). Moreover, the Court recognized that under <u>Faretta v. California</u>, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the 6th Amendment includes the right of self-representation, and that a defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness. <u>Rock</u>, 483 U.S. at 512, 107 S.Ct. 2709. Lastly, the Court found that the right to testify is also a necessary corollary to the 5th Amendment's guaranteed against compelled testimony. <u>Id</u>. With this discussion, the Court put to rest any doubt that a criminal defendant has a constitutional right to testify in his own defense.

However, this right is not unlimited. For example, the right to testify clearly does not include the right to commit perjury. See <u>Nix v. Whiteside</u>, 475 U.S. 157, 106 S.Ct. 988, 88 L.Ed.2d 123 (1986). Nevertheless, as the Supreme Court Court stated in <u>Rock</u>, restrictions of a defendant's right to testify may not be arbitrary or dispropor-tionate to the purposes they are designed to serve. <u>Rock, supra</u>; <u>Chambers v. Mississippi</u>, 410 U.S. 284, 295, 302, 93 S.Ct. 1038, 1045, 1049, 35 L.Ed.2d 297 (1973). (The defendant's right to present witnes-ses in his own defense is subject to other legitimate interests in the criminal trial process such as the established Rules of Evidence and Procedure).

In the instant case at bar, however, Petitioner claims that he was prevented from testifying by the government, the court and by his own lawyer, when during criminal trial it was brought out to all parties' attention of his desire to testify and orders were issued to take matters up later during the criminal trial, which never occurred; and such, is not a mere conclusionary allegation; see criminal trial records.

Petitioner now calls upon this Court to determine if the
trial court was correct or incorrect in denying Post Conviction
Relief Application on this matter of his right to testify in his
own defense, and to determine whether defense counsel in empowered
to waive Petitioner's right to testify. In all respects the ordered
procedure on Petitioner's desire to testify was not held prior to
both, State and defense resting their case.

Criminal defendants possess essentially two categories of
constitutional rights: (1) those which are waivable by defense
counsel on the defendant's behalf; and (2) those which are considered
fundamental and personal to defendant, waivable only by the defen-
dant. Generally, included in the former are matters which primarily
involve trial strategy and tactics. See Henry v. Mississippi, 379
U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1985). Examples of such
matters are what evidence should be introduced, what stipulations
should be made, what objections should be raised, and what pre-trial
motions should be filed. See: 1 Standards for Criminal Justice,
Standards 4-5.2 Comment (2ndEd. 1980). Examples of fundamental
decisions which only the defendant is empowered to waive are entry
of a guilty plea, Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709,
23 L.Ed.2d 274 (1969), waiver of jury trial, Adams v. United States
ex. rel. McCann, 317 U.S. 269, 277-78, 63 S.Ct. 236, 240-41, 87
L.Ed. 268 (1942), and whether to pursue an appeal, see Fay v. Noia,
372 U.S. 391, 439, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963).

In Rock, the Supreme Court didn't need to decide whether the
constitutional right to testify was fundamental in character, and
therefore personal to the defendant, or whether it could be waived
by the defense attorney. However, the Court in Rock emphasized that
the right to testify "is one of the rights that are essential to
due process of law in fair adversary process." 483 U.S. at 51, 107
S.Ct. at 2708, quoting Faretta, 442 U.S. at 819, n.15, 95 S.Ct. at
2533, and that it is even more fundamental to a personal defense than
the right of self-representation.Id, at 52, 107 S.Ct. at 2709. More-
over, the Court noted that it has "on numerous occasions proceeded
on the premise that the right to testify on one's behalf in defense

-9-

to a criminal charge is a fundamental constitutional right." Id
at 53 n. 10, 107 S.Ct. at 2710. Perhaps, the most telling of these
occasions cited by the Court in Jones v. Barnes, 463 U.S. 745, 751,
103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983), in which the Court
stated in dicta that "the accused has the ULTIMATE AUTHORITY to
make certain fundamental decisions regarding the case, as to whether
to plead guilty, waive a jury, testify in his own behalf or take an
appeal. Thus, in Rock, the Supreme Court has clearly and strongly
indicated that the Constitutional right to testify should be treated
as fundamental.

     This is not the first time of addressing the question as similar
to the issue here in Petitioner's case. The United States Supreme
Court did so in Wright v. Estelle, 572 F.2d 1071 (5thCir)(en banc),
cert. denied 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978),
alike in Petitioner herein, the former Fifth Circuit was presented
with the issue of "whether a defendant has a fundamental right to
testify." During Wright's trial, a conflict arose between Wright and
his court appointed counsel about whether Wright would testify in his
own defense. Teague, supra. The lead defense counsel told Wright
that he would no longer represent him if Wright elected to testify.
The plurality affirmed the panel opinion which assumed without
deciding that there was a constitutional and fundamental right to
testify, but found that in that case the error was harmless because
the evidence was overwhelming. Wright v. Estelle, supra; Teague,
supra. (Panel opinion) Judges Thornberry, Clark, Roney, Gee and Hill
filed a special concurrence, arguing that the decision regarding
whether defendant will testify is essential strategic and best dele-
gated to defense counsel: "The scope of the delegation does not turn
on the importance of the decision the attorney frequently makes
judgments affecting the very life of the defendant. The question
here is twofold: who is in better position to judge trial strategy
and who is in better position to ensure the best interest of the
defendant."

     In Wright, supra, the concurrence distinguished the decision
on whether to plead guilty or not guilty from the decision whether

stating that the decision on what to plead goes to the very exist
of a trial. To deny the defendant control over his decision could
be tantamount to denying the defendant a trial. Here, of course,
there is a trial and the decision made by the attorney goes merely
to strategy. Id at 1073. (In the present case, when presented with
the conflict between Petitioner and his attorney Unangst gave no
indication he rely on trial strategy when informed Petitioner he
would not let him testify. Nor did Unangst give trial judge a
reasonable excuse why he would not allow Petitioner to testify,
at the time the judge ordered the matter to be subject for the Court's
determination later during trial.)Judge Godbold, joined by Judge
Tjoflat, filed an eloquent dissent arguing that the right to testify
is a fundamental constitutional right that cannot be waived by defense
counsel. For instance, in making the choice on whether to testify,
just as the choice on whether to represent himself, the defendant
elects whether to become active participant in the proceeding that
affects his life and liberty and to inject his own action, voice
and personality into the process to the extent the system permits.
To deny a defendant the right to tell his story from the stand
dehumanizes the administration of justice. (Godbold. J., dissenting).
I cannot accept a decision that allows a jury to condemn to death
or imprisonment a defendant who desires to speak, without ever
having heard the sound of his voice."

   Similar, again this question was addressed by a panel of the
11th Circuit in United States v. Scott, 909 F.2d 488 (11thCir.1990)
During Scott's trial, defense counsel moved to withdrawn from the
case but would not give the reasons for this request to the trial
court. The court assumed that this was because Scott desired to
testify but the attorney intended to keep him off the stand. Rather
than ruling on this motion, the court gave Scott a choice:(1)Either
proceed with counsel, but relinquish the right to testify, or (2)
proceed pro se. The court reviewed the development of the right to
testify and concluded that it was now a recognized fundamental
constitutional right, personal to the defendant, which cannot be

-11-

waived by defense counsel. The court then found that the trial
judge had improperly forced the defendant to choose between two
constitutional rights: (1) the right to counsel; and (2) the right
to testify and therefore vacated defendant's conviction and remanded
for a new trial. Teague, supra. The Court also reaffirm that a
criminal defendant has a fundamental constitutional right to testify
in his or her own behalf at trial. This right is personal to the
defendant and cannot be waived either by the trial court or by
defense counsel. Petitioner argues contrary to this settled juris-
prudence, and the fact that the trial judge was aware of conflict
between Attorney Unangst and Petitioner, which he ordered a hearing
on the matter, but failed to hold it; thus clearly show that both
trial court judge and defense counsel played a part in waiving Peti-
tioner's right to testify, a violation of his 5th, 6th and 14th
U.S.C.A. Considering the circumstance surrounding trial judge and
defense counsel's refusal to allow Petitioner to testify requires
an evidentiary hearing to resolve this ineffective assistance claim.
U.S. v. Martiner, 181 F.3d 627 (5thCir.1999); Ferguson v. Georgia,
365 U.S. 570 (1961).

In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984), the United States Supreme Court defined two
requirements for a claim of ineffective assistance of counsel:

> "(1), the defendant must show that counsel's perfor-
> mance was deficient. This requires showing that counsel
> made errors so serious that counsel was not functioning
> as the counsel guaranteed the defendant by the Sixth
> Amendment. (2), the defendant must show that the defi-
> cient performance prejudiced the defense. This requires
> showing that counsel's errors were so serious as to
> deprive the defendant of a fair trial, a trial whose
> result is reliable." Id, at 687, 104 S.Ct. at 2064.

In Petitioner's case, these two requiremets are clearly
presented to the Court.

Defense counsel Unangst failed to protect Petitioner's right
to testify in his own behalf, to the point that he was not acting
as the counsel guaranted Petitioner by the Sixth Amendment, there-
fore Defense counsel's performance was so deficient, that in fact
affected Petitioner's constitutional rights.

-12-

Second, and this is very important, Defense Counsel's performance was so deficient, that it was impossible for Petitioner to obtain a fair trial. There were many reasons Petitioner wanted to testify in his own behalf, and those reasons were known to Defense Counsel Unangst; denying Petitioner his right to testify in his own behalf, was a fatal error that made Petitioner's trial unfair and in violation of his Constitutional rights.

Finally, and with all due respect to the Court, Petitioner is in the process of obtaining affidavits from his Private Investigator which in fact will strenght Petitioner's claim that his Constitutional right to testify in his own behalf was violated, and more important against his own will. Once these documents are received, Petitioner will present the Court with a Supplemental Brief with the document attached, and the reasons as to why it was very essential for Petitioner's case to testify in his own behalf.

-13-

CONCLUSION

PETITIONER PRAYS THIS HONORABLE COURT CONSIDERS ALL
THE FACTS AND INFORMATION CONTAINED HEREIN, AND AFTER
CONSIDERATION AND REVIEW OF THE CLAIMS PRESENTED, THIS
MATTER BE REMANDED BACK TO THE DISTRICT COURT FOR AN
EVIDENTIARY HEARING; OR IN THE ALTERNATIVE, THAT PETI-
TIONER'S CONVICTION AND SENTENCE BE VACATED AND THIS
MATTER REMANDED FOR A NEW TRIAL IN ACCORDANCE WITH
THE LAWS AND THE CONSTITUTIONAL PROTECTIONS GUARANTEED
BY BOTH CONSTITUTIONS, THE LOUISIANA AND THE UNITED
STATES CONSTITUTIONS.

HOMER, LOUISIANA, THIS 03ʳᵈ DAY OF December, 2019.

Submitted by:

Carlos A. Rodriguez, #127087
David Wade Correctional Center
670 Bell Hill Rd. H2B
HOMER, LA   71040-2150

Petitioner pro se

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing WRIT APPLICATION
has been mailed to the following parties, first class postage pre-
paid, via prison mail system:

      1): District Attorney's Office
        22nd Judicial District
        Parish of St. Tammany
        Justice Center, 701 North Columbia St.
        COVINGTON, LA 70433

      2): Honorable August J. Hand
        22nd Judicial District Court - Div. "B"
        Parish of St. Tammany
        Justice Center, 701 N. Columbia St.
        COVINGTON, LA  70433

Homer, LOUISIANA, this 03ʳᵈ day of December 2019.

Carlos A. Rodriguez, #127087

Petitioner pro se

-14-

IN THE

FIRST CIRCUIT COURT OF APPEAL

STATE OF LOUISIANA

*********

STATE OF LOUISIANA, Respondent

vs.

CARLOS A. RODRIGUEZ, Petitioner

---

PETITIONER'S SUPPLEMENTAL BRIEF

---

FROM THE 22nd JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
DOCKET No. 465867-1 "B"
DENIAL OF POST CONVICTION RELIEF APPLICATION
HONORABLE AUGUST J. HAND, Presiding

---

Respectfully Submitted,


Carlos A. Rodriguez, DOC #127087
David Wade Correctional Center
670 Bell Hill Rd. H2B
Homer, LOUISIANA  71040-2150



Petitioner pro se

EXHIBIT #6
PETITIONER'S SUPPLEMENTAL BRIEF

## EXHIBITS

EXHIBIT #1 ... Written Affidavit from Melissa Payne

EXHIBIT #2 ... Attorney Sign In Visiting Log

IN THE
FIRST CIRCUIT COURT OF APPEAL
STATE OF LOUISIANA

\*\*\*\*\*\*\*\*\*

STATE OF LOUISIANA, Respondent

vs.

CARLOS A. RODRIGUEZ, Petitioner

_____

PETITIONER'S SUPPLEMENTAL BRIEF

_____

COMES NOW: CARLOS A. RODRIGUEZ, DOC #127087, Petitioner pro se,
who is now presenting his Supplemental Brief for this Honorable
Court's consideration.

Petitioner represents the following in support herein:

CLAIM

PETITIONER AVERS THAT HE WAS DENIED HIS CONSTITUTIONAL
RIGHT TO TESTIFY IN HIS OWN DEFENSE, A CLEAR CONSTITU-
TIONAL VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION.

ARGUMENT

Petitioner filed his Application for Supervisory Writ with
this Honorable Court on or about December 3, 2019, including
attached exhibits.

After Petitioner filed his Application with the Court, he
received documents to support his claim; said documents are inclu-
ded in this brief as Exhibit #1 and Exhibit #2. Petitioner also
avers that these documents adequately demonstrate the need for
this Supplemental Brief.

It was Petitioner's intention to testify in his own behalf,
but because of his Counsel ineffectiveness, Petitioner was deprived
of the ability to choose whether or not to testify in his own
behalf. This is one more clear violation of Petitioner's Right
to effective assistance of counsel.

Petitioner's Counsel, Mr. Unangst did his best to prevent
Petitioner's testimony to be heard by the jury.

-1-

As stated in the affidavit of Ms. Melissa Payne, Petitioner's family and his legal team were under the impression that Petitioner was going to testify during his trial, but to their surprise, Petitioner was told by Mr. Unangst not to testify. **EXHIBIT #1**

More important, the day before Petitioner was supposed to testify in his own behalf, his counsel, Mr. Unangst visited him (Petitioner) at the jail where he was in custody, and his <u>only</u> motive for such a visit was to coerce Petitioner into not taking the stand in his own behalf. **EXHIBIT #2** This was done without Mr. Unangst consulting, or at least considering the advise of the other members of Petitioner's legal team.

With all due respect to the Court, Petitioner would ask the Court to consider the following instances as to why Petitioner's testifying in his own behalf was very important for the outcome of his trial:

(a)

The statements provided by Gina Scramuzza, were a lie from the beginning. In her first two (2) interrogations she stated that Petitioner had nothing to do with the death of her husband; however, after many hours of heavy interrogation by part of the detectives, she kept her statement that Petitioner had nothing to do with the crime. Suddenly, after the presiding detective told her about Petitioner's personal life, that I was married, my wife was expecting a child, she became very upset and made an agreement with the detectives to change her story. The bottom line for Mrs. Scramuzza, if she couldn't have Petitioner, then no one could.

(b)

Louis Rodriguez (not related to Petitioner) was seduced with greed by Erlyn Montolla. From the beginning, Louis Rodriguez did falsely state facts about his relationship with Petitioner and the time of knowing each other. The plan to falsely accuse Petitioner of the crime was devised by Gina Scramuzza, Louis Rodriguez and Erlyn Montolla; they were allowed by the detectives to change their testimony more than once. When Erlyn Montoya and Louis Rodriguez

-2-

were arrested they were housed in the same dormitory, even through
all trial proceedings, enough proof that it was their way to make
sure their testimony was identical. Erlyn Montalla convinced Louis
Rodriguez that if their story was the same, it could be used to
convict Petitioner and the Prosecution would guarantee a deal
and Petitioner will receive the death penalty after being convicted.
Finally, the day of trial, Louis Rodriguez realized that Erlyn
Montolla had manipulated him to get himself a deal from the
Prosecutors; this led Louis Rodriguez realizing the Erlyn Montolla
lied to him and he decied not to share the same lie as Erlyn
Montolla. In conclusion, Louis Rodriguez was asked under oath,
if Carlos Rodriguez (Petitioner) killed Mario Scramuzza, Louis
Rodriguez responded: "NO HE DID NOT."

                              (c)

     From the beginning of these proceedings, Petitioner had no
idea who Erlyn Montolla was; Petitioner only knew him to be a
close friend of Louis Rodriguez, who introduced him to Gina
Scramuzza. Does not take a genious to see that the masterminds
of this horrendous crime were Erlyn Montalla and Louis Rodriguez.
He convinced Louis Rodriguez to fabricate a statement like his,
and get a deal with the Prosecutors. The Prosecutors allowed
Erlyn Montolla to enter into a plea agreement to a charge of
Manslaughter and receive a sentence of 38 years, which also
included a charge of Armed Robbery, with one of the conditions,
that  he could not get any other felony charges in St. Tammany
Parish.  He failed to comply with the Prosecutor's condition,
and committed not one, but two aggravated crimes: Aggravated
Assault and Aggravated Battery with a deadly weapon.

     More important, Erlyn Montolla not just lied under oath, but
also lied to the arresting officer by giving him false names and
telling him that he has a twin brother.  He did what  he was required
from the Prosecutors, lie about Petitioner and order to get a
conviction. The evidence is clear, including the weapon used in
the crime was found in possession of Erlyn Montolla and Louis
Rodriguez.

Also, once Erlyn Montolla took the stand, again, he changed
his story, this time, he admitted as to being the culprit of
Mario Scramuzza's death, he admitted that he was the agressor,
that he forced Mr. Scramuzza to the floor. (PLEASE REFER TO
TRIAL TRANSCRIPTS).

(d)

I was not fully represented by my Defense Counsel; Petitioner
asked on several occassions for security footage. Petitioner's
counsel stated that even there was no security footage, that it
did not matter if there was no evidence that would help or hinder me
from prosecution; it was the wrong choice because the detectives
relied on security footage during the investigation of this crime.
When I was arrested I was asked by the Prosecutors to take a
polygraph test, which I agreed to, when asked during interroga-
tion. When Petitioner received the police reports, there was no-
where in the reports any mentioning to Petitioner's acknowledging
to a polygraph test. When the detectives were asked for the
footage of the interrogation, they said there were malfunctions
of the interrogation as well as the detective choose not redo
the interrogation. Even the same detective when asked for the
footage of the bank, he stated that also had a malfunction, as
it recorded everything on that day, except for the time in ques-
tioning, in short words, there is no footage to prove that Peti-
tioner accompanied Louis Rodriguez, Erlyn Montolla or Gina
Scramuzza to the bank. In addition, when Erlyn Montolla and Gina
Scramuzza returned back to the local Walmart Louis Rodriguez
exited Mario Scramuzza's truck and entered into Petitioner's
truck. When Petitioner explained to the presiding detective to
review the Walmart secutiry footage in all angles, due to the
fact that they mentioned the view of Louis Rodriguez entering
into my company vehicle was blocked by a white object. The
detectives did not want to say that it was in fact Louis Rodriguez
getting into the passenger side of my company vehicle.

-4-

In fact, Petitioner told the detectives that there are several outside cameras in Walmart to cover all the angles possible to identify Louis Rodriguez entering my vehicle to bring Petitioner his Iphone. During pre-trial Petitiones discussed all these issues with his Counsel, only to stay that security footages didn't matter and that he knew what to do. Finally, my counsel told me: "At the end of the day what you say matters, but I make the final decision."

It was very well known among all of Petitioner's defense team that Petitioner was going to take the stand and testify in his own behalf; what a surprise when Petitioner told them that he was not going to take the stand in his own behalf. However, at the last minute, the night before Petitioner's trial was over, Petitioner received an unexpected visit from his Counsel Mr. Unangst at the jai he was housed. First, Petitioner thought it was an odd visit because he knew he was ready to take the stand the next day; the conversation between Petitioner and his Counsel was that I didn't need to take the stand to testify on my behalf, that he had done a great job, and that by Petitioner testifying in his own behalf, would interfere in what he had to say. Next was a very heated discussion between Petitioner and his Counsel, as Petitioner was told by his Counsel. Once again, when I mentioned this to the other counsels they were in disbelief, as it was never an agreement between the Counsels for Petitioner not to take the stand in his own behalf. The result, Petitioner was convicted of a crime he didn't commit nor had any part in it. I did contact Mr. Unangst about the reason(s) he had for me not to take the stand and he mentioned to my fiance that he could write an affidavit, but if he write it, there is the possibility of being disbarred. The presiding detective over Petitioner's case was contacted and she has provided an affidavit attached hereto, as well as a copy of the visiting log from the jail where Petitioner was detained, this as a proof that Petitioner was a denied his constitutional right to testify in his own behalf, all because Petitioner's Counsel, Mr. Unangst ineffectiveness to protect all of Petitioner's constitutional rights.

## CONCLUSION

PETITIONER PRAYS THIS HONORABLE COURT CONSIDERS THE
STATEMENTS AND DOCUMENTS PRESENTED HEREIN IN THIS
SUPPLEMENTAL BRIEF, AND AFTER FURTHER CONSIDERATION,
PETITIONER'S CONVICTION AND SENTENCE BE VACATED AND
THIS MATTER REMANDED FOR A NEW TRIAL.

HOMER, LOUISIANA, THIS 3RD DAY OF JANUARY, 2020.

Submitted by:

Carlos A. Rodriguez, #127087
David Wade Correctional Center
670 Bell Hill Road - H2B
Homer, LA  71040-2150

Petitioner pro se

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing MOTION FOR
LEAVE TO FILE A SUPPLEMENTAL BRIEF and SUPPLEMENTAL BRIEF has
been mailed to the following parties, first class, postage pre-
paid via prison mail system:

1): District Attorney's Office
    22 JDC - St. Tammany
    Justice Center, 701 North Columbia St.
    COVINGTON, LA  70433

2): August J. Hand, Judge
    22 JDC - Div. "B" - St. Tammany
    Justice Center, 701 North Columbia St.
    COVINGTON, LA  70433

Homer, LOUISIANA, this 3RD day of JANUARY, 2020.

Carlos A. Rodriguez, #127087

Petitioner pro se

-6-

December 16, 2019

Melissa Payne
29044 Ross Trail
Albany, LA 70711

Court of Appeal, First Circuit
State of Louisiana
P.O. Box 4408
Baton Rouge, LA 70821-4408

Re: 2019-KW-1619, State of Louisiana Versus Carlos Alberto Rodriquez

To Whom it May Concern:

I am writing to you in reference to Carlos Alberto Rodriquez. I have known Mr. Rodriquez prior to his trail for First Degree Murder. Prior to Mr. Rodriquez's trail, Mr. Rodriquez maintained that he wanted to and was going to testify on his own behalf. Never once did Mr. Rodriquez state that he would not testify. I was also present in the courtroom for Mr. Rodriquez's trial, as well as, Mr. Rodriquez's family and we were all under the same impression that Mr. Rodriquez was going to take the stand. However, we were all shocked and surprised when the Defense rested, and Mr. Rodriquez did not testify. Even members of Mr. Rodriquez's legal team appeared somewhat surprised. It wasn't until later that I had a conversation with Mr. Rodriquez, and he brought it to my attention that one of the attorneys that represented him came to visit him the night before he was going to testify. According to Mr. Rodriquez, he was told by his attorney that he would not be testifying because his attorney felt that he covered everything in the trial. In addition, Mr. Rodriquez went on to say that he was told that his attorney got to make the final decision as to Mr. Rodriquez testifying on his own behalf.

Since Mr. Rodriquez's trial, he has always maintained that had he been allowed to testify on his own behalf his trial may have resulted in a "Not Guilty" verdict. I believe that Mr. Rodriquez felt he could not speak up during his trial, to object, when the Defense rested because of the conversation that took place between Mr. Rodriquez and his attorney the night prior to the last day of Mr. Rodriquez's trial.

It is for these reasons that I respectfully request the Court of Appeal, First Circuit to take this letter into consideration when reviewing Mr. Rodriquez's case for Appeal.

Thank you for your time and allowing me to submit this letter on Mr. Rodriquez's behalf.

Respectfully,

*Melissa Payne*

Melissa Payne

EXHIBIT #1



Attorney Visit Sign-In Sheet

# ATTORNEY SIGN IN VISIT LOG

| Date | Name of Visitor | Attorney or PD | Time of Arrival | Inmates name to be seen (Please label for each inmate contacted) | Time inmate was seen | Departure time |
|------|-----------------|----------------|-----------------|-------------------------------------------------------------------|----------------------|----------------|
| 5/8/12 | Bruce Chauset | Atty | 11.58 | Carlos Rodriguez | 5:25 | 7:05 |

EXHIBIT #2

# STATE OF LOUISIANA

# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA                                    NO. 2019 KW 1619

VERSUS

CARLOS ALBERTO RODRIGUEZ                      FEB 2 8 2020

---

In Re:    On motion of Carlos Alberto Rodriguez for leave to
          file a supplemental brief, 22nd Judicial District
          Court, Parish of St. Tammany, No. 465867-1.

---

BEFORE:   GUIDRY, HIGGINBOTHAM, AND LANIER, JJ.

    MOTION TO SUPPLEMENT WRIT APPLICATION DENIED.

                           JMG
                           TMH
                           WIL

COURT OF APPEAL, FIRST CIRCUIT

_____
DEPUTY CLERK OF COURT
      FOR THE COURT

**EXHIBIT #7**

FIRST CIRCUIT DENIAL OF SUPP.

# STATE OF LOUISIANA
# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA

VERSUS

CARLOS ALBERTO RODRIGUEZ

NO. 2019 KW 1619

FEB 28 2020

In Re:   Carlos Alberto Rodriguez, applying for supervisory
         writs, 22nd Judicial District Court, Parish of St.
         Tammany, No. 465867-1.

BEFORE:   GUIDRY, HIGGINBOTHAM, AND LANIER, JJ.

   **WRIT DENIED.**  Relator failed to rebut the presumption that
he waived his right to testify.  See **State v. Hampton**, 2000-0522
(La. 3/22/02), 818 So.2d 720.  Relator makes conclusory
statements concerning the investigation of witnesses in this
case, and he also failed to meet his burden of showing that
counsel's assistance was so defective as to require reversal of
the conviction.  See **Strickland v. Washington**, 466 U.S. 668,
687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  See also
**State v. Castaneda**, 94-1118 (La. App. 1st Cir. 6/23/95), 658
So.2d 297, 306.  Furthermore, looking at the full comment in
context, it is clear that the prosecutor was not vouching for
the credibility of the State's witness; but rather, the
prosecutor's statements were in direct response to defense
counsel's closing arguments.  La. Code Crim. P. art. 774; **State
v. Williams**, 96-1023 (La. 1/21/98), 708 So.2d 703, 715, cert.
denied, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998); **State
v. Palmer**, 2000-0216 (La. App. 1st Cir. 12/22/00), 775 So.2d
1231, 1236, writ denied, 2001-0211 (La. 1/11/02), 807 So.2d
224.  Accordingly, the district court did not err by denying the
application for postconviction relief.

                    JMG
                    WIL

   **Higginbotham, J., concurs.**

COURT OF APPEAL, FIRST CIRCUIT

_____
DEPUTY CLERK OF COURT
     FOR THE COURT

**EXHIBIT #8**

**1ST CIRCUIT DENIAL OF PETITIONER'S**

IN THE

SUPREME COURT

STATE OF LOUISIANA


*******


STATE OF LOUISIANA, Respondent


vs.


CARLOS ALBERTO RODRIGUEZ, Petitioner


---

ON APPLICATION FOR SUPERVISORY WRIT AND/OR REVIEW
FROM THE FIRST CIRCUIT COURT APPEAL
DOCKET No. 2019-KW-1619
DENYING APPLICATION FOR POST CONVICTION RELIEF
22nd JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
DOCKET No. 465867-1
HON. AUGUST J. HAND, Presiding

---

PETITIONER'S ORIGINAL BRIEF


Respectfully Submitted,

CARLOS A. RODRIGUEZ / DOC/#127087
DAVID WADE CORRECTIONAL CENTER
670 BELL HILL RD. H2B
HOMER, LOUISIANA 71040-2150


Applicant pro se

EXHIBIT #9

WRIT TO LOUISIANA SUPREME COURT

## <u>INDEX</u>

<u>Page</u>

JURISDICTIONAL STATEMENT ............................   1

STATEMENT OF THE CASE ...............................   1

ASSIGNMENT OF ERRORS ................................   3

      ARGUMENTS ...............................   3

      ERROR No. 4 ............................   4

      ARGUMENT  ..............................   4

CONCLUSION ........................................   17

CERTIFICATE OF SERVICE .............................   17

## TABLE OF AUTHORITIES

**Page**

State v. Hampton,818 So.2d 720 (La.2002)............. 6, 7, 8
State v. James, 938 So.2d 691 (La.2006)............... 6, 7


Cannon v. McBride, 395 F.3d 376, 386 (7Cir. 2005)..... 4
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052
                80 L.Ed.2d 674 (1984)....... 5,6,13,15,16
Wright v. Estelle, 572 F.2d 1071, 1074 (5thCir.1978).. 6, 11
Passos-Paternina v. U.S. 12 F.Supp.2d 231 (DPR 1998).. 6, 7
U.S. V. Teague, 953 F.2d 1525 (11Cir.1992)........... 8, 11, 13
Ferguson v. Georgia, 365 U.S. 570, 582 (1961)........ 8, 13
Faretta v. California, 422 U.S. 806, 819 (1975)....... 8, 9
Rock v. Arkansas, 483 U.S. 44 (1987)................. 8, 9, 11
Nix v. Whiteside, 475 U.S. 157 (1986)................ 9
Chambers v. Mississippi, 410 U.S. 284, 295 (1973)..... 9
Henry v. Mississippi, 379 U.S. 443 (1985)............ 10
Boykin v. Alabama, 395 U.S. 238 (1969)............... 10
Adams v. U.S. ex rel. McCann, 317 U.S. 269, 277 (1942) 10
Fay v. Noia, 372 U.S. 391, 439 (1963)................ 10
Jones v. Barnes, 463 U.S. 745, 751 (1983)............ 11
U.S. v. Scott, 909 F.2d 488 (11thCir.1990)........... 12
U.S. v. Martiner, 181 F.3d 627 (5thCir.1999)......... 13

## EXHIBITS

EXHIBIT #1 ... POST CONVICTION RELIEF APPLICATION (PCRA)

EXHIBIT #2 ... STATE'S RESPONSE TO PCRA

EXHIBIT #3 ... DISTRICT COURT JUDGMENT ON PCRA

EXHIBIT #4 ... NOTICE OF INTENT TO SEEK WRIT W/RETURN DATE

EXHIBIT #5 ... PETITIONER'S WRIT TO THE FIRST CIRCUIT COURT
OF APPEAL

EXHIBIT #6 ... PETITIONER'S SUPPLEMENTAL BRIEF FILED WITH THE
FIRST CIRCUIT COURT OF APPEAL

EXHIBIT #7 ... FIRST CIRCUIT COURT OF APPEAL DENIAL OF MOTION
TO SUPPLEMENT WRIT APPLICATION

EXHIBIT #8 ... FIRST CIRCUIT COURT OF APPEAL DENIAL OF PETITIONER'S
WRIT APPLICATION (No. 2019-KW-1619 - Feb. 28/2020)

IN THE
SUPREME COURT
STATE OF LOUISIANA

*******

STATE OF LOUISIANA, Respondent

vs.

CARLOS ALBERTO RODRIGUEZ, Petitioner

## ON APPLICATION FOR SUPERVISORY WRIT AND/OR REVIEW

This Application seeks the issuance of a Supervisory Writ to the First Circuit Court of Appeal, State of Louisiana, for the following reasons to-wit:

### JURISDICTIONAL STATEMENT

This cause of action arrives to this Honorable Court from a judgment rendered by the First Circuit Court of Appeal, State of Louisiana, denying Petitioner's Application for Post Conviction Relief. Jurisdiction is proper pursuant to **Louisiana Constitution Art. 5 § 5, 1974; La. C.Cr.P. Art. 930.6 and Supreme Court Rule X, Section 1 (a),** where the decision of the First Circuit Court of Appeal conflicts with a decision of another Court of Appeal, this Court or the United States Supreme Court on the same legal issue.

### STATEMENT OF THE CASE

On or about April 22, 2009, Petitioner was indicted for the charge of First Degree Murder. Trial commenced on May 16, 2016, and Petitioner was convicted as charged in a jury trial and later sentenced to life imprisonment at hard labor without the benefit of probation, parole or suspension of sentence.

On or about September 30, 2018, Petitioner filed with the District Court his Application for Post Conviction Relief. **SEE EXHIBIT #1.**

-1-

On August 1, 2019, the State filed its Response to Petitioner's Post Conviction Relief Application. SEE **EXHIBIT #2**

On October 8, 2019, the District Court <u>denied</u> Petitioner's Post Conviction Relief Application. **EXHIBIT #3**

On October 22, 2019, Petitioner filed with the District Court a NOTICE OF INTENT TO SEEK WRIT with the First Circuit Court of Appeal. The District Court granted until on or about December 4, 2019, for Petitioner to file a Writ with the Court of Appeal. **EXHIBIT #4**

On or about December 3, 2019, Petitioner filed with the First Circuit Court of Appeal an Application for Supervisory Writ with attached exhibits. **EXHIBIT #5**

ON or about January 3, 2020, Petitioner filed with the First Circuit Court of Appeal a Supplemental Brief. **EXHIBIT #6**

On February 28, 2020, the First Circuit Court of Appeal <u>denied</u> Petitioner's Motion to Supplement Writ Application. **EXHIBIT #7**

Also, on February 28, 2020, the First Circuit Court of Appeal <u>denied</u> Petitioner's Writ Application. <u>(No. 2019 KW 1619</u>. **EXHIBIT #8**

From these proceedings, Petitioner now respectfully presents this Writ Application for this Honorable Court's consideration.

## ASSIGNMENT OF ERRORS

### ERROR No. 1

THE DISTRICT COURT AND THE FIRST CIRCUIT COURT OF APPEAL ERRED  WHEN IT DENIED PETITIONER'S CLAIM THAT THE TIME LIMITATION FOR THE PROSECUTION OF THE CASE EXPIRED BEFORE THE TRIAL STARTED.

### ERROR No. 2

THE DISTRICT COURT AND THE FIRST CIRCUIT COURT OF APPEAL ERRED WHEN IT DENIED PETITIONER'S CLAIM THAT THE PROSECUTOR IMPROPERLY VOUCHED FOR THE TRUTHFULNESS AND CREDIBILITY OF A STATE WITNESS DURING CLOSING ARGUMENTS.

### ERROR No. 3

THE DISTRICT COURT AND THE FIRST CIRCUIT COURT OF APPEAL ERRED WHEN IT DENIED PETITIONER'S CLAIM ON INEFFECTIVE ASSISTANCE OF COUNSEL.

### ERROR No. 4

THE DISTRICT COURT AND THE FIRST CIRCUIT COURT OF APPEAL ERRED WHEN IT DENIED PETITIONER'S CLAIM THAT HE WAS DENIED HIS RIGHT TO TESTIFY IN HIS OWN DEFENSE, A CLEAR CONSTITUTIONAL VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

DUE TO THE IMPORTANCE AND SERIOUSNESS OF THIS CLAIM, PETITIONER FILED WITH THE FIRST CIRCUIT A SUPPLEMENTAL BRIEF WITH ATTACHED EXHIBITS.

## ARGUMENTS

Petitioner is respectfully asking this Honorable Court to review Claims 1, 2, and 3, as they were explained in Petitioner's original Post Conviction Relief Application. These claims also constitute a violation of the Sixth and Fourteenth Amendments to the United States Constitution

Concerning Claim No. 4, and the serious violation of the U.S. Constitution's Sixth and Fourteenth Amendments, Petitioner will address this claim, including documents provided with the First Circuit Court of Appeal's Supplemental Brief.

## ERROR No. 4

THE DISTRICT COURT AND THE FIRST CIRCUIT COURT OF APPEAL
ERRED WHEN IT DENIED PETITIONER'S CLAIM THAT HE WAS
DENIED HIS RIGHT TO TESTIFY IN HIS OWN DEFENSE, A CLEAR
CONSTITUTIONAL VIOLATION OF THE SIXTH AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION.

DUE TO THE IMPORTANCE AND SERIOUSNESS OF THIS CLAIM,
PETITIONER FILED WITH THE FIRST CIRCUIT A SUPPLEMENTAL
BRIEF WITH ATTACHED EXHIBITS. SEE EXHIBIT #6

### ARGUMENT

Petitioner, during pretrial, on several occasions and during
his criminal trial in the presence of District Attorney and trial
court judge made reference to his absolute desire to testify in
his own behalf. Prior to trial and during criminal trial defense
counsel Unangst made it specifically clear he would not allow
Petitioner to testify. Unangst gave no justifiable reasons for a
sufficient basis for not allowing Petitioner to testify, nor did
Unangst apprise Petitioner that it was his constitutional right
to testify in his own behalf and his decision only and not Unangst.
(Counsel failure to advise/inform Petitioner of his right to testify
in capital murder trial penalty phase constituted ineffective assis-
tance of counsel. Cannon v. McBride, 395 F.3d 376, 386 (7Cir.2005).

Acting under the authority pursuant to LSA-C.Cr.P. Art. 16,
as of ministerial duty, the trial court judge took control when the
matter arose during the criminal trial, ordering the issue of
Petitioner's desire to testify be placed on hold until later pro-
ceeding of trial. No objections were made by any parties, State
or Defense. (When the matter arose before the District Attorney
and trial court judge about conflict of defense counsel and Peti-
tioner of his desire to testify; under A.B.A. Standards, as members
of Louisiana Bar, D.A., Judge, and Unangst had obligation of
ministerial duty ensuring justice prevail, not contrary blaming
layman Petitioner).

Trial commenced to its fullest without the matter as ordered
by the trial judge to take place concerning Petitioner's desire to
testify. As a result of Petitioner being denied of his federal
constitutional right to testify in his own defense, to tell his
story, the jury found him guilty as charged. U.S.C.A. 5th, 6th, 14th.

-4-

Petitioner contends because he was prevented from testifying at his criminal trial, after unequivocally expressed his desire to do so, he was denied a fundamental right and suffers detrimental prejudice, such as contrary to the guaranteed protection under Federal Constitution Amendments Fifth, Sixth and Fourteenth rights. Further, Petitioner avers as of result of violations of these Federal Constituion Rights his conviction and sentence is invalid and such unlawful conviction and sentence mandate reversal.

Petitioner argues that his attorney - Unangst, deprived him of his constitutional right to testify in his own behalf when counsel rested the defense case without calling him to the stand, despite his repeated indications that he wanted to testify. Petitioner avers although the State respond otherwise that he waived his right to testify either because he did not affirmatively assert that right during his trial or because he knew of his right to testify, yet his silence is an act of acquiesced in his attorney's decision not to call him as a witness, this is without merits. This is supported by the criminal trial records, when the matters came to the attention of the trial court that Petitioner desired to testify and his desire to testify were in conflict with attorney Unangst in which the judge ordered the matters holded until later trial proceedings to be continued. Those ordered criminal proceedings referred to Petitioner's desire to testify in his own defense never occurred, and without objection from defense counsel thereto. Petitioner was denied effective assistance of trial counsel and subject to prejudice since he was deprived to tell his side of the story contrary to those who testified against him, and as of further result found him guilty as charged based upon one sided theory of the crime that was deceived. In this respect, Petitioner argues he is entitled to an evidentiary hearing to develop the criminal record of his side of defense, with appointment of counsel, in order to consult with for professional advice in his rebuttal desired defense, as of right to counsel. <u>Strickland v. Washington</u>, supra.

-5-

Also, counsel is needed in assistance to obtain witnesses cocnerning attorney's Unangst ineffectiveness, Petitioner is in contact with, but as a layman has no idea of legal methods dealing with supporting witnesses. U.S.C.A. 6th and 14th Amendments Rights as guaranteed under Strickland vs. Washington's standard mandate adequate assistance of counsel, and Court's appointment of one when claim has highly potential to be non-frivolous as shown herein. Deprivation of the opportunity to testify is indeed a miscarriage of justice requiring the granting of a new trial. Wright v. Estelle, 572 F.2d 1071, 1074, at 1078 (5th.Cir.1978).

Petitioner cited as jurisprudence governing his claim on supporting merits that defense counsel forbade him from testifying as applicable, State v. Hampton, 818 So.2d 720 (La.2002). The State of Louisiana provided also, Hampton, supra and State v. C.L.J, 11-0972, 2011 WL69165293 (La.ApplCir.2011). In C.L.J's claim that he was denied the right to testify. The Court found that the claim was properly summarily dismissed because:

> "Herein there was no indication to the trial court
> that the defendant and his counsel were in conflict
> over this issue, nor has the defendant presented an
> affidavit by trial counsel to that effect. The de-
> fendant submitted only the proffered testimony of
> his brother and father who claimed that defendant
> wanted to testify, and his own affidavit in which
> he claimed that he had notified his attorney that
> he wanted to testify and swore to facts that disputed
> the other crimes testimony of his niece. However,
> without the affidavit by counsel required by Hampton,
> these items are not sufficient to rebutt the presump-
> tion that the defendant voluntarily waived his right
> to testify." 2011-WL-6916529, at 3.

The State further argued that Petitioner is not entitled to relief because he has not supplied an affidavit from trial counsel or pointed to a basis in the existing record which shows the allega- tions to be credible; thus relying on State v. Hampton,supra, and State v. James, 938 So.2d 691 (La.2006). Among James's claim of counsel preventing him to testify, he also alleged that:

> "The trial court failed to conduct an inquiry as to
> whether he had been informed of his right to testify
> and whether he chose to testify or not. 938 So.2d @ 692."

Accordingly, based upon the rebuttal presumption pre-requisite principle criteria from the decision in Hampton, supra, as adopted by the standard set forth in Passos-Paternina v. United States,

12 F.Supp.2d 231 (D.P.R. 1998), the trial judge in the present case of Carlos Rodriguez erroneously denied Post Conviction Relief Application of non-frivolous constitutional violation, thus, of which were not a mere conclusory allegation of trial counsel's preventing him of testifying at this criminal trial. For instance, as a guideline the Passos-Paternina court held:

> "(1)Absent extraordinary circumstances that should alert the trial court to a conflict between attorney and client, the court should not inquire into a criminal defendant's right to testify. The Court should assume, that a criminal defendant, by not attempting to take the stand, his knowingly and voluntarily waived his right;
>
> (2) The court must consider whether the Petitioner has waived his right to testify. The defendant can only rebutt that presumption by showing that his attorney caused him to forego his right to testify: (a) by alleging specific facts, including an affidavit by the defendant's trial counsel from which the could reasonably find that counsel told the defendant that he was legally forbidden to testify, or in some similar way compelled him to remain silent; (b) by demonstrating from the record that those specific factual allegation would be credible. Id, at 239-30."

Petitioner submit, that the State's prosecution, trial judge knew that defense counsel and Petitioner were in conflict with his desire to testify. Thus, such personal knowledge initiative trial judge to order proceedings on the matter later during criminal trial. However, those proceedings never occurred. In the post conviction proceedings the State's prosecution used the applicable case law, State v. Hampton, supra, seeking trial court denial on merit; in which the trial judge did use Hampton to deny Petitioner's relief. Petitioner points out although per Hampton is controlling case law used by both State prosecution and trial judge, they failed to abide by Hampton's standard: (a) Petitioner created extraordinary circumstances of such nature during criminal trial alerting State prosecution and trial judge that defense counsel and Petitioner were in conflict with his desire to testify; (b) absent the issue to testify being taken up prior to trial ending and absent to trial counsel objecting before rendered guilty verdict, or State's prosecution objecting and the lack of ministerial duty owed of trial judge to inquiry and make a ruling on matter as ordered, thus all inactions

caused Petitioner to forego his right to testify involuntarily. These mishaps are sufficient enough to support rebuttal of any presumption otherwise in error. When an attorney's interference with a defendant's desire to testify may violate the defendant's constitutional rights. State v. James, 938 So.2d 691 (La.2006).

It is clear that a criminal defendant has a constitutional right to testify in his own behalf at this trial. State v. Hampton, 818 So.2d 720 (La.2002); U.S. v. Teague, 953 F.2d 1525 (1992 U.S. App.LEXIS 13)(11th Cir. 1992). Although historically criminal defendants were prohibited from testifying because of their interest in the outcome of the trial, that view has since been abandoned. Teague, supra. Indeed, the U.S. Supreme Court has recognized that there is "no rational justification for prohibiting the sworn testimony of the accused, who above all others may be in a position to meet the prosecution's case. Ferguson v. Georgia, 365 U.S. 570, 582, 81 S.Ct. 756, 763, 5 L.Ed.2d 283 (1961), and that is now accepted that an accused has a right to testify on his own behalf. Faretta v. California, 422 U.S. 806, 819, 95 S.Ct. 2225, 2533, 45 L.Ed.2d (1975); and Hampton, supra.

The Cosntitutional statute of this right was expressly recognized by the Supreme Court in Rock v. Arkansas, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). In Rock the Court considered whether a criminal defendant's right to testify may be restricted by a State rule that excludes her posthypnosis testimony. Id., at 53, 107 S.Ct. at 2709. As a preliminary matter, the Court discussed the development of the right to testify. Although the right to testify is not explicitly stated in the Constitution, the Supreme Court noted that it has sources in several provisions of the Constitution. Id., at 51, 107 S.Ct. at 2708. The Court first cited the due process clause of the 14th Amendment, stating that the right to be heard, which is so essential to due process in an adversary system of adjudication, can be vindicated only by affording an opportunity to testify before the fact finder. Id., at 51 n.8, 107 S.Ct. at 2709. The Court also cited to Justice Clark's concurring opinion in Ferguson v. Georgia, for the proposition that the

-8-

14th Amendment secures the "right of a criminal defendant to choose between silence" and testifying in his own behalf. 369 U.S. at 602, 81 S.Ct. at 773 (Clark, J., concurring). Next, the Court found support in the compulsory process clause of the 6th Amendment, stating that logically included in the accused's right to call witnesses whose testimony is material and favorable to his defense, is a right to testify himself, should be decided it in his favor to do so. Id., 483 U.S. 52, 107 S.Ct. at 2709 (citation omitted). Moreover, the Court recognized that under Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the 6th Amendment includes the right of self-representation, and that a defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness. Rock, 483 U.S. at 512, 107 S.Ct. 2709. Lastly, the Court found that the right to testify is also a necessary corollary to the 5th Amendment's guaranteed against compelled testimony. Id. With this discussion, the Court put to rest any doubt that a criminal defendant has a constitutional right to testify in his own defense.

However, this right is not unlimited. For example, the right to testify clearly does not include the right to commit perjury. See Nix v. Whiteside, 475 U.S. 157, 106 S.Ct. 988, 88 L.Ed.2d 123 (1986). Nevertheless, as the Supreme Court Court stated in Rock, restrictions of a defendant's right to testify may not be arbitrary or dispropor-tionate to the purposes they are designed to serve. Rock, supra; Chambers v. Mississippi, 410 U.S. 284, 295, 302, 93 S.Ct. 1038, 1045, 1049, 35 L.Ed.2d 297 (1973). (The defendant's right to present witnes-ses in his own defense is subject to other legitimate interests in the criminal trial process such as the established Rules of Evidence and Procedure).

In the instant case at bar, however, Petitioner claims that he was prevented from testifying by the government, the court and by his own lawyer, when during criminal trial it was brought out to all parties' attention of his desire to testify and orders were issued to take matters up later during the criminal trial, which never occurred; and such, is not a mere conclusionary allegation; see criminal trial records.

Petitioner now calls upon this Court to determine if the trial court was correct or incorrect in denying Post Conviction Relief Application on this matter of his right to testify in his own defense, and to determine whether defense counsel in empowered to waive Petitioner's right to testify. In all respects the ordered procedure on Petitioner's desire to testify was not held prior to both, State and defense resting their case.

Criminal defendants possess essentially two categories of constitutional rights: (1) those which are waivable by defense counsel on the defendant's behalf; and (2) those which are considered fundamental and personal to defendant, waivable only by the defendant. Generally, included in the former are matters which primarily involve trial strategy and tactics. See Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1985). Examples of such matters are what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed. See: 1 Standards for Criminal Justice, Standards 4-5.2 Comment (2ndEd. 1980). Examples of fundamental decisions which only the defendant is empowered to waive are entry of a guilty plea, Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), waiver of jury trial, Adams v. United States ex. rel. McCann, 317 U.S. 269, 277-78, 63 S.Ct. 236, 240-41, 87 L.Ed. 268 (1942), and whether to pursue an appeal, see Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963).

In Rock, the Supreme Court didn't need to decide whether the constitutional right to testify was fundamental in character, and therefore personal to the defendant, or whether it could be waived by the defense attorney. However, the Court in Rock emphasized that the right to testify "is one of the rights that are essential to due process of law in fair adversary process." 483 U.S. at 51, 107 S.Ct. at 2708, quoting Faretta, 442 U.S. at 819, n.15, 95 S.Ct. at 2533, and that it is even more fundamental to a personal defense than the right of self-representation.Id, at 52, 107 S.Ct. at 2709. More-over, the Court noted that it has "on numerous occasions proceeded on the premise that the right to testify on one's behalf in defense

to a criminal charge is a fundamental constitutional right." Id
at 53 n. 10, 107 S.Ct. at 2710. Perhaps, the most telling of these
occasions cited by the Court in Jones v. Barnes, 463 U.S. 745, 751,
103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983), in which the Court
stated in dicta that "the accused has the ULTIMATE AUTHORITY to
make certain fundamental decisions regarding the case, as to whether
to plead guilty, waive a jury, testify in his own behalf or take an
appeal. Thus, in Rock, the Supreme Court has clearly and strongly
indicated that the Constitutional right to testify should be treated
as fundamental.

     This is not the first time of addressing the question as similar
to the issue here in Petitioner's case. The United States Supreme
Court did so in Wright v. Estelle, 572 F.2d 1071 (5thCir)(en banc),
cert. denied 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978),
alike in Petitioner herein, the former Fifth Circuit was presented
with the issue of "whether a defendant has a fundamental right to
testify." During Wright's trial, a conflict arose between Wright and
his court appointed counsel about whether Wright would testify in his
own defense. Teague, supra. The lead defense counsel told Wright
that he would no longer represent him if Wright elected to testify.
The plurality affirmed the panel opinion which assumed without
deciding that there was a constitutional and fundamental right to
testify, but found that in that case the error was harmless because
the evidence was overwhelming. Wright v. Estelle, supra; Teague,
supra. (Panel opinion) Judges Thornberry, Clark, Roney, Gee and Hill
filed a special concurrence, arguing that the decision regarding
whether defendant will testify is essential strategic and best dele-
gated to defense counsel: "The scope of the delegation does not turn
on the importance of the decision the attorney frequently makes
judgments affecting the very life of the defendant. The question
here is twofold: who is in better position to judge trial strategy
and who is in better position to ensure the best interest of the
defendant."

     In Wright, supra, the concurrence distinguished the decision
on whether to plead guilty or not guilty from the decision whether

stating that the decision on what to plead goes to the very exist
of a trial. To deny the defendant control over his decision could
be tantamount to denying the defendant a trial. Here, of course,
there is a trial and the decision made by the attorney goes merely
to strategy. Id at 1073. (In the present case, when presented with
the conflict between Petitioner and his attorney Unangst gave no
indication he rely on trial strategy when informed Petitioner he
would not let him testify. Nor did Unangst give trial judge a
reasonable excuse why he would not allow Petitioner to testify,
at the time the judge ordered the matter to be subject for the Court's
determination later during trial.)Judge Godbold, joined by Judge
Tjoflat, filed an eloquent dissent arguing that the right to testify
is a fundamental constitutional right that cannot be waived by defense
counsel. For instance, in making the choice on whether to testify,
just as the choice on whether to represent himself, the defendant
elects whether to become active participant in the proceeding that
affects his life and liberty and to inject his own action, voice
and personality into the process to the extent the system permits.
To deny a defendant the right to tell his story from the stand
dehumanizes the administration of justice. (Godbold. J., dissenting).
I cannot accept a decision that allows a jury to condemn to death
or imprisonment a defendant who desires to speak, without ever
having heard the sound of his voice."

   Similar, again this question was addressed by a panel of the
11th Circuit in United States v. Scott, 909 F.2d 488 (11thCir.1990)
During Scott's trial, defense counsel moved to withdrawn from the
case but would not give the reasons for this request to the trial
court. The court assumed that this was because Scott desired to
testify but the attorney intended to keep him off the stand. Rather
than ruling on this motion, the court gave Scott a choice:(1)Either
proceed with counsel, but relinquish the right to testify, or (2)
proceed pro se. The court reviewed the development of the right to
testify and concluded that it was now a recognized fundamental
constitutional right, personal to the defendant, which cannot be

-12-

waived by defense counsel. The court then found that the trial
judge had improperly forced the defendant to choose between two
constitutional rights: (1) the right to counsel; and (2) the right
to testify and therefore vacated defendant's conviction and remanded
for a new trial. Teague, supra. The Court also reaffirm that a
criminal defendant has a fundamental constitutional right to testify
in his or her own behalf at trial. This right is personal to the
defendant and cannot be waived either by the trial court or by
defense counsel. Petitioner argues contrary to this settled juris-
prudence, and the fact that the trial judge was aware of conflict
between Attorney Unangst and Petitioner, which he ordered a hearing
on the matter, but failed to hold it; thus clearly show that both
trial court judge and defense counsel played a part in waiving Peti-
tioner's right to testify, a violation of his 5th, 6th and 14th
U.S.C.A. Considering the circumstance surrounding trial judge and
defense counsel's refusal to allow Petitioner to testify requires
an evidentiary hearing to resolve this ineffective assistance claim.
U.S. v. Martiner, 181 F.3d 627 (5thCir.1999); Ferguson v. Georgia,
365 U.S. 570 (1961).

     In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984), the United States Supreme Court defined two
requirements for a claim of ineffective assistance of counsel:

               "(1), the defendant must show that counsel's perfor-
          mance was deficient. This requires showing that counsel
          made errors so serious that counsel was not functioning
          as the counsel guaranteed the defendant by the Sixth
          Amendment. (2), the defendant must show that the defi-
          cient performance prejudiced the defense. This requires
          showing that counsel's errors were so serious as to
          deprive the defendant of a fair trial, a trial whose
          result is reliable." Id, at 687, 104 S.Ct. at 2064.

     In Petitioner's case, these two requiremets are clearly
presented to the Court.

     Defense counsel Unangst failed to protect Petitioner's right
to testify in his own behalf, to the point that he was not acting
as the counsel guaranted Petitioner by the Sixth Amendment, there-
fore Defense counsel's performance was so deficient, that in fact
affected Petitioner's constitutional rights.

                              -13-

Second, and this is very important, Defense Counsel's performance was so deficient, that it was impossible for Petitioner to obtain a fair trial. There were many reasons Petitioner wanted to testify in his own behalf, and those reasons were known to Defense Counsel Unangst; denying Petitioner his right to testify in his own behalf, was a fatal error that made Petitioner's trial unfair and in violation of his Constitutional rights.

Finally, and with all due respect to the Court, Petitioner is in the process of obtaining affidavits from his Private Investigator which in fact will strenght Petitioner's claim that his Constitutional right to testify in his own behalf was violated, and more important against his own will. Once these documents are received, Petitioner will present the Court with a Supplemental Brief with the document attached, and the reasons as to why it was very essential for Petitioner's case to testify in his own behalf.

As mentioned before, Petitioner filed a Supplemental Brief with the First Circuit Court of Appeal. **SEE EXHIBIT #6**.

This brief contains two (2) documents; one, an affidavit from Ms. Melissa Payne, where it is stated that Petitioner's family and his legal team were under the impression that Petitioner was going to testify in his own behalf, but was told by Mr. Unangst not to. The other document, Attorney Sign In Visit Log, shows where Mr. Unangst visited Petitioner at the Jail where he was housed, with only one intention, stop Petitioner from testifying in his own behalf; this visit did happen the day before Petitioner was supposed to testify. All this without the knowledge of other members of Petitioner's legal team.

The Supplemental Brief filed with the First Circuit Court of Appeal, which Motion to file it was denied, is a very important piece of Petitioner's Claim of his denial of his right to testify in his own behalf, and more than enough proof of the Ineffective Assistance of Counsel provided by Mr. Unangst, one of Petitioner's defense counsels.

The first prong of Strickland's test requires that Defendant shows that counsel's performamce fell below an objective standard of reasonableness. Id., @ 688, 104 S.Ct. @ 2065. Where as herein present case, the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf. In other words, Counsel Unangst by not protecting the defendant's right to testify, Unangst-defense counsel's performance fell below the constitutional minimum, thereby violating the first prong of the Strickland test.

For example, if Unangst-defense counsel refused to accept the defendant's decision to testify and would not call him to the stand, counsel would have acted unethically to prevent the defendant from exercising his fundamental right to testify. Alternatively, if Unangst-defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant, counsel-Unangst would have neglected the vital profes-sional responsibility of ensuring that the defendant's right to testify is protected and that any waiver of that right is knowingly and voluntary. Under such circumstances herein, Unangst-defense counsel has not acted under within the range of competence demanded of attorneys in criminal cases, and therefore, Carlos Rodriguez clearly has not received reasonably effective assistance of counsel. Strickland, 466 U.S. @ 687, 104 S.Ct. @ 2064 (quoting McMann v. Richardson, 397 U.S. 759, 770-71, 90 S.Ct. 1441, 1448-49, 25 L.Ed.2d 763 (1970)). Teague, 953 F.2d 1534, Petitioner's conviction and sentence is invalid due to the ineffective assistance of trial counsel; as precisely demonstrated above, fitting the first prong of Strickland, supra.

The second prong of Strickland's test clearly had prejudicial impact effects, which Petitioner contends that his contradicted testimony of State's witnesses are such with exculpatory potential and would have enhanced his defense and made a different outcome of his criminal trial. However, due to the extraordinary circumstances

-15-

which prevented his testimony was prejudice because the jurors at his criminal trial were unable to properly assess his exculpatory testimony he desired to present and as a result he was erroneously convicted and sentenced. He states that the guilty verdict could have been prevented if allowed as of fundamental right to testify.

In addition, he strongly believes that fundamental fairness require that the resolution of these matters mandate an evidentiary hearing. This is so, because trial judge never conducted hearing on matters as earlier in criminal trial ordered to make adequate determination, the only fundamental fair opportunity presented itself was deprived and if he can now regain this fundamental fair opportunity accordingly to due process, and prove that his counsel Unangst prevented him from the fundamentally right to testify despite his request to do so, he may be entitled to post conviction collateral relief. U.S.C.A 5th, 6th and 14th Amendment Rights; Martinez, 181 F.3d 627 (5th Cir.1999); and Strickland v. Washington, supra.

## CONCLUSION

WITH ALL DUE RESPECT, PETITIONER PRAYS THIS HONORABLE
CONSIDERS ALL THE FACTS AND INFORMATION CONTAINED HEREIN,
AND AFTER REVIEWING PETITIONER'S CLAIMS, THAT THIS MATTER
BE REMANDED BACK TO THE DISTRICT FOR AN EVIDENTIARY HEARING;
OR IN THE ALTERNATIVE, THAT PETITIONER'S CONVICTION AND
SENTENCE BE VACATED AND A NEW TRIAL BE GRANTED IN ACCORDANCE
WITH THE LAWS AND THE PROTECTIONS GUARANTEED BY BOTH CONS-
TITUTIONS, THE LOUISIANA CONSTITUTION AND THE UNITED STATES
CONSTITUTION.

HOMER, LOUISIANA, THIS 70 TH DAY OF MARCH , 2020.

Submitted by:

Carlos A. Rodriguez, DOC #127087
David Wade Correctional Center
670 Bell Hill Rd. H2B
Homer, LOUISIANA 71040-2150

Petitioner pro se

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Writ Application
has been mailed to the following parties, first class postage pre-
paid, via prison mail system:

      1): District Attorney's Office
          22nd Judicial District Court
          Parish of St. Tammany
          COVINGTON, LOUISIANA 70433

              and,
      2): Honorable August J. Hand
          22nd Judicial District Court - Div. "B"
          Parish of St. Tammany
          COVINGTON, LOUISIANA 70433

Homer, LOUISIANA, this 70 TH day of MARCH , 2020.

Carlos A. Rodriguez, DOC #127087

Petitioner pro se

The Supreme Court of the State of Louisiana

**STATE OF LOUISIANA**

No.2020-KH-00588

**VS.**

**CARLOS ALBERTO RODRIGUEZ**

– – – – – –

IN RE: Carlos Alberto Rodriguez - Applicant Defendant; Applying For Supervisory Writ, Parish of St. Tammany, 22nd Judicial District Court Number(s) 465867-1, 1st Circuit Court of Appeal, Number(s) 2019 KW 1619;

– – – – – –

**September 29, 2020**

Writ application denied. See per curiam.

JLW

BJJ

JDH

SJC

JTG

WJC

JHB

Supreme Court of Louisiana
September 29, 2020

Second Deputy   Clerk of Court
For the Court

**EXHIBIT #10**

SUPREME COURT'S DENIAL OF WRIT



CARLOS A. RODRIGUEZ, #1270087
DAVID WADE CORRECTIONAL CENTER
670 BELL HILL RD. H5A
HOMER, LOUISIANA 71040-2150

UNITED STATES POSTAL SERVICE

For Domestic Use Only

PRIORITY MAIL

★ ★

TRACKED
INSURED

Label 107R, July 2013

NOT RESPONSIBLE FOR CONTENTS

NOV 09 2020

DWCC

CLERK OF COURT
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
HALE BOGGS FEDERAL BLDG.
500 POYDRAS STREET - Room C151
NEW ORLEANS, LOUISIANA 70130

LEGAL MAIL

EXPECTED DELIVERY DAY: 11/13/20
USPS TRACKING® NUMBER

9505 5141 7026 0314 2712 89

U.S. POSTAGE PAID
HOMER, LA
71040
NOV 09, 20
AMOUNT
$0.00
R2308H150705-06

1006
70130