UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CARLOS RODRIGUEZ                                          CIVIL ACTION

VERSUS                                                   NO. 20-3083

JERRY GOODWIN, WARDEN                                    SECTION "M"(2)

REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including

an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for

disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the

Rules Governing § 2254 Cases.  Upon review of the entire record, I have determined that a federal

evidentiary hearing is unnecessary.[1]  For the following reasons, I recommend that the petition for

habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

I.    FACTUAL BACKGROUND

Petitioner Carlos Rodriguez is a convicted inmate incarcerated in the Davide Wade

Correction Center in Homer, Louisiana.[2]  Rodriguez, along with co-defendants Gina Scramuzza,

Erly Montoya, and Luis Rodriguez-Hernandez, were charged by a bill of indictment in St.

Tammany Parish with first degree murder of Mario Scramuzza.[3]  Rodriguez pled not guilty on

---

[1] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id*. § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  *Id*. § 2254(e)(2)(B).
[2] ECF No. 1, at 1.
[3] State Record Volume (hereinafter "St. R. Vol.") 1 at 76, Bill of Indictment, 4/22/09.

1

May 12, 2009.[4]  The Louisiana First Circuit Court of Appeal summarized the established facts at

trial as follows:

> On or about February 27, 2009, Sergeant Brett Ibert and Deputy Shane Bennett of the St. Tammany Parish Sheriff's Office (STPSO) were dispatched to 44 Green Hill Drive in Covington, due to an initial 911 call in reference to a missing person, followed by a subsequent complaint by the same caller of a possible burglary.  When the police arrived at the residence, the complainant, Gina Scramuzza, stated that her husband, Mario Scramuzza, Jr. (the victim), was missing and the house had been ransacked.  The officers entered the residence and observed the bedrooms in disarray with opened drawers and clothes tossed around.  As Sergeant Ibert escorted Mrs. Scramuzza out of the residence in preparation to process the scene, Deputy Bennett called him to the laundry room where the victim's body was on the floor face down with a blue and white towel[3] under his head.  Although he saw the victim's body in the residence, Sergeant Ibert did not initially inform Mrs. Scramuzza, who was outside when the body was discovered.  As [t]he officers placed Mrs. Scramuzza inside of the air conditioned police unit, Mrs. Scramuzza abruptly became distraught and asked, "[O]h, my God, what is it[?]"
>
> Mrs. Scramuzza was subsequently transported to the Major Crimes Office for questioning.  After Mrs. Scramuzza was informed of and waived her rights pursuant to Miranda v. Arizona, 384 U.S. 436, 444–445, 86 S. Ct. 1602, 1612, 16 L.Ed. 2d 694 (1966), she was interviewed by STPSO Detective Vance Vitter and Detective Stacey Callendar.  Early on, Mrs. Scramuzza expressed her desire to speak with the female officer (Detective Callendar) alone.  Thus, Detective Vitter excused himself from the interview room and monitored the interview from the observation room.  During the interview, Mrs. Scramuzza confirmed that she was having an extramarital relationship with the defendant, and confessed to plotting the victim's death and to specifically hiring the defendant to commit the murder.[6]  She stated that the defendant and two unknown males who sat in the back seat entered her vehicle on Friday afternoon.[7]  She specifically indicated that she picked up the defendant and the unknown males, whose faces she did not see as  she was instructed not to turn around, from Walmart and dropped them off at her residence, knowing that they would murder the victim.  At that point, Detective Callendar drafted arrest warrants for Mrs. Scramuzza and the defendant.[8]
>
> According to Dr. Michael DeFatta, the St. Tammany Parish Coroner's Office expert in forensic pathology who performed the autopsy on March 1, 2009, the victim suffered trauma to the neck, blanching on the left side of his face, and injuries to his forehead, nose, bottom lip, wrists, hand, ribs, and knee.[9]  Dr. DeFatta testified that in his opinion, the victim was face down when he died, and his cause of death was asphyxia due to strangulation.

---

[4] St. R. Vol. 1 at 2, Min. Entry, 5/12/09.

The defendant gave a recorded police statement on Sunday, March 1, 2009, after his arrest and upon being advised of his <u>Miranda</u> rights and signing the waiver of rights form. The defendant admitted to knowing Mrs. Scramuzza, but only to having a non-physical relationship with her. He further confirmed that he was aware that Mrs. Scramuzza was married, and that he did not inform her that he was married. According to the defendant, approximately three months after the relationship started, Mrs. Scramuzza began complaining about her husband. The defendant denied any knowledge of the victim's death and stated that he was home at the time of the offense and had not been on the Northshore (the Covington/Mandeville area) any time that Friday or since.

During a subsequent interview conducted the following day, after being re-*Mirandized*, the defendant was shown surveillance photographs of himself at the Northshore Walmart on Friday, February 27, 2009. At that point, he admitted to being in the area, and to meeting with Mrs. Scramuzza, indicating that she wanted him to pawn or take possession of some of her jewelry. However, as to whether the defendant killed the victim, the defendant "didn't deviate from any information that he had provided previously," in denying he killed the victim.[10]

------------------------------------

[3]Suspected blood was on the towel located underneath the victim's head and a second towel with suspected blood on it was located under a pile of clothes near the victim's body. The police further collected an approximate forty-four inch red, white, and blue looped cord or rope from the laundry room counter.

[6]On Sunday, March 1, 2009, the police re-*Mirandized* and re-interviewed Mrs. Scramuzza to obtain a recap of her confession after learning that the audio of the initial VHS recording was distorted. A digital voice recording of the recap was fully captured.

[7] Keith Plaisance, IT director of United States Environmental Services, the defendant's place of employment at the time of the offense, testified that on February 26, 2009, the defendant sent an e-mail notification that he would not be attending work on February 27, and February 28, due to a "very bad" family matter. Plaisance provided the police with tracking data for the defendant's work vehicle for that time period. Detailed coordinates showed the defendant's "comings and goings" on February 27, 2009. The victim's truck was located in a motel parking lot in Walker, Louisiana.

[8] Before the instant trial, Mrs. Scramuzza pled guilty to first degree murder with the agreement by the State to not seek the death penalty and the imposition of a sentence of life imprisonment.

[9] The injuries to the victim's wrists included banding and bruising, consistent with his being bound with zip ties.

[10] Items located in the defendant's work truck included two Rolex watches and a bracelet engraved with Mrs. Scramuzza's first name, Gina, and boxes of blue nitrile gloves. [5]

A myriad of pretrial motions were filed by defense counsel. On June 5, 2012, Rodriguez filed a pro se motion for appointment of capital defense counsel, which the state trial court denied.[6]

------------------------------------

[5] *State v. Rodriguez*, Number 2017 KA 0245, 2017 WL 4082426, at *2-5 (La. App. 1st Cir. 9/15/2017) (footnotes 2, 4, 5 omitted); St. R. Vol. 11 of 11, 1st Cir. Opinion, 2017 KA 0245, at 2-5, 9/15/17.

[6] St. R. Vol. 1 at 133, Motion for Appointment of Capital Defense Attorney, 6/5/12 (dated 6/3/12); *id*. at 136, Order, undated.

On July 13, 2012, the Public Defender advised the trial court that the Office was seeking to appoint new counsel.[7]  On August 20, 2012, attorneys Bruce Unangst, II, David Price, and Bruce Dodd enrolled as counsel for Rodriguez.[8]  Defense counsel filed many additional motions, including several motions to continue over the following years.[9]

On April 11, 2016, the prosecution agreed to remove the death penalty as a sentencing option.[10]  Rodriguez went to trial before a jury on May 16 through 20, 2016, and the jury unanimously found Rodriguez guilty as charged.[11]  Rodriguez filed a motion for post-verdict judgment of acquittal,[12] which the state trial court denied on June 16, 2016.[13]  After Rodriguez waived legal delays, the trial court sentenced him to life imprisonment without the benefit of parole, probation or suspension of sentence.[14]

On direct appeal to the Louisiana First Circuit Court of Appeal, Rodriquez's appointed counsel asserted two errors:

(1)    Insufficient evidence supported his conviction; and

---

[7] *Id.* at 13, Min. Entry, 7/13/12.

[8] *Id.* at 14, Min. Entry, 8/20/12.

[9] *Id.* at 25-26, Min. Entry, 7/30/13; *id*. at 38, Min. Entry, 8/17/15; St. R. Vol. 2 at 352-438, Motion for Continuance, 7/30/13; *id*. at 450-83, Motion with Incorporated Memorandum to Continue Trial Date, 6/22/15.

[10] St. R. Vol. 1 at 49, Min. Entry, 4/11/16; St. R. Vol. 3 at 558, Joint Trial Stipulations, 4/11/16; St. Rec. Vol. 4 at 903-06, Hearing Tr., 4/11/16.

[11] St. R. Vol. 1 at 50-56, Trial Mins., 5/16/16; *id*. at 57-60, Trial Mins., 5/17/16; *id*. at 61-64, Trial Mins., 5/18/16; *id*. at 65-69, Trial Mins. 5/19/16; *id*. at 70-72, Trial Mins., 5/2016; St. R. Vol. 3 at 611, Verdict, 5/20/16; St. R. Vol. 4 at 914-41, Trial Tr., 5/16/16; St. R. Vol. 5 at 942-1171, Trial Trans (con't), 5/16/16; St. R. Vol. 6 at 1172-1326, Trial Tr. (con't) 5/16/16; *id*. at 1327-1401, Trial Tr., 5/17/16; St. R. Vol. 7 at 1402-1574, Trial Tr. (con't), 5/17/16; *id*. at 1574-1630, Trial Tr., 5/18/16; St. R. Vol. 8 1631-1729, Trial Tr. (con't), 5/18/15; *id*. at 1730-1862, Trial Tr., 5/19/16; St. R. Vol. 9 at 1863-1915, Trial Trans (con't), 5/19/16; *id*. at 1916-2057, Trial Tr., 5/20/16.

[12] St. R. Vol. 3 at 623-25B, Motion for Post Verdict Judgment of Acquittal, 7/7/16.

[13] St. R. Vol. 1 at 73-74, Sentencing Mins. 6/16/16 (misdated); St. R. Vol. 9 at 2058-68, Sentencing Tr., 7/7/16.

[14] St. R. Vol. 1 at 73-74, Sentencing Mins. 6/16/16 (misdated); St. R. Vol. 9 at 2058-68, Sentencing Tr., 7/7/16.

(2)     The trial court erred in denying his post-verdict judgment of acquittal.[15]

On September 15, 2017, the Louisiana First Circuit affirmed Rodriguez's conviction and sentence.[16]  The court found that the detailed accounts of the robbery and murder provided by Gina Scramuzza, Montoya, and Rodriguez-Hernandez were consistent with DNA evidence, phone records, GPS coordinates, and surveillance footage as well as evidence recovered during the execution of warrants.[17]  The court found that there was overwhelming evidence such that a reasonable juror could conclude that Rodriguez was guilty of first degree murder.[18]  The court concluded that the combined assignments of error lacked merit.[19]  Rodriguez did not file a writ application with the Louisiana Supreme Court.

On September 30, 2018, Rodriguez filed an application for post-conviction relief asserting four claims:

(1) The time limitation for prosecution in his case expired prior to the commencement of trial;

(2) The State committed prosecutorial misconduct when the prosecutor vouched for the truthfulness and credibility of a state witness during closing argument;

(3) Ineffective assistance of counsel by failing to: (a) investigate and prepare a defense; (b) file a motion to quash based on the expiration of the time limitations of LA. CODE CRIM. P. art. 578; (c) request funds to hire investigators and expert witnesses; (d) object to the prosecutor's rebuttal argument; and

(4) Defense counsel denied him of his constitutional right to testify at trial.[20]

---

[15] St. R. Vol. 10, Appeal Brief, 2017 KA 0245, at 1, 4/4/17.

[16] *State v. Rodriguez*, 2017 KA 0245, 2017 WL 4082426, at *5-9 (La. Ct. App. 1st Cir. 9/15/2017); St. R. Vol. 11, 1st Cir. Opinion, 2017 KA 0245, at 18, 9/15/17.

[17] *Id.* at *17; St. R. Vol. 11, 1st Cir. Opinion, 2017 KA 0245, at 17, 9/15/17.

[18] *Id.*; St. R. Vol. 11, 1st Cir. Opinion, 2017 KA 0245, at 17, 9/15/17.

[19] *Id.* at *18; St. R. Vol. 11, 1st Cir. Opinion, 2017 KA 0245, at 18, 9/15/17.

[20] St. R. Vol. 11, Application for Post-Conviction Relief, at 5, 10/4/18 (dated 9/30/18).

On October 9, 2019, the state trial court denied the application, finding that Rodriguez's first claim lacked merit as he was prosecuted within the statutory time limitations.[21]  The court also found meritless Rodriguez's claims of prosecutorial misconduct, explaining that the prosecutor did not vouch for the witness, but rather explained why her testimony was supported by the evidence, and stayed within the scope of proper argument pursuant to LA. CODE CRIM. P. art. 744.[22]  The court found that Rodriguez failed to prove deficient performance by his counsel with regard to his list of ineffective assistance of counsel claims.[23]  Finally, the trial court found that Rodriguez failed to provide evidence that he disagreed with his counsel's advice not to testify and that he in fact desired to testify on his own behalf.[24]

On February 28, 2020, the Louisiana First Circuit denied Rodriguez's December 3, 2019, writ application.[25]  The Louisiana Supreme Court denied Rodriguez's related writ application in September 29, 2020, finding that he failed to show he received ineffective assistance of counsel and that, as to his remaining claims, he failed to satisfy his postconviction burden of proof under LA. CODE CRIM. P. art. 930.2.[26]

## II.   FEDERAL HABEAS PETITION

On November 12, 2020, Rodriguez filed a petition for federal habeas corpus relief styled under 28 U.S.C. § 2254 and challenging his current custody.[27]  Rodriguez asserts the following claims before the court:

---

[21] *Id.*, Judgment on Post-Conviction with Incorporated Reasons, at 2-3, 10/9/19.

[22] *Id.* at 3-4.

[23] *Id.* at 4-5.

[24] *Id.* at 5-6.

[25] *State v. Rodriguez*, No. 2019 KW 1619, 2020 WL 975472 (La. App. 1st Cir. 2/28/2020); St. R. Vol. 12, 1st Cir. Order, 2019 KW 1619, 2/28/20; *id.*, 1st Cir. Writ Application, 2019 KW 1619, 12/4/19.

[26] *State v. Rodriguez,* 301 So. 3d 1164 (La. 9/29/2020) (per curiam); St. Rec. Vol. 13, La. Sup. Ct. Order, 20-KH-058, 9/29/20; *id.,* La. Sup. Ct. Writ Application, 20 KH 588, 5/22/20 (dated 3/20/20).

[27] ECF No. 1.

(1)    The time for the prosecution of the case expired before the trial started in violation of the Fourteenth Amendment;

(2)    The prosecutor improperly vouched for the truthfulness and credibility of Gina Scramuzza during closing arguments in violation of the Fourteenth Amendment;

(3)    Ineffective assistance of counsel; and

(4)    He was denied the right to testify on his own behalf.[28]

The State's response in opposition conceded exhaustion and that no claim is in procedural default.[29]  The State asserts that Rodriguez's petition is "probably untimely," but does not rely on that defense due to equitable factors, and instead argues that Rodriguez's claims are meritless and the denial of relief was not contrary to or an unreasonable application of Supreme Court law.[30] Rodriguez filed a reply to the State's opposition response urging equitable tolling due to COVID-19 restrictions and re-urging the merits of his first claim.[31]

## III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996,[32] and applies to habeas petitions filed after that date.[33]  The AEDPA therefore applies to Rodriguez's petition filed on November 12, 2020.

---

[28] ECF No. 1-1, at 1, 5, 10.

[29] ECF No. 20, at 7.

[30] *Id*. at 1, 7.

[31] ECF No. 11.

[32] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[33] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

The threshold questions in habeas review under the AEDPA are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court. In other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural default" on a claim.[34] Here, the State waives any time bar defense, and review of the record demonstrates that state court review has been exhausted, and no claim is in procedural default.[35]

This federal habeas court is thus not barred from reviewing Rodriguez's claims. Based on that review, for the reasons that follow, Rodriguez is not entitled to federal habeas relief.

### A. Standards of a Merits Review

Sections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law in federal habeas corpus proceedings.[36] Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[37] The statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear

---

[34] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

[35] ECF No. 10, at 7. The AEDPA statute of limitations is an affirmative defense, rather than a jurisdictional mandate. *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998). Consequently, the limitations defense may be waived by the State, and the waiver must be express and intentional. *Scott v. Johnson*, 227 F.3d 260. 263 (5th Cir. 2000) (citing *Smith v. Johnson*, 216 F.3d 521 (5th Cir. 2000)); *Magouirk v. Phillips*, 144 F.3d 348 (5th Cir. 1998). Here, the State acknowledged that the petitioner may be untimely by 18 days, but given Rodriguez's assertion of equitable tolling based on prison restrictions resulting from the COVID-19 pandemic, submitted "it would be a more efficient use of both the respondent's and the court's limited resources to address the merits rather than conduct a factual inquiry into the details of the petitioner's ability to prepare his petition in light of COVID-19 related restrictions on prison life." ECF No. 10, at 7 (citation omitted). The State's waiver was express and intentional, and the court is bound by its waiver. *Day v. McDonough*, 547 U.S. 198, 202 & 210 n.11 (2006) ("And we would count it an abuse of discretion to override a State's deliberate waiver of a limitations defense"); *Wood v. Milyard*, 566 U.S. 46, 472-474 (2012) (appellate court abused its discretion by sua sponte raising limitations on appeal after the State recognized a viable limitations defense and deliberately declined to pursue it).

[36] *Nobles*, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

[37] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).

and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1).  The determination receives deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"[38]  The United States Supreme Court has clarified the § 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[39]

The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."[40]  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"[41]

---

[38] *Penry v. Johnson*, 215 F.3d 504, 507 (5th Cir. 2000) (brackets in original) (quoting *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000)), *aff'd in part, rev'd in part on other grounds*, 532 U.S. 782 (2001); *Hill*, 210 F.3d at 485.
[39] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Penry*, 532 U.S. at 792-93 (2001) (citing *Williams*, 529 U.S. at 405-06, 407-08); *Hill*, 210 F.3d at 485.
[40] *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)); *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (quoting *Harrington*, 562 U.S. at 103).
[41] *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)); *Shoop*, 139 S. Ct. at 509 (habeas courts must rely "strictly on legal rules that were clearly established in the decisions of this Court at the relevant time.")

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"[42]  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[43]  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[44]

## B.  AEDPA Standards of Review Apply in this Case

As discussed above, the AEDPA's deferential standards of review under § 2254(d) and *Williams*[45] apply only to claims adjudicated on the merits by the state courts.  28 U.S.C. § 2254(d).  Thus, the deferential AEDPA standards of review do not apply to claims that are not adjudicated on the merits in state court.[46]  In that instance, the federal habeas court will consider the claims (not addressed on the merits) under pre-AEDPA *de novo* standards of review.[47]

To determine whether to apply the highly deferential AEDPA standards, a federal habeas court must look to the last reasoned state court decision to determine whether that ruling was on the merits of the claim and "lack[ed] in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[48]  In well-settled Supreme Court doctrine, when faced with an unexplained state court decision, the federal

---

[42] *Price v. Vincent*, 538 U.S. 634, 641 (2003) (brackets in original) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (citations omitted)).

[43] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

[44] *Price*, 538 U.S. at 641 (*quoting Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

[45] 529 U.S. at 362.

[46] *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).

[47] *Henderson*, 333 F.3d at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims asserted in state court, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

[48] *White*, 572 U.S. at 419-20 (quoting *Harrington*, 562 U.S. at 103).

habeas court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision.[49]

## IV.    RODRIGUEZ'S SPECIFIC CLAIMS

### A.  Claim One: Expiration of the Limitations Period

Rodriguez claims that the time for the prosecution of his case expired before his trial started in violation of LA. CODE CRIM. P. art. 578 and the United States Constitution. He claims that his trial, which commenced seven years after he was indicted, violated the three-year limitation period under Louisiana law. He further claims his constitutional right to a speedy trial was violated.

The trial court, in addressing these issues, among others, on post-conviction relief, found as follows:

> *Time limitations for Prosecution*
>
> Rodriguez was charged by bill of indictment on April 22, 2009 with committing first degree murder. Vol. 1, p. 76[1] The state filed notices of its intent to seek the death penalty in its prosecution of petitioner. Vol. 1, p. 106. Pursuant to La. C.Cr.P. art. 578(A)(1), the state had three years from the date of institution of prosecution to commence trial. The running of the period of limitation established in Article 578 is suspended, however, when a defendant files a motion to quash or other preliminary plea. The time period is suspended until the ruling of the court on the preliminary plea. *See* La. C.Cr.P. art. 580(A).
>
> Rodriguez argues that no defense motion seeking a continuance was filed before the statutory time limitation had already expired. The Court finds that the petitioner mistakenly believes that only a motion for continuance would suspend the running of the time limitation. The jurisprudence has held differently. For the purposes of art. 580, a preliminary plea is understood to be "any pleading or motion filed by the defense which has the effect of delaying trial." *State v. Brooks*, 2002-0792, p. 6 (La. 2/14/03), 838 So.2d 778, 782. "These pleadings include properly filed motions to quash, motions to suppress, or motions for a continuance, as well as application for discovery and bills of particulars." *Id.*

---

[49] *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018); *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when last state court judgment does not indicate whether it is based on procedural default, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The state points out in its opposition that eight days after the indictment was filed, defense attorneys filed motions on behalf of the petitioner, including a motion to suppress statements. The record shows that on April 30, 2009, the defense filed several motions, including: Motion to Suppress Inculpatory Statements (Vol. 1, p. 78-79); Motion to Reveal Rap Sheets and NCIC Reports (Vol. 1., p. 80-81); Motion for Order Allowing Access to Physical Evidence (Vol. 1, p. 82-84); and Motion for Discovery (Vol. 1, p. 85-105). These motions qualify as "preliminary pleas" for purposes of determining the suspension of the time limitation of Art. 578. The record shows these motions were filed on April 30, 2009, eight days after the petitioner was indicted, and were not finally resolved until May 16, 2016, the morning of trial. Vol. 1, p. 50; Vol. 4, p. 916. The Court noted that these were "outstanding motions;" and trial defense counsel stated: "I will note these were all filed by prior counsel very early on by appointment, not by me or our office." Vol. 4, p. 916-917.

The Court agrees with the state that, by operation of Article 580 and the record in this case, the time that passed between the filing of these motions and the rulings thereon are not counted against the statutory period of limitations. The time limitation for bringing the petitioner to trial was suspended on April 30, 2009, eight days after the indictment was handed down, and remained suspended until May 16, 2016, the morning of trial. The Court finds there is no merit to the petitioner's argument that he was not prosecuted within the period of limitations set by La. C.Cr.P. art. 578-580.[50]

The Louisiana First Circuit did not specifically mention the issue, but found that the trial court did not err in denying relief.[51] The Louisiana Supreme Court denied the related writ application, finding that Rodriguez failed his postconviction burden of proof under LA. CODE CRIM. P. art. 930.2.[52]

To the extent Rodriguez claims that the state trial court lost jurisdiction under *state* law to preside over his case when his speedy trial time allegedly expired, he has not stated a cognizable federal claim. Federal courts on habeas review do "not sit as [a] 'super' state supreme court" to review errors in the application of state law.[53] A federal habeas court will not review a claim that

---

[50] St. R. Vol. 11, Judgment on Post-Conviction with Incorporated Reasons, at 2-3, 10/9/19.

[51] *Rodriguez*, 2020 WL 975472, at *1; St. R. Vol. 12, 1st Cir. Order, 2019 KW 1619, 2/28/20.

[52] *Rodriguez*, 301 So. 3d at 1164; St. Rec. Vol. 13, La. Sup. Ct. Order, 2020 KH 00588, 9/29/20.

[53] *Accord Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994); *Mason v. Stanart*, 520 F. App'x 242 (5th Cir. 2013); *see also Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L.Ed.2d 732 (2011) (federal habeas review does not lie for errors of state law); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475,

the state courts have misapplied Louisiana Code of Criminal Procedure article 578.[54]  Instead, this Court on federal habeas review must focus on Rodriguez's claim that he was denied his federal speedy trial rights.

The Sixth Amendment guarantees every person accused of crime the right to a speedy trial.[55]  Whether a defendant has been deprived of his right to a speedy trial is a mixed question of law and fact.[56]  Therefore, to obtain federal habeas relief, petitioner must show that the state court's decision denying his claim was contrary to or an unreasonable application of Supreme Court precedent.  The court also must consider that, "due to the somewhat indeterminate and fact-intensive nature of the speedy trial right, our 'always-substantial deference is at an apex.'"[57]

The Supreme Court recognized that "[i]t is . . . impossible to determine with precision when" a specific trial delay crosses the line and becomes unconstitutionally long.[58]  The Supreme Court declared that "'[t]he right of a speedy trial is necessarily relative,'" and required the courts to apply "a functional analysis of the right in the particular context of the case[.]"[59]  Courts must consider and balance the following factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant.[60]  No single factor is necessary or sufficient to establish a violation.[61]

---

116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

[54] *Tillman v. Winn Correctional Center*, Civ. Action No. 10-cv-1411, 2013 WL 4096910, *1-2 (W.D. La. Aug. 13, 2013) (state courts' interpretation and application of Louisiana articles relating to timely prosecution did not state a federal habeas claim).

[55] *Amos v. Thornton*, 646 F.3d 199, 204 (5th Cir. 2011).

[56] *Id.* at 204; *Divers v. Cain*, 698 F.3d 211, 216 (5th Cir. 2012).

[57] *Divers*, 698 F.3d at 217 (quoting *Amos*, 646 F.3d at 204-05).

[58] *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972); *Laws v. Stephens*, 536 F. App'x. 409, 412 (5th Cir. 2013).

[59] *Id*. at 522, 92 S. Ct. 2182 (citation omitted).

[60] *Barker*, 407 U.S. at 530, 92 S. Ct. 2182; *Amos*, 646 F.3d at 205 (citing *Goodman v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008)); *Doggett v. United States*, 505 U.S. 647, 651 (1992).

[61] *Id*. at 533, 92 S. Ct. 2182.

Under the first *Barker* factor, the Court must consider the length of the delay in Rodriguez's case.  Under LA. CODE CRIM. P. art. 578(A)(1), the State had three years from commencement of the prosecution to begin Rodriguez's trial on his capital felony charge.[62]  For purposes of speedy trial in Louisiana, a prosecution commences "on the date of filing of the indictment, or the filing of a bill of information, or affidavit, which is designed to serve as the basis of a trial."[63]  Similarly, calculating time under the first *Barker* factor begins with "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment."[64]

In Rodriguez's case, he was indicted on April 22, 2009, and the State had three years from that date, or until April 23, 2012,[65] to bring him to trial.  Rodriguez was not called to trial until May 16, 2016.  Thus, Rodriguez has made a threshold showing of significant delay sufficient to trigger a full *Barker* analysis.[66]

The second *Barker* factor considers the reasons for the delay.[67]  A court gives different weight to different reasons, and "delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state."[68]

Louisiana law provides several valid reasons for delay, which include resolution of pretrial motions filed by the defendant and trial continuances requested or joined by the defendant.[69]  Specifically, the three-year time limit to commence trial is suspended by LA. CODE CRIM. P. art.

---

[62] *Id.* at 1213-14.
[63] La. Code Crim. P. art. 934(7).
[64] *Dillingham v. United States*, 423 U.S. 64, 65 (1975) (per curiam).
[65] The last day of the period was Sunday, April 22, 2012, which left the deadline to fall on the next business day, Monday, April 23, 2012.  *See* LA. CODE CRIM. P. art. 13; Fed. R. Civ. P. 6.
[66] *See Amos*, 646 F.3d at 206.
[67] *Id.* at 207.
[68] *Id.*
[69] La. Code Crim. P. art. 580(A).

580(A) "[w]hen a defendant files a motion to quash or other preliminary plea . . . until the ruling

of the court thereon . . . ."[70]

Louisiana jurisprudence provides that a "preliminary plea" under Article 580(A) "'is any

plea filed after prosecution is instituted, but before trial,' that causes the trial to be delayed,"

including motions to suppress, motions for continuance filed by defendant, and joint motions for

continuance."[71] In addition, when a suspension occurs, "in no case shall the state have less than

one year after the ruling to commence the trial"[72] The Louisiana courts apply these provisions to

give the State one year from the granting of each defense pretrial plea/motion and/or defense or

joint motion for continuance.[73] This is consistent with what the state trial court did when denying

Rodriguez's post-conviction application.

The delays here were unquestionably numerous. The record reflects a plethora of motions

filed by Rodriguez's original counsel from April 30, 2009 and after April 23, 2012 (the original

speedy deadline) which legitimately extended the speedy trial period. For example, on April 30,

2009, counsel filed a motion to suppress along with four other motions.[74] On May 12, 2009, the

state trial court granted counsel thirty days to file special pleadings.[75] On April 14, 2010, defense

counsel filed a motion for change of venue.[76] The defense requested additional discovery on

---

[70] *See State v. Joseph*, No. 2018-0867, 2019 WL 1284579, at *3 (La. App. 4th Cir. 3/20/2019); *State v. Ladmirault*, 286 So. 3d 1206 (La. App. 4th Cir. 12/18/2019).

[71] *Id.* (citations omitted).

[72] La. Code Crim. P. art. 580(A).

[73] *State v. Williams*, No. 2018 KA 1795, 2019 WL 23172, at *5 (La. 1st Cir. 5/31/19) (continuances suspended the time limitations to commence trial); *State v. Landrum,* No. 2017 KA 0307, 2018 WL 913161, at *3 (La. App. 1st Cir. 2/16/18) (time limitation for commencement of trial was extended by one year from the date of the denial of defendant's pro se motion to quash).

[74] St. R. Vol. 1 at 78-79, Motion to Suppress Inculpatory Statements, 4/30/19; *id.* at 80-81, Motion to Reveal Rap Sheets and NCIC Reports, 4/30/09; *id.* at 82-102, Motion for Order Allowing Access to Physical Evidence, 4/30/09; *id.* at 103-105, Jackson Demand for Notice of any Bad Acts that the State May Wish to Use at Either Phase, 4/30/09.

[75] St. R. Vol. 1 at 2, Hearing Mins., 5/20/09.

[76] St. R. Vol. 1 at 116-19, Motion for Change of Venue, 4/14/10.

August 5, 2010.[77]  In June 2012, Rodriguez himself filed a pro se motion seeking appointment of capital counsel.[78]

New counsel enrolled on August 20, 2012.[79]  On October 19, 2012, the state trial court gave counsel sixty days to file additional motions.[80]  On December 19, 2012, defense counsel filed

---

[77] St. R. Vol. 1 at 123-24, Defendant's First Supplemental Motion for Discovery, Production, and Inspection, 8/5/10.

[78] St. R. Vol. 1 at 133-36, Motion for Appointment of Capital Defense Attorney, 6/5/12 (dated 6/3/12).

[79] St. R. Vol. 1 at 14, Hearing Mins., 8/20/12.

[80] St. R. Vol. 1 at 15, Hearing Mins., 10/19/12.

several additional motions.[81]   The state trial court resolved some of the motions at a hearing on January 14, 2013, but deferred ruling on other motions.[82]

On July 30, 2013, defense counsel filed a motion to continue the trial for at least sixteen months in order to conduct an adequate and independent investigation and prepare for trial.[83]   After a lengthy hearing, the state trial court granted a continuance of the trial until November 2014.[84]

---

[81] St. R. Vol. 1 at 137-42, Motion for Statutory Discovery, 12/19/12; *id*. at 144-53, Motion to Discover and Disclose *Brady/Giglio* Evidence Favorable to Defense, 12/19/12; *id*. at 155-216, *Kyles* Motion for a Reviewable, Competent Search for Brady Material, 12/19/12; *id*. at 217-19, Motion for Bill of Particulars, 12/19/12; *id*. at 221-24, *Jackson* Demand for Notice of Any Bad Acts that the State May Wish to Use at Penalty Phase, 12/19/12; *id*. at 226-27, Demand for *Prieur/404b* Notice of Other Crimes, Wrongs, or Acts Intended for Use at Either Phase of Trial, 12/19/12; St. R. Vol. 2 at 229-33, Demand for *Bernard* Notice and Subsequent Hearing on the Admissibility of Such Evidence & Motion for Discovery of Unfavorable Acts of the Victim in this Case, 12/19/12; *id*. at 234-37, Motion to Reveal the Identity of Informants and Reveal All Deals, 12/19/12; *id*. at 239-41, Motion for Production of Witness "Rap Sheets" (Records of Arrests and Convictions and NCIC Reports for All Potential Witnesses to be Called by the State), 12/19/12; *id*. at 243-46, Motion to Require the Prosecution Follow the ABA Criminal Justice Standards on Discovery and Produce of a List of Persons Known to Have Knowledge of Relevant Facts and All Prior Statements by Potential Witnesses to be Called by the State, 12/19/12; *id*. at 248-50, *Melendez-Diaz* Motion to Require All Witnesses to Testify in Person, Not Via Certificate or Hearsay, 12/19/12; *id*. at 252-55, Motion for Discovery of DNA Evidence, 12/19/12; *id*. at 257-58, Request for Written Jury Charge in Time to Take any Foreseeable Action Well Before Trial Commences, 12/19/12; *id*. at 260-61, Motion to Determine Juror Sequestration Issues, 12/19/12; *id*. at 263-66, Motion to Restrict Juror Purges Outside the Presence of the Defendant and Motion to Place Juror Exemptions on the Record in this Case, 12/19/12; *id*. at 268-79, Motion to Dismiss the Death Penalty due to the Failure of Existing Death Penalty Procedures to Provide the Defendant with Impartial Jury, and Motion to Present Expert Testimony in Support of Motion to Dismiss Death, 12/19/12; *id*. at 281-83, Motion for Individual, Sequestered Voir Dire Examination for Death Penalty Views; Hardship Requests; Prior Knowledge of Case, Witnesses, or Parties; and Media Exposure, 12/19/12; *id*. at 285-90, Motion to Alternate Order of Juror Questions to Ensure Full and Fair Voir Dire, 12/19/12; *id*. at 292-96, Motion for Full and Fair Voir Dire to Ensure that the Life Penalty is a Realistic Option for All Sworn Jurors in this Case, 12/19/12; *id*. at 298-300, Motion for Discovery of Prosecution's Information on Prospective Jurors, 12/19/12; *id*. at 302-03, Motion for Disclosure of Past and Present Relationships, Associations and Ties Between the District Attorney and Prospective Jurors, 12/19/12; *id*. at 305-06, Motion to Sequester Witnesses During Pretrial Hearings and at Trial, Including During Voir Dire, 12/19/12; *id*. at 308-09, Motion to Enjoin the Prosecution from Informing Witnesses as to What Other Witnesses May Have Said, 12/19/12; *id*. at 312-14, Motion to Require the Court Reporter to Transcribe the Entire Proceedings, Including Pre-Trial Hearings and Bench Conferences, 12/18/12; *id*. at 316-17, Motion to Preclude Uniformed Police Officers from Attending the Proceedings Against Defendant and Limit the Show of Force in the Courtroom, 12/19/12; *id*. at 319-24, Motion to Require the Prosecution to Respond Timely and in Writing to Every Written Motion Filed by the Defense, 12/19/12.

[82] St. Rec. Vol. 1 at 16-20, Hearing Mins., 1/14/13.

[83] St. R. Vol. 2 at 352-438, Motion for Continuance, 7/30/13.

[84] St. R. Vol. 1 at 25-26, Hearing Mins., 7/30/13; St. R. Vol. 4 at 715-73A, Hearing Tr., 7/30/13.

On November 7, 2014, the trial was continued until August 17, 2015.[85]  The reason for the continuance is not explained in the trial court minutes. [86]

On June 22, 2015, defense counsel filed another motion to continue the trial date due to "unique" problems that had arisen during the representation including Rodriguez's pretrial detainment at the Louisiana State Penitentiary due to his service of his sentence for escaping while awaiting trial, changes and absences in staff at the Baton Rogue Capital Conflict Office, and discovery issues, which counsel admitted were the fault of neither party.[87]  After a hearing on July 2, 2015, the state trial court continued the trial until February 1, 2016.[88]  On November 16, 2015, the prosecutor stated that he would be stepping away from the case, at least temporarily, for reasons discussed with the court and defense counsel in Chambers and requested that the court delay taking any further action in the case until the case was reassigned.[89]  As a result, the trial court set a discovery status hearing for January 5, 2016.[90]  Further discovery hearings were held on February 5 and 26, 2016.[91]

The hearing transcript of March 11, 2016, reflects that the defense filed a motion to continue due to a mitigation expert's health issues, although the motion does not appear in the record.[92]  On April 11, 2016, the State withdrew the death penalty, and the state trial court noted that there was "additional work to be done" and that the parties had had asked for the trial to be

---

[85] St. R. Vol. 1 at 32, Hearing Mins., 11/7/14.

[86] *Id.*; *see* St. R. Vol. 2 at 457, Motion with Incorporated Memorandum to Continue Trial Date, 6/22/15.

[87] St. R. Vol. 3 at 450-60, Motion with Incorporated Memorandum to Continue Trial Date, 6/22/15.

[88] St. R. Vol. 1 at 37, Hearing Mins., 7/2/15.

[89] St. R. Vol. 4 775-789, Hearing Tr., 11/16/15; *see also* St R. Vol. 1 at 40-41, Hearing Mins., 11/16/15; *id.* at 45.

[90] St. R. Vol. 4 at 785-86, Hearing Tr., 11/16/15

[91] St. R. Vol. 1 at 43-44, Hearing Mins., 2/5/16; *id.* at 45, Hearing Mins., 2/26/16; St. R. Vol. 4 at 790-860, Hearing Tr., 2/5/16; *id.* at 861-84, Hearing Tr., 2/26/16.

[92] St. R. Vol. 4 at 895-96, Hearing Tr., 3/11/16.

continued until mid-May 2016.[93]  On May 16, 2016, the morning of trial, all remaining motions were ruled on by the trial court.[94]

Under Louisiana law, the State had one year from the date of that May 16, 2016 ruling, or until May 16, 2017, to bring Rodriguez to trial.  Nevertheless, the state trial court commenced trial on May 16, 2016, which was within the new speedy trial parameters.  Further, the record reflects that the great majority of the delay periods were attributable to Rodriguez and his defense.  The record contains nothing to indicate that the State was primarily or purposefully responsible for any unnecessary delays in Rodriguez's state court criminal proceedings.  For these reasons, the second *Barker* factor does not resolve in Rodriguez's favor.

The third *Barker* factor examines whether the defendant "diligently asserted his speedy trial right."[95]  The record reflects that Rodriguez did not file a motion for a speedy trial at any time before he asserted the claim in his state court post-conviction application.  This factor also does not weigh in Rodriguez's favor.

Finally, the fourth *Barker* factor examines the prejudice to the petitioner because of the delay.[96]  Typically, a habeas petitioner carries the burden to demonstrate actual prejudice; however, after reviewing the first three factors, a court must decide whether the petitioner still bears that burden or whether prejudice is presumed.[97]

Rodriguez has not demonstrated that the above three factors warrant a presumption of prejudice in this case.  While the delay went beyond the initial speedy trial period, valid reasons existed for the subsequent delays and a great majority of that time was attributable to Rodriguez's

---

[93] St. R. Vol. 1 at 49, Hearing Mins., 4/11/16; St. R. Vol. 3 at 558, Joint Trial Stipulations, 4/11/16; St. R. Vol. 4 at 901-13, Hearing Tr., 4/11/16.

[94] St. R. Vol. 1 at 50-51, Trial Mins., 5/16/16; St. R. Vol. 4 at 914-21, Trial Tr., 5/16/16.

[95] *United States v. Parker*, 505 F.3d 323, 329 (5th Cir. 2007).

[96] *Barker*, 407 U.S. at 530, 92 S. Ct. 2182.

[97] *See Amos*, 646 F.3d at 208.

defense. Accordingly, for Rodriguez to prevail on a speedy trial claim, he must establish actual prejudice and demonstrate that prejudice adequately exceeds the other factors.[98]

Under *Barker*, prejudice is based on consideration of three interests: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern accompanying public accusation; and (3) to limit the possibility that the defense will be impaired.[99] Of those, the most significant prejudice is the petitioner's ability to prepare his case without limitation.[100]

Initially, Rodriguez was serving an eight-year sentence imposed on September 14, 2010, for escaping from the St. Tammany Parish Jail while awaiting trial on this case.[101] Likewise, Rodriguez presented no evidence of undue anxiety or concern, and it is clear that "generalized expressions of anxiety and concern amount to little more than a nominal showing of prejudice."[102] Rodriguez also has made no showing that his ability to present a defense was impaired in any way by the delay in bringing him to trial or plea. He has not identified any witness or evidence that was unavailable as a result of the delay. Rodriguez has not made the required particularized showing of prejudice, and the fourth *Barker* factor is not in his favor.

For these reasons, Rodriguez has not shown that he suffered an unconstitutional delay in proceeding to a speedy trial on the charge. He also has not shown that the state trial court somehow lost jurisdiction because the speedy trial period did not expire in his case. The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedent. Accordingly, Rodriguez is not entitled to relief.

---

[98] *United States v. Frye*, 489 F.3d 201, 212 (5th Cir. 2007); *see also Amos*, 646 F.3d at 208 n.42 (no presumption of prejudice even when two of the first three *Barker* factors weighed in favor of petitioner).
[99] *Barker*, 407 U.S. at 532, 92 S. Ct. 2182.
[100] *Frye*, 489 F.3d at 212 (citing *Barker*, 407 U.S. at 532, 92 S. Ct. 2182).
[101] St. R. Vol. 2 at 330, Notice of Intent to Introduce Other Crimes Evidence at the Penalty Phase, 1/14/13.
[102] *Goodrum v. Quarterman*, 547 F.3d 249, 263 (5th Cir. 2008).

B.    **Claim Two: Prosecutorial Misconduct**

Rodriguez next claims that the prosecutor committed prosecutorial misconduct when he

improperly vouched for the credibility of Gina Scramuzza during his rebuttal closing argument.

In addressing this claim on post-conviction relief, the state district court found:

*Prosecutorial Misconduct*

Rodriquez contends that the prosecutor, in rebuttal closing argument, improperly and illegally vouched for the truthfulness and credibility of a state witness. Rodriquez points to a portion of the state's rebuttal closing argument where the prosecutor was commenting on the testimony of co-defendant, Gina Scramuzza, as follows: "...that corroborated that she told the truth there, too" and later "It's true; she's telling the truth." Vol. 9, p. 2021, 2023. The petitioner believes this prosecutorial misconduct resulted in a verdict that cannot be supported.

While a prosecutor may not give his personal opinion regarding the veracity of a witness it is permissible for a prosecutor to draw inferences about a witness's truthfulness from matters on the record. *See* La.C.Cr. P. art 774; *State v. Williams*, 96-1023, p. 13 (La. 1/21/98), 708 So.2d 703, 715, *cert. denied.*, 525 U.S. 838, 119 S. Ct. 99, 142 L.Ed.2d 79 (1998).

A review of the record shows that the prosecutor's statements were in direct response to defense counsel's closing argument about the statements of the co-defendants: "I believe they're unworthy of your belief." Vol. 9, p. 2011. In response, the prosecutor reviewed all of the evidence presented that supported the testimony of Gina Scramuzza. In context, the prosecutor did not vouch for the witness's testimony, *i.e.* "I believe the witness is telling the truth," but showed how the witness's testimony was supported by other evidence. The prosecutor then argued that this corroboration should result in the jury's believing the testimony to be true. The scope of counsel's argument must be "confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." La Cr.Cr.P. art. 774. Moreover, "[t]he state's rebuttal shall be confined to answering the argument of the defendant." *Id.* The Court finds that the prosecutor stayed within the scope of proper argument.

The Court holds that there is no merit to the petitioner's claim, as there was no prosecutorial misconduct in the closing argument.[103]

---

[103] St. R. Vol. 11, Judgment on Post-Conviction with Incorporated Reasons, at 3-4, 10/9/19.

The Louisiana First Circuit found "looking at the full comment in context, it is clear that the prosecutor was not vouching for the credibility of the State's witness; but rather, the prosecutor's statements were in direct response to defense counsel's closing argument."[104] The Louisiana Supreme Court similarly found Rodriguez failed to satisfy his post-conviction burden of proof.[105]

It is improper for a prosecutor to vouch for the credibility of a witness or to express an opinion as to the defendant's guilt *if* there is underlying an implication that the prosecutor's statements are based on additional personal knowledge about the witness or the facts of the case which are in not in evidence.[106] Such comments are not improper, however, where it is apparent to the jury that the comments are based on the evidence presented at trial rather than on personal knowledge of facts outside the record.[107]

Rodriguez points to two specific instances during the prosecutor's rebuttal closing argument where he contends the prosecutor vouched for Gina Scramuzza's credibility.[108] The first cited instance is the prosecutor's argument that, "She told the truth and we can prove it that she told the truth."[109] Rodriguez includes only part of the second statement, "that corroborated that she told the truth there, too."[110]

---

[104] *Rodriguez*, 2020 WL 975472, at *1 (citations omitted); St. R. Vol. 12, 1st Cir. Order, 2019 KW 1619, 2/28/20

[105] *Rodriguez*, 301 So. 3d at 1164; St. R. Vol. 13, La. S. Ct. Order, 2020-KH-00588, 9/29/20.

[106] *See, e.g.*, *United States v. Munoz*, 150 F.3d 401, 414–15 (5th Cir.1998); *Richthofen v. Cain*, Civ. Action No. 05-5701, 2008 WL 630477, at *49 n. 81 (E.D. La. Mar. 7, 2008); *Spicer v. Cain*, Civ. Action No. 07-3770, 2007 WL 4532221, at *9 (E.D. La. Dec. 19, 2007).

[107] *See, e.g.*, *Nichols v. Scott*, 69 F.3d 1255, 1282-1283 (5th Cir.1995); *Richthofen*, 2008 WL 630477, at *49 n.81; *Spicer*, 2007 WL 4532221, at *9.

[108] ECF No. 1-1, at 5.

[109] *Id*. (citing St. R. Vol. 9 at 2021, Trial Tr., 5/20/16).

[110] *Id*. (citing St. R. Vol. 9 at 2023, Trial Tr., 5/20/16).

Defense counsel, during his closing, argued on several occasions that Gina Scramuzza's testimony was "unworthy of belief" as she had admitted lying to her husband and "everyone else" and "trying to scam," and should not be relied upon.[111]  He argued that Gina Scramuzza lied when she implicated Rodriguez because she was angry when she learned that Rodriguez had a pregnant wife.[112]  He stated that "she made a lot of lies up in this case."[113]

In response, the prosecution pointed to all the evidence that corroborated Gina Scramuzza's testimony.  The prosecutor argued:

> Now, I went through her statement and I put a little blue flag on every place where she said something that was factual that the police were able to corroborate from outside evidence.
>
> She said that she, for instance, had to go get on the Causeway, back to Mile 16, turn around and went back to her house to get rid of the suspicion of neighbors that something was array.  And then, she went back to work.
>
> And sure enough, what do we get?  We get photographs of her going through the toll plaza.  We get her toll tag going off.  That's true.
>
> She told the truth and we can prove it that she told the truth.
>
> What else did she say?  That her husband called her from Discount Zone and the time that he called from.  And that she called Carlos and said this is when he's going to be home.  He's going to be home in 20 minutes.
>
> So what do they do?  They go out to the Discount Zone and they get the video.  Sure enough, just as she said, there's Mario at the exact time, filling up his car.
>
> And look at the phone records.  Sure enough, right then, she makes her call.
> She tells them that she met them at Walmart and they started at Big Lots. They were at Big Lots parking lot and she didn't like that.  She thought that they should be in a different parking lot.  So she said go to the Walmart.

---

[111] St. R. Vol. 9 at 2008, 2011, Trial Tr., 5/20/16.
[112] *Id.* at 2017.
[113] *Id.*

They went and found an employer and found out that, lo and behold, his work truck had GPS and they printed out the maps. And sure enough, he goes and stops at Big Lots.

He's there for 52 minutes. He gets a phone call. He then goes to Walmart, just like she said. They get the video from the Walmart, which depicts Carlos, Luis and Erly chumming it up.

You watched that video. You watched that video of them walking around the store checking out TVs, going to the bathroom, buying a Sprite.

When he has moments away from executing a man – hours from executing a man – and you saw that video. And they went and got that and that corroborated that she told the truth there, too.

She said that she had to stop at a credit union to get $1,000.00 to pay the two subcontractors, Erly and Luis.

They go to ASI Credit Union; withdrawal, $1,000 that day, that time. Corroboration; that was true.

She says that she had withdrawn money and given it to Carlos before, from Chase Bank, $1700, twice. That day she paid, the first time she tried to get him to kill her husband, which she then told you from [t]he Stand, she figures now was probably just another child support payment she was making.

They go to Chase Bank and get the records. It's true; she's telling the truth.

She talks about, afterwards, how he calls and says, we drank a beer. We left a beer. We need you to clean it up. It's at the house. She told y'all and she told the police she went there and she located the can. She did what he asked her to do.

She ran it under warm water and wiped it off on her shirt to try to get rid of the DNA evidence that he knew would be left on that can. And she told you that she did it.

And Tara Johnson told you that heat and moisture is something that degrades DNA. What did we find on that can? We find DNA that's degraded, but still, it's much more likely from Luis and Carlos than from anybody else.

This isn't a case where the DNA provides who it is. This is a case where DNA confirmed who it was, that all the other evidence proves who it was.

She told the police about the trip on February 25th, where they went to go scout it out to get a lay-of-the-land, see what the house was like, see where the valuable were, that he was going to be coming home.

Again, GPS corroborates that, exactly as she told the police.

She says when she called and told them they were at the Walmart, you saw him on the video on his phone on [t]he Bench, gets up and walks out at exactly that time.

She says that she bought a phone for him, a Hummer for him; true.  True.  She says – we know that she knew what his former address was; 3912 Colorado Avenue.  He didn't even live there anymore.

She told the police that.  She had evidence of that.

And one thing that was interesting, that she told the police that, otherwise wouldn't make any sense, whatsoever, is is [sic] that, when she spoke to Carlos after he had executed Mario Scramuzza.

He said, I can't go home on the Causeway Bridge because there's too many police.  And lo and behold, that also was true.

Now, if she was just making this up, how is she going to assume that somebody leaving Covington, to go back to Metairie, would go all the way out to Walker, Louisiana and go down I-55, back down to New Orleans?

Now another important thing to think about when you're considering all these statements that were corroborated by the police is that most of them she made before they knew what the evidence was.  They went and had to go find the evidence that corroborated that.[114]

In the instant case, when the prosecutor's comments are reviewed in context and in their entirety, there is no reasonable basis for concluding that the jurors would have interpreted the comments as based on personal knowledge of the facts outside the record.  There was no implication whatsoever that his comments were based on additional personal knowledge about the witnesses or on facts not in evidence.  Rather, the prosecutor reviewed Gina Scramuzza's statement and explained the corroborating evidence that was admitted at trial.

---

[114] *Id*. at 2021-25.

Accordingly, the state courts' decision rejecting this claim was not unreasonable or contrary to clearly established federal law; therefore, it is entitled to deference by this Court. Rodriguez is not entitled to relief as to this claim.

### C.    Claim Three: Ineffective Assistance of Counsel

Rodriguez alleges that he was denied effective assistance of counsel. He asserts that his counsel failed to (1) investigate the case and prepare a defense; (2) request funds to hire investigators and expert witnesses; (3) object to closing arguments; and (4) file a motion to quash based on the expiration of the statute of limitations.

The state trial court found that Rodriguez failed to provide any names, other than that of his wife, whose testimony would have been helpful to his defense, nor the substance of the testimony, nor how such testimony would have altered the outcome of the trial.[115] It also found that Rodriguez failed to identify what type of expert witnesses were necessary, what their investigation would have revealed.[116] The court concluded that Rodriguez's claims were general and conclusory and not sufficient to prove deficient performance.[117] The court also found that, as Rodriguez's substantive claim relating to closing arguments was meritless, his claim that counsel was ineffective for failing to object to closing arguments was similarly meritless.[118] Ultimately, the Louisiana Supreme Court denied Rodriguez's related writ application, finding he failed to show he received ineffective assistance of counsel under *Strickland*.[119]

---

[115] St. R. Vol. 11, Judgment on Post-Conviction with Incorporated Reasons, at 5, 10/9/19.

[116] *Id*.

[117] *Id*.

[118] *Id.* at 4-5.

[119] *Rodriguez*, 301 So. 3d at 1164 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)); St. Rec. Vol. 13, La. Sup. Ct. Order, 2020-KH-00588, 9/29/20.

The issue of ineffective assistance of counsel is a mixed question of law and fact.[120]  Thus, under the AEDPA, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

The United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.[121]  First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."[122]  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[123]

In deciding ineffective assistance of counsel claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of that claim based solely on a petitioner's failure to meet either prong of the test.[124]  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . .  But it is not enough under *Strickland*, 'that the errors had some conceivable effect on the outcome of the proceeding.'"[125]

On habeas review, the United States Supreme Court has clarified that, under *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."[126]

---

[120] *Strickland v. Washington*, 466 U.S. 688, 698 (1984); *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).

[121] 466 U.S. at 697.

[122] *Id.* at 687-88.

[123] *Id.* at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

[124] *Kimler*, 167 F.3d at 893.

[125] *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (citation omitted) (quoting *Strickland*, 466 U.S. at 693); *Harrington*, 562 U.S. at 112 (*Strickland* requires a "substantial" likelihood of a different result, not just "conceivable" one.)

[126] *Harrington*, 562 U.S. at 105.

"Even under de novo review, the standard for judging counsel's representation is a most deferential one."[127]  The courts must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."[128]

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.[129]  "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence."[130]  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.[131]  Tactical decisions, when supported by the circumstances, are objectively reasonable and do not amount to unconstitutionally deficient performance.[132]

### 1.  Failure to Investigate the Case, Request Funds for Investigator/Expert Witnesses, Formulate a Defense

Rodriguez claims his trial counsel failed to investigate the case and did not prepare a defense.  He also claims that his counsel failed to call his wife as a witness.  Rodriguez further claims that his counsel failed to request funding for an investigator or expert witnesses.

"'A defendant who alleges a failure to investigate on the part of his counsel must allege *with specificity* what the investigation would have revealed and how it would have altered the outcome of the trial.'"[133]  A petitioner cannot show prejudice as to a claim that his counsel failed

---

[127] *Id.*

[128] *Strickland*, 466 U.S. at 690.

[129] *Id.* at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

[130] *Harrington*, 562 U.S. at 105.

[131] *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000).

[132] *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997); *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

[133] *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (emphasis added; citation omitted); *accord Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011).

to investigate without adducing what the investigation would have shown.[134]  To prevail on such a claim, petitioner must provide factual support showing what exculpatory evidence further investigation would have revealed.[135]

As an initial matter, Rodriguez failed to establish that counsel's investigation was inadequate in any respect.  In fact, he presented no evidence whatsoever as to what investigative steps counsel actually took.[136]  Without such evidence, he cannot show that counsel performed deficiently.  While Rodriguez claims that defense counsel failed to seek funds to hire an investigator or experts, the record reflects that multiple defense investigators and experts were involved to the case.[137]  In short, the record, which is filled with numerous motions filed by defense counsel and numerous hearings held by the state trial court many of which involved experts or investigators, simply does not support Rodriguez's claim that his counsel did not investigate the case or hire experts.

Further, it is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what

---

[134] *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696) (recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").

[135] *Moawad*, 143 F.3d at 948; *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).

[136] *Netter v. Cain*, Civ. Action No. 15-584, 2016 WL 7157028, at *11 (E.D. La. Oct. 6, 2016), *R. & R. adopted*, 2016 WL 7116070 (E.D. La. Dec. 7, 2016).

[137] St. R. Vol. 2 at 365, Motion for Continuance, 7/30/13 (noting that the full-time fact investigator on the case was resigning); *id*. at 457, Motion with Incorporated Memorandum to Continue Trial Date, 6/22/15 (noting "the initial fact investigator left the office and has been replaced by a very competent one."); St. R. Vol. 1 at 44, Hearing Mins, 2/5/16 (noting "the expert will ask for DNA files from the crime lab to examine.); St. R. Vol. 4 at 741, Hearing Tr., 7/30/13 (defense counsel stated a new investigator would be hired in September 2013); *id*. at 762-63, Hearing Tr., 6/14/14 (defense counsel stated he wanted to speak with his expert regarding the hard drive of a laptop); *id*. at 821-28, Hearing Tr., 2/5/16 (discussing defense experts regarding cell phones and DNA); *id*. at 890, Hearing Tr., 3/11/16 (defense counsel discussed Rodriguez's forensic cell phone expert).

a witness would have testified are largely speculative.'"[138]   To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.[139]   These requirements apply to both expert and lay witnesses.[140]   "[T]he seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'"[141]

While Rodriguez claims that "names of witnesses" were provided to counsel, the only witness he identifies is his wife (whose name is not included).[142]   Rodriguez has not submitted any affidavits to establish the substance of the expected testimony of any witness.   Rodriguez also has not identified any particular expert who was available to testify in a manner favorable to a particular defense or any proposed expert testimony.   Rodriguez simply provides self-serving, speculative, and conclusory allegations that lay and expert witnesses would have in fact testified and would have done so in a manner favorable to the defense.   Therefore, he has failed to meet his burden of proof with respect to this claim.[143]

---

[138] *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)); *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008).

[139] *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Bray*, 265 F. App'x at 298).

[140] *Woodfox v. Cain*, 609 F.3d 744, 808 (5th Cir. 2010).

[141] *Hooks v. Thaler*, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting *Woodfox*, 609 F.3d at 808).

[142] ECF No. 1-1, at 8-9.

[143] *See, e.g., United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); *Buniff v. Cain*, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); *Anthony v. Cain*, Civ. No. 073223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); *Combs v. United States*, Nos. 3:08-CV-0032-n, 3:03-CR-0188-N(09), 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); *Harris v. Director*, Civ. No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Finally, Rodriguez claims his counsel failed to formulate a defense. It appears that Rodriguez suggests his counsel should have presented a defense of actual innocence.

To prevail on a claim that counsel was ineffective for failing to pursue a certain defense, a petitioner must show that the defense in question was in fact a viable one.[144]  In this case, counsel did present the defense of actual innocence and/or reasonable doubt. The state court record reflects that Rodriguez's counsel vigorously and meaningfully challenged the State's evidence at trial. During trial, defense counsel attacked the credibility of the State's witnesses and the physical evidence connecting Rodriguez to the crime scene. As discussed above, there is no evidence that any defense witnesses were available to testify and that they would have done so in a manner beneficial to the defense. Defense counsel therefore cannot be deemed ineffective for attempting to prevent the State's from proving its case beyond a reasonable doubt through effective defense cross-examination of the State's witnesses. The fact that the defense was not successful, i.e., that Rodriguez was convicted as charged, does not mean that counsel's actions leading to the conviction were deficient.[145]  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."[146]

Rodriguez has failed to establish any deficiency or prejudice arising from his counsel's alleged failure to investigate, request funds for an investigator and expert witnesses, call witnesses to testify, and to formulate a defense. The denial of relief on these issues was not contrary to or an unreasonable application of *Strickland*.

---

[144] *See, e.g., Otero v. Louisiana*, Civ. No. 12-1332, 2013 WL 6072716, at *14-15 (E.D. La. Nov. 18, 2013); *Higgins v. Cain*, Civ. No. 09-2632, 2010 WL 890998, at *9 n. 24 (E.D. La. Mar. 8, 2010), *aff'd*, 434 F. App'x 405 (5th Cir. 2011).

[145] *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

[146] *Strickland*, 466 U.S. at 689 (citations omitted).

2.     **Failure to File a Motion to Quash/Objection Closing Arguments**

Rodriguez's next claims of ineffective assistance of counsel are that his counsel failed to file a motion to quash and failed to object to closing arguments.

As already explained in detail above, there was no basis for a motion to quash.  As this Court has also determined, there was no inappropriate rebuttal argument made by the prosecutor to result in prosecutorial misconduct.  The State's rebuttal argument was responsive to defense counsel's suggestion that Gina Scamuzza was not credible and was tied to the evidence introduced during trial.  Therefore, a motion to quash or any objection to the prosecutor's argument on that basis that it was prosecutorial misconduct would have been meritless.  "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."[147]

Rodriguez has failed to show his counsel was ineffective or any prejudice resulting from the failure to file a motion to quash or object to the prosecution's rebuttal closing argument.  The denial of relief on these issues was not contrary to or an unreasonable application of *Strickland*. He is not entitled to relief as to these issues.

D.     **Right to Testify**

In his final claim, Rodriguez claims his trial counsel denied him the right to testify. Rodriguez claims that a member of his defense team visited him at jail the evening before the last day of trial.  Rodriguez claims that attorney Unangst "made the decision to convince Petitioner not

---

[147] *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark*, 19 F.3d at 966)); *accord United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("Counsel is not required to make futile motions or objections.")

to testify, without consulting with the other Counsels members of Petitioner's legal team."[148] Rodriguez claims that he repeatedly expressed his desire to testify, but that Unangst made the final decision.

In denying this issue when Rodriguez raised in his post-conviction motion, the state district court explained:

<u>*Right to Testify*</u>

The petitioner claims his constitutional right to testify in his own defense was violated when defense counsel refused to allow him to take the stand. Rodriguez asserts he expressed his desire to testify to defense counsel for over three years. He claims that the night before he was to testify, the lead defense counsel, Bruce Unangst, visited him and indicated he did not think Rodriguez should testify. Rodriguez asserts that Unangst stated that it was his (Unangst's) decision to make.

Although an attorney's interference with a defendant's desire to testify may violate the defendant's constitutional rights, the law requires "that the claimant 'allege specific facts, including an affidavit from counsel' and point to record evidence to support his claim." *State v. James*, 2005-2512, p.1 (La. 9/29/06); 938 So.2d 691, *citing State v. Hampton*, 2000-0522, p. 14-15 (La. 3/22/02); 818 So.2d 720, 729-730. The law holds that mere conclusory allegations are insufficient to rebut a presumption arising from the defendant's silence at trial that he waived his right to testify. *Id*.

The record shows that while the jury was out of the courtroom, and the Court and counsel were engaged in their conference on jury instructions, the issue arose as to whether the defendant would testify. At that time, Mr. Unangst, lead defense trial counsel, stated: "I have advised Mr. Rodriguez to not testify." Vol. 9, p. 1984. A member of the prosecution team responded: "Judge, again, note for the record, the defendant is present in Court and he sits hearing what his attorney says and makes no comment, otherwise. So that's acceptance of the fact that he's choosing not to testify. The attorney's addressed the record to be clear." *Id*. The Court responded: "I will note that he is present in the courtroom. And beyond that, I'm not going to address to what Counsel and he have opined about his testimony or not. That's a strategical decision to be made by defense, the defendant and his Counsel." *Id*. The prosecution clarified that they were pointing out the "particular phrasing" of defense counsel's statement, "that he says I've advised him not to, but not what the decision is." Vol. 9, p. 1985. The Court reiterated "…we'll make that decision at the point when you rest or otherwise." *Id*. Later, after the state rested, Mr. Unangst stated, "Your Honor, at this time, the defense rests." Vol. 9, p. 1990.

---

[148] ECF No. 1-1, at 10.

Rodriguez does not provide the Court with an affidavit from counsel, nor does he point to record evidence to support this claim. There was nothing in the statements of counsel on the record that would have alerted the Court that there was a conflict between Rodriguez and his counsel on this issue. In fact, Rodriguez was in the courtroom, listened to the statements of counsel made in open court, and failed to indicate that he disagreed with counsel and desired to testify on his own behalf. The Court finds the petitioner has failed to satisfy the guidelines for prevailing on the merits of the claim raised, and also for making the claim with sufficient particularity to withstand summary denial on the pleadings without further evidentiary proceedings.[149]

The Louisiana Supreme Court denied Rodriguez's related writ application, finding he failed to show he received ineffective assistance of counsel under *Strickland*.[150]

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments.[151] When, as here, a habeas petitioner alleges that his counsel, not the court or the prosecution, prevented him from testifying, the Fifth Circuit has held that the "'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'"[152]

A criminal defendant may waive his right to testify if that waiver is knowing, intelligent and voluntary.[153] A violation of this right occurs only if the "'final decision that [defendant] would not testify was made against his will.'"[154] A habeas petitioner has the burden of proving that he was denied this constitutional right. It is not enough for a habeas petitioner to merely state that he told his trial attorney that he wanted to testify and that his attorney forbade him from doing so.[155]

---

[149] St. R. Vol. 11, Judgment on Post-Conviction with Incorporated Reasons, at 5-6, 10/9/19.

[150] *Rodriguez*, 301 So. 3d at 1164; St. R. Vol. 13, La. Sup. Ct. Order, 2020-KH-00588, 9/29/20.

[151] *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007); *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001); *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994).

[152] *Sayre*, 238 F.3d at 634 (quoting *United States v. Brown*, 217 F.3d 247, 258-59 (5th Cir. 2000)).

[153] *Bower*, 497 F.3d at 473 (citing *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)).

[154] *Emery*, 139 F.3d at 198 (quoting *United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990)).

[155] *Turcios v. Dretke*, No. 97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991)); *accord Jones v. Cain*, No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); *Davis v. Quarterman*, No. 06-3606, 2007 WL 1886272, at *6 (S.D.

In *Underwood*, the United States Seventh Circuit Court of Appeals identified numerous problems that would result if habeas petitioners were not required to satisfy this burden of proof.[156] Adopting the First Circuit's reasoning, the *Underwood* court recognized that an assertion that counsel forbade the defendant from testifying, even if made under oath,

> is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary - and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify - to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.[157]

Addressing similar claims, the Fifth Circuit has observed that "allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic."[158] There is "a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right . . . to testify in his own behalf without rendering the criminal process unworkable."[159]

Rodriguez has presented no support for his contention that his counsel forced him to waive his right to testify. The transcript also reflects nothing to indicate that Rodriguez was forced to remain silent at trial. Attorney Unangst stated on the record that he had advised Rodriguez not to testify.[160] The state district court noted that Rodriguez was present in the courtroom and that it was a strategic decision to be made by the Rodriguez and his counsel.[161] After the jury reviewed

---

Tex. June 29, 2007).

[156] *Underwood*, 939 F.2d at 475-76.

[157] Id. at 475-76; (citing *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987)); *accord Gross v. Knight*, 560 F.3d 668, 672 (7th Cir. 2009).

[158] *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999) (quoting *Underwood*, 939 F.2d at 476) (a conclusory assertion by a defendant that his right to testify was denied him is insufficient to require a hearing because "[i]t just is too facile a tactic to be allowed to succeed").

[159] *Id*. at 628 (citing *Underwood*, 939 F.2d at 475).

[160] St. R. Vol. 9 at 1984, Trial Tr., 5/20/16.

[161] *Id.*

the defense exhibits, the defense rested.[162]  Rodriguez did not counter his counsel's representation

that he had advised Rodriguez not to testify nor did he express his desire to testify over counsel's

advice.

As discussed in *Underwood* and its progeny, the record contains nothing to give credence

to Rodriguez's self-serving claim that his counsel prevented him from testifying.  Rodriguez

provided no substantiation to the state district court for his blanket assertion that his counsel forced

his decision not to testify.  He also has offered no proof that the discussions were coercive in any

way.  Rather, it appears from the trial transcript that Rodriguez simply accepted defense counsel's

recommendation that he not testify at trial

The Court notes that Rodriguez filed a supplemental brief with the Louisiana First Circuit

which included evidence allegedly supporting his claim that Unangst prevented him from

testifying.[163]  The evidence included a letter from Melissa Payne dated December 16, 2019, in

which Payne stated that Rodriguez had maintained that he planned to testify at trial and that she

and Rodriguez's family members were shocked when he did not testify.[164]  Payne further stated

that even members of Rodriguez's legal team "appeared somewhat surprised."[165]  Payne claimed

that Rodriguez later told her that one of the attorneys had visited him the night before the last day

of trial and that the attorney told Rodriguez that that it was the attorney's right to make the final

decision as to whether Rodriguez testified and that he would not be testifying as the attorney "felt

that he covered everything in the trial."[166]  Rodriguez also submitted a jail visit log indicating that

---

[162] *Id.* at 1988-90.
[163] St. R. Vol. 13, Petitioner's Supplemental Brief, unstamped (dated 1/3/20).
[164] *Id.* at Ex. 1.
[165] *Id*.
[166] *Id*.

Unangst had visited Rodriguez at the jail for approximately thirty minutes on the evening of May 18, 2016.[167]

The Louisiana First Circuit denied Rodriguez's request to supplement the writ application.[168]  While Rodriguez included the letter and the visitation log to his writ application to the Louisiana Supreme Court,[169] there is no indication that they were considered.  Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.[170]

Even if this Court considers the letter and visitation log, neither proves that Unangst denied Rodriguez that right to testify at trial.  The visitation log is dated May 18, 2016.[171]  It includes no information regarding the purpose of the visit.  On May 20, 2016, two days later, during a discussion about jury instructions, attorney Unangst informed the state trial court that he had *advised* Rodriguez not to testify.[172]

As for the letter from Melissa Payne, there is no indication of her relation to Rodriguez.[173]  Her unsworn letter is dated three and a half years after Rodriguez's trial, fourteen months after Rodriguez filed his application for post-conviction relief, and two months after the state trial court denied the claim.  Further, it reflects no first-hand knowledge or observation of any discussions between Rodriguez and his counsel.  Payne merely speculates that Rodriguez "felt he could not speak up during his trial" when the defense rested without presenting Rodriguez's testimony.[174]

---

[167] *Id*. at Ex. 2.

[168] St. R. Vol. 13, 1st Cir. Order, 2019 KW 1619, 2/28/20.

[169] St. R. Vol. 13, La. S. Ct. Writ Application (Exs. 6 and 7), 20 KH 588, 5/22/20.

[170] *Cullen v. Pinholster*, 563 U.S. 170, 181-182, 131 S. Ct. 1388, 1398 (2011); *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011); *Gallow v. Cooper*, 505 F. App'x 285, 295-296 (5th Cir. 2012); *Thomas v. Thaler*, No. 12-50280, 2013 WL 1297269, at *4-5 (5th Cir. Apr. 2, 2013)..

[171] St. R. Vol. 13, St. R. Vol. 13 Petitioner's Supplemental Brief (Ex. 2), unstamped (dated 1/3/20).

[172] St. R. Vol. 9 at 1983-84, Trial Tr., 5/20/16.

[173] St. R. Vol. 13, St. R. Vol. 13 Petitioner's Supplemental Brief (Ex. 1), unstamped (dated 1/3/20).

[174] *Id.*

Payne's letter simply does not prove that Rodriguez was denied his constitutional right to testify on his own behalf.

In addition, Rodriguez has not established that his counsel's advice was unreasonable or prejudicial.  A decision whether or not to put a criminal defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight."[175]  Such a matter is inherently one of trial strategy, and federal habeas courts generally are not to second-guess counsel's decisions on matters of trial tactics; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.[176]

Counsel acts within the ambit of sound trial strategy to keep evidence of the defendant's credibility, or lack thereof, from the jury.  Rodriguez's testimony would have opened the door to matters that would have been harmful to the defense.  On the stand, Rodriguez would have been exposed to cross-examination regarding both his guilt and character, including his prior conviction for escape while awaiting trial in this case.  In addition, Rodriguez does not indicate, nor has he ever indicated, any specific proposed testimony he might have provided that would have benefited his defense.

For these reasons, Rodriguez has not demonstrated any deficiency or prejudice resulting from counsel's advice that he not testify at trial.  The denial of relief by the state courts on this issue was not contrary to or an unreasonable application of *Strickland*.  Rodriguez is not entitled to relief on this claim.

---

[175] *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir. 1985); *accord United States v. Mullins*, 315 F.3d 499, 453 (5th Cir. 2002); *Amos v. Cain*, Civ. Action No. 04-2029, 2008 WL 782472, at *11 (E.D. La. Mar. 20, 2008); *Curtis v. Cain*, Civ. Action No. 06-1676, 2008 WL 482849, at *10 (E.D. La. Feb. 13, 2008).
[176] *Strickland*, 466 U.S. at 689.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Rodriguez's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[177]

New Orleans, Louisiana, this ___20th___ day of April, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[177] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).